**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

JOEL RICH AND MARY RICH,

        Plaintiffs,

        v.

FOX NEWS NETWORK, LLC, MALIA
ZIMMERMAN, AND ED BUTOWSKY,

        Defendants.

Civil Action No. 1:18-cv-02223 (GBD)

---

**MEMORANDUM IN SUPPORT OF THE MOTION OF**
**FOX NEWS NETWORK, LLC, AND MALIA ZIMMERMAN**
**<u>TO DISMISS FOR FAILURE TO STATE A CLAIM</u>**

DECHERT LLP
David H. Stern (*pro hac vice*)
Katherine M. Wyman
U.S. Bank Tower
63 West 5th Street, 26th Floor
Los Angeles, CA 90071
(213) 808-5700

1095 Avenue of the Americas
New York, NY 10036

*Attorneys for Malia Zimmerman*

May 7, 2018

WILLIAMS & CONNOLLY LLP
Kevin T. Baine
Dane H. Butswinkas
Joseph M. Terry (*pro hac vice*)
725 Twelfth Street, N.W.
Washington, DC 20005
(202) 434-5000

650 Fifth Avenue, Suite 1500
New York, NY 10019

*Attorneys for Fox News Network, LLC*

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................1

BACKGROUND ................................................................................................................2

ARGUMENT ......................................................................................................................4

I.    PLAINTIFFS FAIL TO STATE A CLAIM FOR INTENTIONAL INFLICTION
      OF EMOTIONAL DISTRESS. ...............................................................................4

      A.    Plaintiffs Cannot State a Claim for Intentional Infliction of Emotional
            Distress Based on the Alleged Defamation of Their Son. ........................7

      B.    Plaintiffs Fail To Plead Any Extreme or Outrageous Conduct.............................10

            1.    Plaintiffs Cannot Satisfy the Outrageousness Element by
                  Reference to the Content of a News Story on a Matter of Public
                  Concern. ....................................................................................10

            2.    Fox's Alleged Republication of the Seth Rich Story Was Not
                  Extreme or Outrageous. ...........................................................12

            3.    Fox News's Alleged Newsgathering Techniques Were Not
                  Extreme or Outrageous. ............................................................13

II.   FOX NEWS CANNOT BE HELD LIABLE FOR THE CONDUCT OF
      WHEELER OR BUTOWSKY. ...............................................................................16

      A.    Fox News Is Not Vicariously Liable for the Conduct of Butowsky or
            Wheeler. .........................................................................................16

      B.    Plaintiffs Cannot Hold Fox News or Zimmerman Liable for Wheeler or
            Butowsky's Conduct Under a Concerted Action Theory. .....................18

III.  PLAINTIFFS HAVE FAILED TO STATE A CLAIM FOR TORTIOUS
      INTERFERENCE WITH CONTRACT. .................................................................19

      A.    The Complaint Does Not Allege an "Intentional Procurement" of a
            Breach. ...........................................................................................21

      B.    The Complaint Does Not Allege that Fox News Acted Without
            Justification for the Sole Purpose of Harming the Plaintiffs. ...............22

      C.    The Complaint Does Not Allege Damages Arising From the Breach of the
            Confidentiality Provision. .................................................................24

IV.   PLAINTIFFS HAVE FAILED TO STATE A CLAIM FOR NEGLIGENT
      SUPERVISION AGAINST FOX NEWS...............................................................24

CONCLUSION...................................................................................................................25

## TABLE OF AUTHORITIES

### FEDERAL CASES

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ...................................................................24

*Branzburg v. Hayes*, 408 U.S. 665 (1972) ...............................................................20

*Busch v. City of New York*, No. 00-cv-5211, 2003 WL 22171896 (E.D.N.Y. Sept. 11, 2003) .............................................................................................................................9

*Chaiken v. VV Publ'g Corp.*, 119 F.3d 1018 (2d Cir. 1997) ......................................6, 8

*Chamberlain v. City of White Plains*, 986 F. Supp. 2d 363 (S.D.N.Y. 2013) ..............16

*Chau v. Lewis*, 771 F.3d 118 (2d Cir. 2014) ................................................................7

*Cruz v. Marchetto*, No. 11-cv-8378, 2012 WL 4513484 (S.D.N.Y. Oct. 1, 2012) ......10

*Desnick v. Am. Broad. Cos.*, 44 F.3d 1345 (7th Cir. 1995) .........................................14

*Doe v. Alsaud*, 12 F. Supp. 3d 674 (S.D.N.Y. 2014) ...................................................25

*Dowd v. Calabrese*, 589 F. Supp. 1206 (D.D.C. 1984) ...............................................19

*DuBoff v. Playboy Enters. Int'l*, No. 06-358, 2007 WL 1876513 (D. Or. June 26, 2007) ...........13

*Ehrens v. Lutheran Church*, 385 F.3d 232 (2d Cir. 2004) ...........................................24

*Elliott Assocs., L.P. v. Republic of Panama*, 975 F. Supp. 332 (S.D.N.Y. 1997) .........22

*Galella v. Onassis*, 487 F.2d 986 (2d Cir. 1973) .....................................................14, 15

*Green v. City of Mount Vernon*, 96 F. Supp. 3d 263 (S.D.N.Y. 2015).........................25

*Gym Door Repairs, Inc. v. Young Equip. Sales, Inc.*, 206 F. Supp. 3d 869 (S.D.N.Y. 2016).....................................................................................................18

*Hustler Mag., Inc. v. Falwell*, 485 U.S. 46 (1988) ...........................................6, 11, 12

*Interphase Garment Sols., LLC v. Fox TV Stations, Inc.*, 566 F. Supp. 2d 460 (D. Md. 2008) ...................................................................................................21, 22

*Levin v. McPhee*, 119 F.3d 189 (2d Cir. 1997)............................................................9

*Levin v. McPhee*, 917 F. Supp. 230 (S.D.N.Y. 1996)...............................................6, 10

*Martin v. Citibank, N.A.*, 762 F.2d 212 (2d Cir. 1985)..............................................8, 9

*MasterCard Int'l Inc. v. Nike, Inc.*, 164 F. Supp. 3d 592 (S.D.N.Y. 2016)....................................2

*Meeropol v. Nizer*, 381 F. Supp. 29 (S.D.N.Y. 1974)....................................................8

*Naughright v. Weiss*, 826 F. Supp. 2d 676 (S.D.N.Y. 2011) ........................................18

*Nevin v. Citibank, N.A.*, 107 F. Supp. 2d 333 (S.D.N.Y. 2000)....................................5

*N.Y. Times Co. v. Sullivan*, 376 U.S. 254 (1964) ....................................................5, 7

*Palin v. N.Y. Times. Co.*, 264 F. Supp. 3d 527 (S.D.N.Y. 2017) ....................................7

*Partington v. Bugliosi*, 56 F.3d 1147 (9th Cir. 1995) ................................................6

*Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57 (2d Cir. 2010) ..................2

*Plasticware, LLC v. Flint Hills Res., LP*, 852 F. Supp. 2d 398 (S.D.N.Y. 2012)........................20

*Ruzicka v. Conde Nast*, 939 F.2d 578 (8th Cir. 1991) ................................................14

*Snyder v. Phelps*, 562 U.S. 443 (2011) ..........................................................11, 12

*Steele v. Isikoff*, 130 F. Supp. 2d 23 (D.D.C. 2000)....................................................14

*Sylvester v. City of New York*, 385 F. Supp. 2d 431 (S.D.N.Y. 2005)..................................8

*TC v. Valley Cent. Sch. Dist.*, 777 F. Supp. 2d 577 (S.D.N.Y. 2011)....................................10

*Turley v. ISG Lackawanna, Inc.*, 774 F.3d 140 (2d Cir. 2014)............................ *passim*

*Weyrich v. New Republic, Inc.*, 235 F.3d 617 (D.C. Cir. 2001) ......................................6

**STATE CASES**

*Aymes v. Gateway Demolition, Inc.*, 817 N.Y.S.2d 233 (App. Div. 2006) ..................................16

*Balderman v. Am. Broad. Cos.*, 738 N.Y.S.2d 462 (App. Div. 2002)....................................15

*Bement v. N.Y.P. Holdings, Inc.*, 760 N.Y.S.2d 133 (App. Div. 2003) ................................10, 11

*Benjamin Goldstein Prods., Ltd. v. Fish*, 603 N.Y.S.2d 849 (App. Div. 1993) ..........................22

*Butler v. Del. Otsego Corp.*, 610 N.Y.S.2d 664 (App. Div. 1994)....................................11

*Casamasina v. Worcester Telegram & Gazette, Inc.*, 307 N.E.2d 865
    (Mass. App. Ct. 1974)....................................................................8

*Chanko v. Am. Broad. Cos.*, 49 N.E.3d 1171 (N.Y. 2016) ..........................................5

*Curtis v. Evening News Ass'n*, 352 N.W.2d 355 (Mich. Ct. App. 1984)........................................8

*Danahy v. Meese*, 446 N.Y.S.2d 611 (App. Div. 1981) ................................................................18

*Doe v. Am. Broad. Cos.*, 543 N.Y.S.2d 455 (App. Div. 1989)................................................12, 14

*Drake v. Park Newspapers of Ne. Okla., Inc.*, 683 P.2d 1347 (Okla. 1984) .................................8

*Dulgarian v. Stone*, 652 N.E.2d 603 (Mass. 1995)........................................................................22

*EDP Hosp. Comput. Sys., Inc. v. Bronx-Lebanon Hosp. Ctr.*, 622 N.Y.S.2d 557
   (App. Div. 1995)..........................................................................................................................22

*Fischer v. Maloney*, 373 N.E.2d 1215 (N.Y. 1978)..........................................................................5

*Flynn v. Higham*, 197 Cal. Rptr. 145 (Ct. App. 1983)......................................................................9

*Freihofer v. Hearst Corp.*, 480 N.E.2d 349 (N.Y. 1985)..................................................................5

*Gleason v. Smolinski*, 125 A.3d 920 (Conn. 2015)...........................................................................6

*Gugliuzza v. K.C.M.C., Inc.*, 606 So. 2d 790 (La. 1992) ................................................................8

*Howell v. N.Y. Post Co.*, 612 N.E.2d 699 (N.Y. 1993)................................................................5, 14

*Huggins v. NBC*, No. 119272/95, 1996 WL 763337 (N.Y. Sup. Ct. Feb. 7, 1996)......................23

*Huggins v. Povich*, 1996 WL 515498 (N.Y. Sup. Ct. Apr. 19, 1996) ..........................2, 20, 22, 23

*Morrison v. Nat'l Broad. Co.*, 227 N.E.2d 572 (N.Y. 1967) ...........................................................6

*Pekelnaya v. Allyn*, 808 N.Y.S.2d 590 (App. Div. 2005) ..............................................................10

*Prozeralik v. Capital Cities Commc'ns, Inc.*, 626 N.E.2d 34 (N.Y. 1993) ...................................11

*Rapp Boxx, Inc. v. MTV, Inc.*, 642 N.Y.S.2d 228 (App. Div. 1996)..............................................22

*Reader's Digest Ass'n v. Superior Court*, 690 P.2d 610 (Cal. 1984) ..............................................6

*Rose v. Daily Mirror, Inc.*, 31 N.E.2d 182 (N.Y. 1940) ..................................................................8

*Saini v. Tonju Assocs.*, 750 N.Y.S.2d 55 (App. Div. 2002)...........................................................17

*Sarwer v. Conde Nast Pubs., Inc.*, 654 N.Y.S.2d 768 (App. Div. 1997).........................................7

*Seminole Tribe of Fla. v. Times Publ'g Co.*, 780 So. 2d 310 (Fla. Dist. Ct. App. 2001) ..............23

*Small v. Lorillard Tobacco Co.*, 720 N.E.2d 892 (N.Y. 1999).......................................................18

*State Farm Ins. Co. v. Cent. Parking Sys., Inc.*, 796 N.Y.S.2d 665 (App. Div. 2005) .................24

*Talbot v. Johnson Newspaper Corp.*, 508 N.Y.S.2d 80 (App. Div. 1986) .....................................8

*Williams v. Williams*, 53 N.Y.S.3d 152 (App. Div. 2017) ..........................................................18

## OTHER AUTHORITIES

U.S. Const. amend I ........................................................................................................ *passim*

Don Herzog, *Defaming the Dead* (2017) ........................................................................8

Eugene Volokh, *The Trouble With "Public Discourse" as a Limitation on Free Speech Rights*, 97 Va. L. Rev. 567 (2011) ........................................................................11

Restatement of Torts § 46 ................................................................................................5

Restatement (Second) of Torts § 560 ..............................................................................8

Restatement (Second) of Torts § 614 ..............................................................................9

Restatement (Second) of Torts § 766 ............................................................................22

## INTRODUCTION

Plaintiffs are the parents of Seth Rich, a Democratic National Committee ("DNC") staffer whose murder and possible involvement in leaking DNC emails to WikiLeaks was the subject of a Fox News article published on May 16, 2017, and retracted a week later.  Although the article was not about the Plaintiffs, they claim damages for intentional infliction of emotional distress. And although the report was unquestionably a matter of legitimate public interest, they seek to hold Fox News and one of its reporters liable for tortious interference with contract based on a confidentiality provision in an agreement the Plaintiffs had with an investigator who was quoted in the article.  These claims have no precedent in the common law and are incompatible with the First Amendment right of the press to report on matters of legitimate public concern.

Plaintiffs allege that the source of their emotional distress is the publication of false and defamatory news stories about their son.  But it is the law of New York and elsewhere that surviving family members have no cause of action for the libel of a deceased relative, no matter how much emotional distress they may have suffered.  Plaintiffs cannot plead around that rule simply by styling their claim as one for intentional infliction of emotional distress.  Nor can Plaintiffs allege the kind of extreme or outrageous behavior that can support such a claim.

Plaintiffs' tortious interference claim is based on the allegation that Rod Wheeler, a former homicide detective investigating Seth Rich's murder on their behalf, breached the confidentiality clause in his contract with them when he divulged information about his investigation to Fox News without Plaintiffs' consent.  But Plaintiffs have not sued Wheeler for this alleged breach.  Nor have they alleged the elements of a claim of tortious interference against Fox News and its reporter: that the Fox News reporter intended to induce a breach of the confidentiality provision—or even that she knew Wheeler would be providing information without Plaintiffs' consent in violation of

1

his agreement—and that she acted "without reasonable justification" and "for the sole purpose of harming the plaintiff," rather than reporting on an issue of legitimate public concern. *Huggins v. Povich*, No. 131164/94, 1996 WL 515498, at *9 (N.Y. Sup. Ct. Apr. 19, 1996). Private confidentiality provisions cannot be invoked to impose liability in such a case without violating the most fundamental rights of a free press to report on matters of legitimate public interest. For these reasons and others elaborated below, the motion of Fox News Network, LLC, and Malia Zimmerman to dismiss for failure to state a claim should be granted with prejudice.

## BACKGROUND

Seth Rich was murdered on July 10, 2016. Compl. ¶ 15. Although police advanced a "working theory . . . that the murder was a botched robbery," they have identified "no suspects, witnesses, or possible motives" for the killing. *Id.* ¶ 17.

In December 2016, Plaintiffs received a call from defendant Ed Butowsky, who told them that "he had heard second-hand that Julian Assange said WikiLeaks received the DNC emails from Seth." Compl. ¶ 26. About a month later, Butowsky called Joel Rich and "encouraged him to look into Seth's bank account for payments from WikiLeaks." *Id.* ¶ 31. On February 28, 2016, he again contacted Joel Rich and offered to hire Rod Wheeler, a Fox News contributor and former D.C. homicide detective, to investigate the murder. *Id.* ¶¶ 33, 37, 41. Plaintiffs entered into an agreement with Wheeler for services that were paid entirely by Butowsky. *Id.* ¶¶ 56, 58; Ex. 4.[1]

Plaintiffs allege that Wheeler provided information about his investigation to Butowsky, Fox News reporter Zimmerman, and others—including former White House press secretary Sean

---

[1] Although Plaintiffs have not attached their agreement with Wheeler to their Complaint, the Court may consider it on this motion because it is incorporated by reference. *See Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 64 (2d Cir. 2010); *MasterCard Int'l Inc. v. Nike, Inc.*, 164 F. Supp. 3d 592, 598 (S.D.N.Y. 2016).

Spicer—in violation of the confidentiality provision of their agreement.  Compl. ¶¶ 59, 63.  On May 15, 2017, before Fox News had published anything about Seth Rich and Wikileaks, Wheeler gave an on-camera interview about his investigation to a local, Fox-affiliated broadcast station in Washington D.C.  When the reporter asked Wheeler whether "you have sources at the FBI saying that there is information that could link . . . Seth Rich to Wikileaks," Wheeler responded:  "For sure. . . . Absolutely.  Yeah, and that's confirmed."  Ex. 6 (Fox 5 transcript); Ex. 5 (Fox 5 article).

On May 16, 2017, Fox News published an online article quoting sources identifying Rich as a source of the DNC leak.  Ex. 1.  The article quoted an unnamed federal investigator who had reviewed a forensic report of Rich's computer and claimed to "have seen and read the emails between Seth Rich and WikiLeaks."  *Id.*  The article noted that WikiLeaks had offered a $20,000 reward for information leading to Rich's assailants and that its founder, Julian Assange, had said: "We're interested in anything that might be a threat to alleged WikiLeaks sources."  *Id.*  The article further noted that the federal investigator's claims were "consistent with the findings of Rod Wheeler, a former DC homicide detective and Fox News contributor and whose private investigation firm was hired by Rich's family to probe the case."  Ex. 1.  Wheeler was quoted as stating:  "My investigation up to this point shows there was some degree of email exchange between Seth Rich and WikiLeaks" and that "I do believe that the answers to who murdered Seth Rich sits [sic] on his computer on a shelf at the DC police or FBI headquarters."  *Id.*

Zimmerman had contacted the Rich family on several occasions before publication of the May 16 article.  On January 3, 2017, she emailed family spokesman Brad Bauman to ask "about the circumstances of Seth's murder."  Compl. ¶ 28.  A few days later, Zimmerman asked Joel for more information about Seth.  *Id.* ¶ 30.  Zimmerman again contacted Joel on May 15 to seek comment on the federal investigator's information that Seth had passed emails to Wikileaks.  *Id.*

¶ 78.  Zimmerman was unable to reach the Rich family for comment that day.  She was careful to note in the May 16 article, however, that Joel Rich had previously told Fox News "that he didn't believe his son would leak the emails."  Ex. 1.

When the Rich family repudiated some of Wheeler's comments later that day, Zimmerman updated the article.  Compl. ¶ 90.  She reported that "Wheeler was not authorized to speak for the family" and that the family rejected the allegations against Seth as "'unsubstantiated.'"  Exs. 2, 3. Her article quoted Bauman:  "Even if tomorrow, an email was found, it is not a high enough bar of evidence to prove any interactions as emails can be altered and we've seen that those interested in pushing conspiracies will stop at nothing to do so."  *Id.*  The update ran under the headline: "Family of slain DNC staffer Seth Rich blasts detective over report of WikiLeaks link."  Ex. 3.

On May 18, 2017, two days after the article was published, plaintiff Joel Rich wrote to Zimmerman seeking a retraction.  Compl. ¶ 98.  On May 23, Fox News issued a retraction, explaining:  "The article was not initially subject to the high degree of editorial scrutiny we require for all our reporting."  *Id.* ¶ 107.  Fox also removed the article from its web site.  *Id.*

On March 13, 2018, nearly a year after Fox News pulled the article, Plaintiffs filed the instant suit for damages.  In addition to claiming that all Defendants are directly liable for intentional infliction of emotional distress and tortious interference with contract, Plaintiffs claim they are liable under aiding and abetting and conspiracy theories.  Additionally, Plaintiffs assert a claim for negligent supervision against Fox News.  They have not named Wheeler as a defendant.

## **ARGUMENT**

## I.     **PLAINTIFFS FAIL TO STATE A CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS.**

To state a claim for intentional infliction of emotional distress in New York, plaintiffs must plead:  (1) extreme and outrageous conduct, (2) intent to cause, or disregard of a substantial

probability of causing, severe emotional distress, (3) a causal connection between the conduct and injury, and (4) severe emotional distress. *Howell v. N.Y. Post Co.*, 612 N.E.2d 699, 702 (N.Y. 1993). It is "a highly disfavored tort under New York law." *Turley v. ISG Lackawanna, Inc.*, 774 F.3d 140, 158 (2d Cir. 2014). Liability may be found "only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Howell*, 612 N.E.2d at 702. Underscoring that the tort's elements are "rigorous, and difficult to satisfy," the New York Court of Appeals has *never* found a defendant's conduct sufficiently outrageous to sustain such a claim. *See Chanko v. Am. Broad. Cos.*, 49 N.E.3d 1171, 1179 (N.Y. 2016).

New York disfavors intentional infliction claims, in part, because they lack historical pedigree. Like every other state, New York historically refused claims for damages premised purely on emotional injury. *See Nevin v. Citibank, N.A.*, 107 F. Supp. 2d 333, 345 (S.D.N.Y. 2000). The tort emerged on the scene in the mid-20th century as an invention of the legal academy. *See Howell*, 612 N.E.2d at 701. Although the Restatement accepted this new theory of liability, *id.* at 701-02 (citing Restatement of Torts § 46), New York's high court did not recognize intentional infliction as a freestanding cause of action until 1978. *See Freihofer v. Hearst Corp.*, 480 N.E.2d 349, 355 (N.Y. 1985); *Fischer v. Maloney*, 373 N.E.2d 1215, 1217 (N.Y. 1978).

Both New York courts and the U.S. Supreme Court have recognized that this arriviste tort creates special problems when it is used to attack speech. The traditional remedy for injurious speech is defamation—a tort that has been shaped and limited by both centuries of common law development and the First Amendment revolution that began with *New York Times Co. v. Sullivan*, 376 U.S. 254 (1964). *See Turley*, 774 F.3d at 159. Unless courts transposed those carefully drawn

limits onto the intentional infliction cause of action, plaintiffs could evade the constitutional and common law restrictions on defamation actions simply by relabeling their claim.

Thus, in *Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46, 56 (1988), the Supreme Court held that a public figure cannot recover on an intentional infliction claim arising from a publication unless he proves both falsity and actual malice—two constitutionally required elements of a defamation claim.  Accordingly, courts throughout the Second Circuit have held that, where a plaintiff would be barred from bringing a claim for defamation, he is also barred from maintaining an intentional infliction claim grounded in the same facts.  *See, e.g.*, *Chaiken v. VV Publ'g Corp.*, 119 F.3d 1018, 1034 (2d Cir. 1997); *Levin v. McPhee*, 917 F. Supp. 230, 242 (S.D.N.Y. 1996); *Gleason v. Smolinski*, 125 A.3d 920, 933-34 (Conn. 2015).   These cases underscore that "constitutional protection does not depend on the label given the stated cause of action," *Reader's Digest Ass'n v. Superior Court*, 690 P.2d 610, 624 (Cal. 1984), and a plaintiff "cannot avoid the obstacles involved in a defamation claim by simply relabeling it as a claim for intentional infliction of emotional distress."  *Chaiken*, 119 F.3d at 1034.  "Were liability imposed in such a situation, the constitutional protection would be illusory."  *Levin*, 917 F. Supp. at 242; *cf. Weyrich v. New Republic, Inc.*, 235 F.3d 617, 627-28 (D.C. Cir. 2001); *Partington v. Bugliosi*, 56 F.3d 1147, 1160 (9th Cir. 1995).

Those principles are dispositive here.  Although Plaintiffs have framed their claim using the language of intentional infliction, the gravamen of their injury is the publication of allegedly false and defamatory reporting about their son.  But neither the First Amendment nor the law of New York permits family members to recover for the alleged libel of a deceased relative, and Plaintiffs cannot plead around this limitation by restyling their claim:  "We look for the reality, and the essence of the action and not its mere name."  *Morrison v. Nat'l Broad. Co.*, 227 N.E.2d

572, 574 (N.Y. 1967).   While that alone is reason to dismiss the claim, it also fails for the

independent reason that Plaintiffs have failed to allege any "extreme or outrageous" conduct.

### A.    Plaintiffs Cannot State a Claim for Intentional Infliction of Emotional Distress Based on the Alleged Defamation of Their Son.

The claim for intentional infliction is an impermissible attempt to hold Defendants liable

for the alleged defamation of Seth Rich.   Plaintiffs' *only* alleged damages in this case stem from

the publication of news reports about their son.   As their Complaint alleges, "Joel and Mary are

distraught not only because their son has been killed, but also because his good name and

reputation have been irreparably harmed."   Compl. ¶ 132(C).   Their alleged symptoms of post-

traumatic stress disorder, obsessive compulsive disorder, and social anxiety, *id.* ¶¶ 129-133, are

all "triggered by the constant stream of news coverage . . . maligning their son," *id.* ¶ 132(E).

Indeed, their alleged obsessive-compulsive behavior consists of a drive to monitor damaging news

coverage of their son "in order to protect and defend against attacks on his character."   *Id.* ¶ 130.

Neither the First Amendment nor the law of New York permit Plaintiffs to recover for

emotional distress stemming from the publication of "scurrilous allegations about their son and his

murder."   Compl. ¶ 119.   To state a claim for defamation, Plaintiffs must plead and prove that the

challenged publications are actually *about them*—a rule known as the "of and concerning"

requirement.   *See Chau v. Lewis*, 771 F.3d 118, 129 (2d Cir. 2014); *Palin v. N.Y. Times. Co.*, 264

F. Supp. 3d 527, 533-34 (S.D.N.Y. 2017).   The "of and concerning" element is not only a

longstanding feature of the common law; it is constitutionally required.   *See N.Y. Times*, 376 U.S.

at 288.   No matter how much pain it may cause, family members have no right of recovery for

news reporting that allegedly damages a relative's reputation because that reporting is not of and

concerning *them*.   *See, e.g.*, *Sarwer v. Conde Nast Publ'ns, Inc.*, 654 N.Y.S.2d 768, 769 (App. Div.

1997); *Talbot v. Johnson Newspaper Corp.*, 508 N.Y.S.2d 80, 83 (App. Div. 1986).

This principle is no less applicable when the defamed person is deceased.  "In New York, no person, not even a close relative or descendant, can bring an action for defamation of a deceased person."  *Meeropol v. Nizer*, 381 F. Supp. 29, 35 n.3 (S.D.N.Y. 1974).  Indeed, it is "axiomatic that there's no such thing as defaming the dead."  Don Herzog, *Defaming the Dead* ix (2017). Courts thus dismiss defamation claims brought by surviving family members seeking to rehabilitate their loved one's reputation.  *See, e.g.*, *Rose v. Daily Mirror, Inc.*, 31 N.E.2d 182, 182 (N.Y. 1940); *Gugliuzza v. K.C.M.C., Inc.*, 606 So. 2d 790, 792 (La. 1992); *Drake v. Park Newspapers of Ne. Okla., Inc.*, 683 P.2d 1347, 1351 (Okla. 1984); *Casamasina v. Worcester Telegram & Gazette, Inc.*, 307 N.E.2d 865, 866 (Mass. App. Ct. 1974); *see also Curtis v. Evening News Ass'n*, 352 N.W.2d 355, 356-57 (Mich. Ct. App. 1984) (dismissing libel claim based on false statements in a retracted newspaper article about plaintiff's son—a murder victim—for failure to show article was "of and concerning" plaintiff).  Indeed, the states uniformly hold that "[o]ne who publishes defamatory matter concerning a deceased person is not liable . . . to his descendants or relatives."  Restatement (Second) of Torts § 560.

Plaintiffs cannot circumvent these restrictions simply by framing theirs as a cause of action for intentional infliction of emotional distress.  *See Chaiken*, 119 F.3d at 1034.  This Court and others have dismissed similar attempts to bring a barred defamation claim in the guise of an intentional infliction claim.  In *Sylvester v. City of New York*, 385 F. Supp. 2d 431, 436 (S.D.N.Y. 2005), family members of a man who was shot and killed by a detective sought to hold a police spokesman liable for falsely telling the media that multiple witnesses had seen the victim charging at the detective with a knife.  The district court held that the victim's wife and children could not maintain an intentional infliction claim because the "false statements" were "directed at the plaintiffs' family member, but not the plaintiffs."  *Id.* at 442; *see also Martin v. Citibank, N.A.*,

8

762 F.2d 212, 220 (2d Cir. 1985) (holding that an intentional infliction claim can be sustained only if defendant's conduct is "intentionally directed at the plaintiff"); *Busch v. City of New York*, No. 00-cv-5211, 2003 WL 22171896, at *8 (E.D.N.Y. Sept. 11, 2003) (same).

In *Flynn v. Higham*, 197 Cal. Rptr. 145 (Ct. App. 1983), another case that closely parallels the one at bar, a California appellate court dismissed an intentional infliction claim based on a book that claimed the plaintiffs' late father was a Nazi spy.  *Id.* at 146.  The court dismissed plaintiffs' defamation claim, holding that "[a] libel on the memory of a deceased person is not deemed to inflict on the surviving relatives . . . any such legal damage as will sustain a civil action for the defamation."  *Id.* at 147.  It then held that plaintiffs could not state an intentional infliction claim "based on the very same acts which were insufficient to support a cause of action for defamation."  *Id.*  To hold otherwise would render the limitations on libel actions "meaningless" and simply allow plaintiffs "to do indirectly that which they could not do directly."  *Id.* at 148.

Plaintiffs attempt to satisfy the "of and concerning" requirement by alleging that the Fox News article somehow "implicated" them when it identified Wheeler as a private investigator "hired by Rich's family."  Compl. ¶¶ 88, 136(F).  But no reasonable reader would understand the article to imply that "Joel and Mary . . . were involved in establishing" that their son passed documents to WikiLeaks.  Compl. ¶ 136(F).[2]  Far from suggesting that the family embraced Wheeler's statement that "there was some degree of email exchange between Seth Rich and WikiLeaks," the article noted that Joel Rich had previously denied that "his son would leak the emails."  Ex. 1.  And when a family spokesman repudiated Wheeler's comments hours after the

---

[2] It is for the Court to decide as a matter of law whether the article is reasonably susceptible of the meaning plaintiffs ascribe to it.  *See Levin v. McPhee*, 119 F.3d 189, 195 (2d Cir. 1997); Restatement (Second) of Torts § 614(1).

article was published, Fox News updated the story with the headline, "Family of slain DNC staffer Seth Rich blasts detective over report of Wikileaks link."  Ex. 3; Compl. ¶ 90.  That article also reported that Wheeler was not authorized to speak for the family and that Plaintiffs rejected the WikiLeaks reporting as "unsubstantiated."  Exs. 2, 3.  No reasonable reader could understand the piece to imply that the family endorsed Wheeler's position.

### B.   Plaintiffs Fail To Plead Any Extreme or Outrageous Conduct.

The intentional infliction of emotional distress claim should be dismissed for the independent reason that Plaintiffs have failed to plead facts that would establish "extreme or outrageous" conduct by Zimmerman and Fox News.

### 1.   Plaintiffs Cannot Satisfy the Outrageousness Element by Reference to the Content of a News Story on a Matter of Public Concern.

Plaintiffs allege that Fox News and Zimmerman engaged in outrageous conduct when they "knowingly published" a "sham" news report that implicated their son in the DNC email leak.  Compl. ¶ 136(F).[3]  These allegations, grounded entirely in *the content of the article*, fail to satisfy the outrageousness element for at least two reasons.

1.   Even accepting as true the allegation that the Fox News article was a "sham," *see* Compl. ¶ 136(A), publication of a knowingly or recklessly false and defamatory statement of fact is neither extreme nor outrageous as a matter of New York law.  *See Cruz v. Marchetto*, No. 11-cv-8378, 2012 WL 4513484, at *5 (S.D.N.Y. Oct. 1, 2012); *TC v. Valley Cent. Sch. Dist.*, 777 F. Supp. 2d 577, 605 (S.D.N.Y. 2011); *Levin*, 917 F. Supp. at 243; *Bement v. N.Y.P. Holdings, Inc.*,

---

[3] Plaintiffs also charge Fox News with outrageous conduct for publishing "a false news report on its local WTTG Fox 5 affiliate."  Compl. ¶ 136(E).  But Plaintiffs have not alleged a single fact to establish that Fox News Network, LLC, exercises control over the editorial decisions of its local affiliate, as would be necessary for a finding of vicarious liability.  *See, e.g.*, *Pekelnaya v. Allyn*, 808 N.Y.S.2d 590, 597 (App. Div. 2005).

760 N.Y.S.2d 133, 138 (App. Div. 2003); *Butler v. Del. Otsego Corp.*, 610 N.Y.S.2d 664, 666 (App. Div. 1994); *cf. Prozeralik v. Capital Cities Commc'ns, Inc.*, 626 N.E.2d 34, 42 (N.Y. 1993) (holding that publication of a knowingly or recklessly false statement "does not measure up to the level of outrage" that would justify an award of punitive damages).

2.      Where, as here, a publication addresses a matter of public concern, the First Amendment bars plaintiffs from establishing the outrageousness element by reference to the content of the speech.  *See Snyder v. Phelps*, 562 U.S. 443, 457-58 (2011); *Hustler*, 485 U.S. at 55; *see also* Eugene Volokh, *The Trouble With "Public Discourse" as a Limitation on Free Speech Rights*, 97 Va. L. Rev. 567, 585 (2011).  Such was the holding of *Snyder*—a case brought by a bereaved parent who asserted that hurtful speech had compounded his grief from the loss of his deceased son.  562 U.S. at 448-49.  The plaintiff in *Snyder* brought an intentional infliction claim against members of a church group that picketed at the funeral of his son, a Marine, carrying signs that said:  "Thank God for Dead Soldiers," "Thank God for IEDs," "You're Going to Hell," and "God Hates You."  *Id.* at 448.  A jury awarded millions in damages.  *Id.* at 450.

The Supreme Court vacated the verdict, finding that it was barred by the First Amendment. The record in *Snyder* established that the emotional distress inflicted by the protestors stemmed entirely from "the content and viewpoint of the message conveyed" on their signs, rather than from any disruption of the funeral itself.  *Id.* at 457.  Because their speech addressed a matter of public concern, liability could not be imposed simply because the jury deemed the content of these messages "outrageous."  *Id.* at 458.  The Court observed that "[o]utrageousness . . . is a highly malleable standard with an inherent subjectiveness about it which would allow a jury to impose liability on the basis of the jurors' tastes or views."  *Id.*  Such an open-ended standard creates "a real danger of becoming an instrument for the suppression of" precisely the sort of "vehement,

11

caustic, and sometimes unpleasant expression" that is inevitable in the realm of public affairs. *Id.* (brackets omitted).

That principle bars the claim here.  Although Plaintiffs assert that the Fox News article caused them pain, other readers might well consider their son to be a hero.  Far from condemning Seth Rich for the purported leak, the Fox News article portrayed him as a whistleblower who released the DNC emails to expose that "top party officials conspired to stop Sen. Bernie Sanders of Vermont from becoming the party's presidential nominee." Exs. 1, 2, 3.  Emphasizing the point, the article contained a photo of Rich in an American flag ensemble above the cutline:  "Rich was fiercely patriotic, say family members." *Id.*  That readers could take markedly different views of Rich's alleged leak underscores that Plaintiffs cannot satisfy the outrageousness element as a matter of law.  *See Snyder*, 562 U.S. at 458; *Hustler*, 485 U.S. at 55.

### 2.    Fox's Alleged Republication of the Seth Rich Story Was Not Extreme or Outrageous.

Plaintiffs in New York can satisfy the outrageousness element "only where severe mental pain or anguish is inflicted through a deliberate and malicious campaign of harassment or intimidation." *Doe v. Am. Broad. Cos.*, 543 N.Y.S.2d 455, 455 (App. Div. 1989).  In an apparent attempt to satisfy that standard, Plaintiffs allege that Fox News engaged in outrageous conduct when it "repeatedly discussed and referenced" the Seth Rich article before its retraction, Compl. ¶ 104, and "continued to publish and publicize the sham story" even after its retraction, *id.* ¶ 136(H).  Neither of these allegations is sufficient to satisfy the outrageousness standard.

The fact that information regarding an issue of intense public concern is discussed in different media platforms hardly constitutes "a deliberate and malicious campaign of harassment or intimidation" toward plaintiffs.  *See Doe*, 543 N.Y.S.2d at 455.  Plaintiffs point to only four statements postdating the retraction in which Fox News allegedly tied their son to WikiLeaks.

Compl. ¶ 108.  But one of these was published on Sean Hannity's radio show—which is neither produced nor distributed by Fox News (nor do Plaintiffs so allege)—and the remaining three were made by Fox *guests*.  *Id.*  A handful of desultory statements over a seven-month period by guest commentators hardly constitutes the type of sustained malicious conduct necessary to sustain an intentional infliction claim.  *Cf. Turley*, 774 F.3d at 161 (upholding claim where defendant permitted "hate-ridden and menacing environment to persist for more than three years").

### 3.  Fox News's Alleged Newsgathering Techniques Were Not Extreme or Outrageous.

Plaintiffs further charge that Defendants engaged in "extreme and outrageous" behavior when they allegedly participated in a scheme to "recruit" Wheeler to work for the Riches in order "to develop the sham story that they knew would harm Joel and Mary."  Compl. ¶ 136(B).  This allegation fails to satisfy New York's stringent outrageousness standard.

*First*, Zimmerman and Fox's only contribution to the alleged scheme consisted of newsgathering activity.  According to Plaintiffs, Zimmerman exchanged information with Wheeler regarding their parallel investigations into the Rich murder, with Wheeler updating Zimmerman on his conclusions and Zimmerman sharing research to help Wheeler prepare for a meeting with police.  Compl. ¶¶ 60, 68.  Zimmerman also contacted the family three times over five months to ask questions, and she gave Plaintiffs the opportunity to comment on the leak allegations *before* she published her article.  *Id.* ¶¶ 28, 30, 78.  Far from establishing outrageous conduct, these allegations reflect a news reporter's attempt to gather information from sources likely to have knowledge about the murder.  *Cf. DuBoff v. Playboy Enters. Int'l*, No. 06-358, 2007 WL 1876513, at *10 (D. Or. June 26, 2007) ("posing a question to plaintiff over email does not constitute an extraordinary transgression of the bounds of socially tolerable conduct").

Plaintiffs allege that Zimmerman and Fox News engaged in "deception . . . to develop the sham story" about Seth.  Compl. ¶ 136(A).  Importantly, however, Plaintiffs do not allege that either Zimmerman or Fox News made a single deceptive representation that persuaded the family to hire Wheeler.  To the contrary, they devote an entire section of their Complaint to describing how "*Butowsky and Wheeler* Induce[d] Joel and Mary to Hire Wheeler" under the false pretense that he was working solely in the interest of the Rich family.  Compl. VI (emphasis added).

But even if Zimmerman or Fox News *did* engage in some act of deception, courts regularly reject claims that false promises or other unsavory conduct by reporters satisfies the "extreme and outrageous" standard.  *See Howell*, 612 N.E.2d at 705 (trespass onto hospital property to covertly photograph a patient for a news story "does not remotely approach" standard); *Doe v. Am. Broad. Cos.*, 543 N.Y.S.2d at 456 (breach of promise that faces of rape victims would not be identifiable in a television report not outrageous); *see also Desnick v. Am. Broad. Cos.*, 44 F.3d 1345, 1354-55 (7th Cir. 1995) (false promises that reporters "would not use 'ambush' interviews or undercover surveillance tactics" were not tortious); *Ruzicka v. Conde Nast*, 939 F.2d 578, 583 n.8 (8th Cir. 1991) (breach of promise that reporter would not identify sex abuse victim in a news story was not outrageous); *Steele v. Isikoff*, 130 F. Supp. 2d 23, 36 (D.D.C. 2000) (reporter's false promise that interview was off the record was not outrageous, even if it violated journalistic standards).

The Fox Defendants have found only a single case under New York law in which a court has recognized that a journalist's newsgathering techniques constituted intentional infliction, and that case is readily distinguishable.  In *Galella v. Onassis*, 487 F.2d 986 (2d Cir. 1973), the Second Circuit sustained an injunction against a paparazzo who had gone "far beyond the reasonable bounds of news gathering" and placed the late President Kennedy's family in *physical danger* as he aggressively pursued their photographs, *id.* at 995.  Among other conduct, the paparazzo had

"followed [the President's widow] and her children too closely in an automobile, [and] endangered the safety of the children while they were swimming, water skiing and horseback riding." *Id.* at 994. No remotely similar circumstances are present here.

*Second*, Plaintiffs cannot state a claim based on the alleged scheme to recruit Wheeler, because they have not plausibly alleged that the recruitment scheme, as opposed to the publication itself, caused emotional harm. Plaintiffs allege that Zimmerman and Butowsky "recruited Wheeler . . . to develop the sham story" and "implicate[] Joel and Mary by inferring that they were involved in establishing the (fictitious) facts contained in the . . . Article." Compl. ¶ 136(B), (F). But an allegation that Zimmerman recruited Wheeler *in order to convey the message* that the family believed Seth was the source of the email leak is no different from attacking the content of the article itself. And for the reasons given at pp. 9-10, *supra*, Plaintiffs cannot recover for intentional infliction based on the alleged implication that the family condoned the allegations about their son.

Plaintiffs' intentional infliction claim bears a close resemblance to the one the court rejected in *Balderman v. American Broadcasting Cos.*, 738 N.Y.S.2d 462 (App. Div. 2002). In that case, the plaintiff alleged that a major news network committed intentional infliction when it "engaged in acts of deception to induce him into participating in [a] hidden-camera interview" and then edited the tape to make him appear untruthful. *Id.* at 469. The court concluded that any injury the plaintiff suffered was "the result of the allegedly unfavorable portrayal of him in the broadcast, not of defendant's behind-the-scenes deception and editing." *Id.* at 470. Accordingly, the plaintiff's intentional infliction claim was nothing more than an attempt to revive his failed defamation claim and thus barred. The same reasoning should apply here.

## II.   FOX NEWS CANNOT BE HELD LIABLE FOR THE CONDUCT OF WHEELER OR BUTOWSKY.

Unable to identify any tortious conduct by Fox News itself, Plaintiffs seek to hold the network liable for the conduct of Rod Wheeler and defendant Ed Butowsky.  They allege that Wheeler and Butowsky were agents of Fox News—or that they conspired with Zimmerman to inflict emotional distress on the Rich family.  As an initial matter, these allegations are fundamentally inconsistent with each other:  to the extent Plaintiffs have alleged that Zimmerman, Wheeler and Butowsky are "officers, agents and employees of a single corporate entity," they "are legally incapable of conspiring together."  *Chamberlain v. City of White Plains*, 986 F. Supp. 2d 363, 388 (S.D.N.Y. 2013).  These allegations are also meritless for the reasons explained below.

### A.   Fox News Is Not Vicariously Liable for the Conduct of Butowsky or Wheeler.

Plaintiffs cannot hold Fox News vicariously liable for Butowsky's or Wheeler's actions because they have not plausibly alleged that either was an agent of Fox News.  The touchstone of an agency relationship is the principal's control over the agent.  *See, e.g.*, *Aymes v. Gateway Demolition, Inc.*, 817 N.Y.S.2d 233, 234 (App. Div. 2006).  Far from showing Fox's control over Butowsky or Wheeler, the allegations establish that they were pursuing their own agendas and at times acting at cross purposes with Fox News.

Although Plaintiffs assert in conclusory fashion that Fox News controlled Butowsky's actions, Compl. ¶ 144, there is no allegation that Fox News directed him to contact the Rich family or to pay for Wheeler's investigative services out of his own pocket.  To the contrary, Plaintiffs acknowledge that senior editorial staff at Fox News had no idea Butowsky was a source for the Seth Rich story until the day before publication.[4]  That day, Butowsky volunteered in an email to

---

[4] Plaintiffs do not appear to claim that Butowsky is an employee of Fox News.  Although he has appeared as a guest on Fox programs, Butowsky is "not a paid [F]ox contributor."  Compl. ¶ 34.

Fox News producers:  "If you have any questions about the story or more information needed, call me . . . . *I'm actually the one who's been putting this together*."  *Id.* ¶ 82.  And *after* Fox published its article—which made clear the Rich family denied the charges about their son—Butowsky told other news outlets that the family had in fact *confirmed* that Seth was the source of the DNC emails. *Id.* ¶¶ 113-116.  Plaintiffs have provided no plausible basis to believe that Fox directed these statements at odds with its own news reporting, or that it exercised any control whatsoever over Butowsky's tweets or his post-publication attempts to contact the Rich family.  *See id.* ¶¶ 111-116.

As for Wheeler, Plaintiffs point to his contributor agreement with Fox News in support of their claim that he was the network's agent.  Compl. ¶¶ 33, 40; Ex. 11.  But that agreement, which entitles Wheeler only to a per-appearance fee, shows at most that Wheeler is an independent contractor for whose acts Fox News cannot be held vicariously liable.  *See, e.g.*, *Saini v. Tonju Assocs.*, 750 N.Y.S.2d 55, 56 (App. Div. 2002).  Plaintiffs' own allegations establish that Fox News neither controlled nor directed Wheeler's actions in connection with the Rich article.  For example, the Complaint alleges that Wheeler leaked Zimmerman's findings to Fox 5, the local affiliate, the day before Fox News published the story, thus short-circuiting "an exclusive" into which the network had "invested a lot of time and money."  Compl. ¶ 85; *see also id.* ¶ 84.

In any event, Plaintiffs cannot maintain an intentional infliction claim against Wheeler,[5] much less against Fox News.  In New York, intentional infliction is a claim of "last resort" that is available only where the plaintiff would have no other remedy for the conduct at issue.  *See Turley*, 774 F.3d at 158.  But Plaintiffs, by their own lights, have an action against Wheeler for breach of

---

[5] To be clear, the Fox Defendants take the position that any intentional infliction claim against Wheeler *or* Butowsky would fail on the merits.  The claim fails as to Wheeler for the *additional* reason that, by their own lights, Plaintiffs have a remedy against him in contract.

contract.  That Plaintiffs have chosen not to bring such a claim against Wheeler does not give them the right to hold Fox News liable for his alleged breach under an intentional infliction theory.  "The tort of IIED simply has no application when the actor intends to invade some other legally protected interest, even if emotional distress results."  *Id.* at 159 n.18.

### B.    Plaintiffs Cannot Hold Fox News or Zimmerman Liable for Wheeler or Butowsky's Conduct Under a Concerted Action Theory.

Plaintiffs likewise cannot succeed in holding Fox News or Zimmerman liable under either a conspiracy or an aiding and abetting theory.  Neither conspiracy nor aiding and abetting is an independent cause of action in New York.  *See Small v. Lorillard Tobacco Co.*, 720 N.E.2d 892, 898 (N.Y. 1999).  "Allegations of conspiracy are permitted only . . . to connect each defendant with an actionable injury."  *Danahy v. Meese*, 446 N.Y.S.2d 611, 614 (App. Div. 1981).  Because the underlying conduct at issue in this case—publication of a "sham story" about Plaintiffs' deceased son that allegedly "implicated" the Plaintiffs, *see* Compl. ¶¶ 148, 153, 158—is not an actionable tort, the conspiracy and aiding and abetting claims necessarily fail as well.  *See Williams v. Williams*, 53 N.Y.S.3d 152, 153 (App. Div. 2017).

Indeed, the conspiracy and aiding and abetting claims make little sense as applied to Fox News or Zimmerman.  These theories of concerted action liability are a means of holding certain defendants liable for "the primary actor's conduct."  *Gym Door Repairs, Inc. v. Young Equip. Sales, Inc.*, 206 F. Supp. 3d 869, 913 (S.D.N.Y. 2016).  But in this case the allegedly tortious conduct involved publication of a defamatory news article about plaintiffs' son.  It is simply inconceivable that Fox News or Zimmerman could have aided and abetted the publication of their own news story or conspired to publish the same.  *Cf. Naughright v. Weiss*, 826 F. Supp. 2d 676, 692 (S.D.N.Y. 2011) (dismissing conspiracy claim as a matter of law where plaintiff alleged defendant was primarily liable for underlying tort).

18

Finally, even if the conspiracy or aiding and abetting claims could otherwise be maintained under New York law, the First Amendment would bar their application here.  Proof of cooperation between a reporter and a source "who have a common purpose to produce a news story does not represent a sufficient basis for an actionable conspiracy," *even where both parties knew or recklessly disregarded that the publication was false.  Dowd v. Calabrese*, 589 F. Supp. 1206, 1213 (D.D.C. 1984).

> Collaboration between individuals with an axe to grind and reporters eager for a story is not uncommon; rather, it is the way the news media frequently operate. . . . But such collaboration does not, without more, a conspiracy make, that is, an unlawful agreement which, if proved, gives rise to civil damages.

*Id.*  Before liability may be imposed "in this sensitive First Amendment area," plaintiff must present "*specific evidence of a joint purpose to defame*."  *Id.* at 1214 (emphasis added).

Plaintiffs make no plausible allegation in this case that the Fox Defendants, Butowsky, and Wheeler had a joint purpose to inflict emotional distress on the Plaintiffs.  To the contrary, the Complaint alleges that Defendants collaborated on the Seth Rich story in pursuit of other ends: Fox News to improve its ratings, Compl. ¶ 109, and Butowsky to promote the view that Russia was not responsible for the leak of the DNC emails, *id.* ¶ 82.  While Plaintiffs might have felt emotional distress *in response to* the Fox News publication, the Complaint presents no basis to believe that inflicting such injury was the *purpose* of any of the defendants.  *See* Compl. ¶ 1 (asserting that Plaintiffs were mere "innocent bystanders" and "collateral damage").

## III.   PLAINTIFFS HAVE FAILED TO STATE A CLAIM FOR TORTIOUS INTERFERENCE WITH CONTRACT.

Plaintiffs allege that Fox News and Zimmerman "intentionally and improperly procured Wheeler's breach" of his contract with the Riches "by seeking confidential information from Wheeler without Joel and Mary's consent and working with Wheeler to make media appearances

19

to discuss his investigation of Seth's murder."   Compl. ¶ 174.   But "seeking confidential information" and "arranging media appearances" about a newsworthy event is not a tort.  And any attempt to make it one cannot be squared with the First Amendment.

The First Amendment protects not only the right to publish the news, but also the right to gather it in the first place.  For "without some protection for seeking out the news, freedom of the press could be eviscerated." *Branzburg v. Hayes*, 408 U.S. 665, 681 (1972).

News reporting frequently involves the publication of information that one or more parties wish to maintain as secret, and oftentimes reporters encounter sources who are under some obligation of confidentiality.   Both the common law and the First Amendment reflect these realities.   Thus, as explained below, the mere invocation of a private confidentiality agreement does not make the publication of information a tort.   Nor does the existence of a confidentiality provision make it a tort to encourage a private party to reveal information on a matter of public interest.   The common law only prohibits inducing the breach of a contract "without reasonable justification" and "for the sole purpose of harming the plaintiff."  *Huggins v. Povich*, 1996 WL 515498, at *9.   It does not prohibit a reporter from "seeking confidential information" on a matter of public interest, or from seeking to persuade individuals who possess such information "to make media appearances." Compl. ¶ 174.  For this and other reasons, Plaintiffs cannot state a claim for tortious interference with contract.

"Under New York law, the elements of tortious interference with contract are (1) the existence of a valid contract between the plaintiff and a third party; (2) the defendant's knowledge of the contract; (3) the defendant's intentional procurement of the third-party's breach of the contract without justification; (4) actual breach of the contract; and (5) damages resulting therefrom." *Plasticware, LLC v. Flint Hills Res.*, LP, 852 F. Supp. 2d 398, 404 (S.D.N.Y. 2012).

Even assuming that Plaintiffs can satisfy the other elements, it is clear that they have not pleaded "intentional procurement" of a breach "without justification."

### A.     The Complaint Does Not Allege an "Intentional Procurement" of a Breach.

Wheeler's contract did not prohibit him from speaking to the press; rather, the contract prohibited him from "releas[ing] any information regarding [his] investigation . . . *without prior authorization* by [the Riches]."  Compl. ¶ 57.  But there is no allegation that Zimmerman knew when Wheeler revealed information to her that the Riches had not authorized him to do so.  Nor is there any allegation that Zimmerman "specifically intended" to induce him to speak without consent.  *See Interphase Garment Sols., LLC v. Fox TV Stations, Inc.*, 566 F. Supp. 2d 460, 465 (D. Md. 2008).  Zimmerman was pursuing a news story.  She had no obligation to make sure Wheeler had authorization from the Riches to reveal the results of his investigation.  To the contrary, Plaintiffs must allege that she knew he had no consent.  They do not.

The Complaint alleges, for example, that "[o]n or around April 9, 2017, Wheeler sent a text message to Zimmerman stating, 'I'm ready to say Seths Death was not a botched street robbery.'"  Compl. ¶ 60.  That hardly put Zimmerman on notice that he was acting without the Riches' consent.  As a journalist with no independent obligation to Plaintiffs, she was entitled to assume that Wheeler was acting in accordance with any contractual obligation he may have had.

Indeed, even if the Complaint had alleged that Zimmerman knew Wheeler was acting without authorization, that would not prove that she acted with the requisite *intent* to interfere with his contract.  To establish the intentional interference, "plaintiff must show that the defendant's conduct was directed at an existing or prospective economic relationship and not a mere incidental effect of the allegedly wrongful conduct."  *Interphase*, 566 F. Supp. 2d at 465 (brackets omitted).  In other words, "the plaintiff must show that the defendant *specifically intended* to interfere with

its business relations." *Id.* (emphasis added); *see also* Restatement (Second) of Torts § 766 cmt.

h.  Plaintiffs have failed to allege that Fox News "specifically intended" to procure the breach of

Wheeler's contract—rather than gather news in a way that had an "incidental effect" on his

contract.

### B.    The Complaint Does Not Allege that Fox News Acted Without Justification for the Sole Purpose of Harming the Plaintiffs.

"[F]or an action for tortious interference with contract to be sustained, the defendant's

actions must be *improper* and *without reasonable justification* . . . .  The plaintiff must prove that

the defendant actively and intentionally procured the breach *for the sole purpose of harming the*

*plaintiff* through wrongful means such as physical violence, fraud, misrepresentation, . . . or

economic pressure." *Povich*, 1996 WL 515498, at *9 (emphasis added).[6]

There is no allegation that Fox News acted "without reasonable justification," much less

"for the sole purpose of harming" the Riches.  *Id.* at *9.  To the contrary, Fox News's reporter had

a clear journalistic purpose for seeking information from Wheeler:  a news story concerning a leak

of DNC emails that may have affected a presidential election, as well as an unsolved murder that

might have been related to that leak.  This was classic "reporting on an issue of public concern,"

and there is no basis whatsoever to suggest that *any* purpose, much less the sole purpose, was to

harm the parents of the murder victim.  *See Dulgarian v. Stone*, 652 N.E.2d 603, 609 (Mass. 1995)

(tortious interference action could not be sustained where there was "no indication that the report

was broadcast for any reason other than the reporting on an issue of public concern").  Plaintiffs

---

[6] *See also Elliott Assocs., L.P. v. Republic of Panama*, 975 F. Supp. 332, 341-42 (S.D.N.Y. 1997);
*Rapp Boxx, Inc. v. MTV, Inc.*, 642 N.Y.S.2d 228, 228 (App. Div. 1996); *EDP Hosp. Comput. Sys.,*
*Inc. v. Bronx-Lebanon Hosp. Ctr.*, 622 N.Y.S.2d 557, 558 (App. Div. 1995); *Benjamin Goldstein*
*Prods., Ltd. v. Fish*, 603 N.Y.S.2d 849, 851 (App. Div. 1993).

disparage the reporting as a "sham story based on [a] fringe conspiracy theory," Compl. ¶ 39, but even that allegation does not establish that Fox News's sole purpose was to harm Rich's parents.

In this case, as in *Povich*, Fox News's "first amendment right to [report on] an issue of public importance, its lack of any motive to harm the plaintiff[s], and the obvious societal interest in encouraging freedom of the press, negate essential elements of the tort." *Povich*, 1996 WL 515498, at *9. Other cases are to the same effect. In *Huggins v. NBC*, No. 119272/95, 1996 WL 763337 (N.Y. Sup. Ct. Feb. 7, 1996), the court dismissed claims for tortious interference against a news organization based upon the alleged breach of a confidentiality provision contained in a divorce settlement. There, the court found that "[a]ny interference that occurred was merely incidental to defendants' exercise of their constitutional right to broadcast newsworthy information about . . . a public figure." *Id.* at *4. "Defendants' purpose was a legitimate one," the court observed, "and did not involve an intent to unjustifiably interfere with the confidentiality agreement." *Id.* Here, too, the purpose of reporting on the murder investigation and email leak was "legitimate," and any interference with the confidentiality provision of Plaintiffs' contract with Wheeler was entirely incidental to Fox News's reporting. *See also Seminole Tribe of Fla. v. Times Publ'g Co.*, 780 So. 2d 310, 312, 316-18 (Fla. Dist. Ct. App. 2001) (affirming dismissal of tortious interference claim based on reporters' asking sources "to reveal confidential and proprietary documents and information").

So too here, the mere invocation of a confidentiality agreement does not support a claim of intentional interference against a reporter engaged in newsgathering on a matter of public interest. Indeed, the Fox Defendants are not aware of a single case in which a reporter has been subjected to liability for tortious interference with contract for what is alleged here—"seeking confidential information" or arranging "media appearances" on a matter of public interest.

**C.    The Complaint Does Not Allege Damages Arising From the Breach of the Confidentiality Provision.**

The tortious interference claim also fails because the conclusory allegation that Plaintiffs have "suffered significant damage as a result of th[e] interference with their contract," Compl. ¶ 176, is insufficient to state a plausible claim for relief. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). Plaintiffs plainly have no economic damages, as Butowsky agreed to pay the entire bill for Wheeler's services. Compl. ¶¶ 49, 58; Ex. 4. And their claimed emotional damages flow from the alleged implication in the Fox News article that Plaintiffs were "involved in establishing" that their son passed documents to WikiLeaks. Compl. ¶ 136(F).[7] But, for the reasons stated at pp. 9-10, *supra*, the Fox News article cannot fairly be understood to convey any such implication.

**IV.    PLAINTIFFS HAVE FAILED TO STATE A CLAIM FOR NEGLIGENT SUPERVISION AGAINST FOX NEWS.**

Negligent supervision is a theory that enables a plaintiff to recover damages from an employer based on an intentional tort of its employee for which the employer would not ordinarily be liable. *See State Farm Ins. Co. v. Cent. Parking Sys., Inc.*, 796 N.Y.S.2d 665, 666 (App. Div. 2005). "To state a claim for negligent supervision or retention under New York law, in addition to the standard elements of negligence, a plaintiff must show: (1) that the tort-feasor and the defendant were in an employee-employer relationship; (2) that the employer knew or should have known of the employee's propensity for the conduct which caused the injury prior to the injury's occurrence; and (3) that the tort was committed on the employer's premises or with the employer's chattels." *Ehrens v. Lutheran Church*, 385 F.3d 232, 235 (2d Cir. 2004) (affirming dismissal);

---

[7] To the extent Plaintiffs also assert damages from the publication of "scurrilous allegations about their son," Compl. ¶ 119, those damages cannot be attributed to the alleged breach of Wheeler's confidentiality agreement because, wholly apart from Wheeler, Fox News had *an independent source*—the federal investigator—who claimed to "have seen and read the emails between Seth Rich and WikiLeaks." Ex. 1.

*Doe v. Alsaud*, 12 F. Supp. 3d 674, 680 (S.D.N.Y. 2014) (dismissing claim).  Plaintiffs cannot assert a claim of negligent supervision in this case for two reasons.

*First*, for the reasons stated above, there is no basis for any underlying claim of intentional tort by a Fox News employee—or by Wheeler, for that matter.[8]  *Second*, Plaintiffs do not allege any facts that would show that Fox News knew or should have known that its reporter (or Wheeler) had a propensity to commit the torts that are alleged.  Plaintiffs allege in broad terms that "Fox News knew or should have known of the tortious propensities of Zimmerman and Wheeler prior to their tortious conduct that inflicted emotional distress."  Compl. ¶ 181.  But such a conclusory recitation of this element of the claim does not suffice.  To survive a motion to dismiss, plaintiffs must set forth "*specific allegations of the employee's past wrongdoing* to provide a basis from which to infer the employer's knowledge."  *Alsaud*, 12 F. Supp. 3d at 682 (emphasis added).  Plaintiffs have failed to allege a single instance of past wrongdoing by Wheeler or Zimmerman.  For that reason, their claim for negligent supervision fails.  *See Green v. City of Mount Vernon*, 96 F. Supp. 3d 263, 297 (S.D.N.Y. 2015) (dismissing claim for negligent supervision, because plaintiffs failed to plead "*any* facts that could plausibly state a claim" that the city knew of its police officers' propensity for the conduct at issue).

## CONCLUSION

For the reasons stated above, the Court should grant the motion of Fox News Network, LLC, and Malia Zimmerman to dismiss for failure to state a claim.

---

[8] Moreover, as to Wheeler, the Complaint fails to allege any facts establishing that Fox News had a duty of supervision.  The vague and conclusory allegation that he was "an employee *and/or* an independent contractor," Compl. ¶ 180 (emphasis added), does not establish that Fox News exercised any control over his actions.

Respectfully submitted,

s/   Kevin T. Baine

Kevin T. Baine
Dane H. Butswinkas
Joseph M. Terry (*pro hac vice*)

WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, DC 20005

650 Fifth Avenue
Suite 1500
New York, NY 10019
Tel: (202) 434-5000
Fax: (202) 434-5029
kbaine@wc.com
dbutswinkas@wc.com
jterry@wc.com

*Attorneys for Fox News Network, LLC*

*With Consent*,

David H. Stern (*pro hac vice*)
Katherine M. Wyman
Dechert LLP
U.S. Bank Tower
633 West 5th Street, 26th Floor
Los Angeles, CA 90071
Tel: (213) 808-5700
Fax: (213) 808-5760

1095 Avenue of the Americas
New York, NY 10036

*Attorneys for Malia Zimmerman*

DATED: May 7, 2018

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 7, 2018, I electronically filed the foregoing Memorandum in Support of the Motion of Fox News Network, LLC, and Malia Zimmerman to Dismiss For Failure to State a Claim with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record in this matter who are on the CM/ECF system.

*s/ Kevin T. Baine*
Kevin T. Baine
