## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOEL RICH and MARY RICH<br><br>       Plaintiffs,<br><br>v.<br><br>FOX NEWS NETWORK LLC,<br>MALIA ZIMMERMAN in her<br>individual and professional capacities,<br>and ED BUTOWSKY in his individual<br>and professional capacities,<br><br>       Defendants. | Civil Action No. 1:18-cv-2223<br><br>**NOTICE OF MOTION TO DISMISS<br>THE COMPLAINT OF PLAINTIFFS<br>JOEL AND MARY RICH** |

      **PLEASE TAKE NOTICE** that on June 20, 2018, or as soon thereafter as counsel may be heard, the undersigned, attorneys for Ed Butowsky will move before the Honorable George B. Daniels, U.S. District Court, Southern District of New York, for an Order dismissing the Complaint of Plaintiffs Joel Rich and Mary Rich.

      **PLEASE TAKE FURTHER NOTICE** that in support of the within motion, Defendant shall rely upon the Memorandum of Law submitted herewith. A proposed form of Order is also submitted herewith; and

      **PLEASE TAKE FURTHER NOTICE** that Defendant respectfully requests oral argument on the instant motion.

By:   */s/David B. Harrison*
      David B. Harrison

      **SPIRO HARRISON**
      David B. Harrison
      830 Morris Turnpike, 2nd floor
      Short Hills, NJ  07078
      (973) 232-0881
      dharrison@spiroharrison.com

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------- X
JOEL RICH and MARY RICH,                           :      Civil Action No. 1:18-cv-02223 (GBD)
                                                    :
                      Plaintiffs,                   :
                                                    :
            v.                                       :
                                                    :
FOX   NEWS   NETWORK,   LLC,   MALIA               :
ZIMMERMAN in her individual and professional       :
capacities, and ED BUTOWSKY, in his individual     :
and professional capacities,                        :
                                                    :
                      Defendants.                   :
-------------------------------------------------------- X

**MEMORANDUM IN SUPPORT OF ED BUTOWSKY'S MOTION TO DISMISS THE**
**COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(2) AND 12(B)(6)**

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES………………………………………………………………iii

PRELIMINARY STATEMENT…………………………………………………………1

FACTUAL BACKGROUND……………………………………………………………..2

STANDARD OF REVIEW………………………………………………………………5

ARGUMENT—

I.     The Court Lacks Personal Jurisdiction Over All Of Plaintiffs'
Claims Against Mr. Butowsky……………………………………………………6

II.    Plaintiffs Have Failed to State a Claim for Intentional Infliction of Emotional Distress….9

       A.  The Conduct Alleged Against Butowsky by Plaintiffs Was
Not Extreme and Outrageous………………………………………………..9

       B.  Plaintiffs Did Not Allege that Butowsky's Intent was
to Cause Harm Against Plaintiffs………………………………………………13

       C.  Plaintiffs Do Not Allege Mr. Butowsky was Responsible for
Publishing the Allegedly Harmful Story …………………………………………14

       D.  The Publication of the Story and Any Related Speech is
Protected by the First Amendment……………………………………………15

III.   Plaintiffs Have Failed to State a Claim for Aiding and Abetting and Conspiracy
to Commit Intentional Infliction of Emotional Distress as There is No Underlying Tort…16

       A.  New York Law Does Not Recognize Aiding and
Abetting or Conspiracy as Independent Causes of Action…………………16

       B.  The Aiding and Abetting and Conspiracy Claims Must Fail
Because Plaintiffs Have Failed to State a Claim for the Underlying
Tort of Intentional Infliction of Emotional Distress………………………..17

IV.   Plaintiffs Have Failed to Allege a Tortious Interference of Contract Claim……………18

CONCLUSION…………………………………………………………………………..25

A.  The Solicitation of Information from Wheeler Had a Newsworthy
    Purpose and Any Resulting Breach was Incident to that Purpose

B.  Wheeler Would Have Disclosed, and in fact Did Disclose Information
    About the Investigation Without Butowsky

C.  Plaintiffs Allege Damages that are not Supported by their Tortious
    Interference with Contract Claim

D.  The Representative Agreement was Terminable At Will

CONCLUSION......................................................................................20

## TABLE OF AUTHORITIES

<u>**Cases**</u>

*Abacus Fed. Savings Bank v. Lim,*
    75 A.D.3d 472 (1st Dep't 2010)……………………………………………………17, 18

*AIM Int'l Trading, L.L.C. v. Valcucine S.p.A.,*
    2003 U.S. Dist. LEXIS 8594 (S.D.N.Y. May 21, 2003)………………………………24

*Am. Credit Card Processing Corp. v. Fairchild,*
    810 N.Y.S.2d 874 (N.Y. Sup. Ct. Suffolk County 2006)…………………………………12

*Antonios A. Alevizopoulos & Assocs. v. Comcast Int'l Holdings, Inc.,*
    100 F. Supp.2d 178 (S.D.N.Y. 2000)……………………………………………………19

*Ashcroft v. Iqbal,*
    129 S. Ct. 1937 (2009)………………………………………………………………6

*Best Van Line, Inc. v. Walker,*
    490 F.3d 239 (2d Cir. 2007)…………………………………………………………9

*Brodeur v. City of New York,*
    2005 U.S. Dist. LEXIS 10865 (E.D.N.Y. May 13, 2005)………………………………7

*Chanko v. American Broadcasting Cos.,*
    27 N.Y.3d 46 (N.Y. 2016)………………………………………………………...Passim

*Conboy v. AT & T Corp.,*
    84 F. Supp.2d 492 (S.D.N.Y. 2000)………………………………………………………11

*Costlow v. Cusimano,*
    34 A.D.2d 196 (4th Dep't 1970)……………………………………………………14

*Cruz v. Marchetto,*
    No. 11-cv-8378, 2012 WL 4513484 (S.D.N.Y. Oct. 1, 2012)…………………………...16

*Dickinson v. Igoni,*
    76 A.D.3d 943 (2d Dep't 2010)……………………………………………………17

*Faulkner v. Beer,*
    463 F.3d 130 (2d Cir. 2006)……………………………………………………………7

*Feathers v. McLucas,*
    15 N.Y.2d 443 (1965)………………………………………………………………9

*Fischer v. Maloney,*
    402 N.Y.S.2d 991 (1973)…………………………………………………………...10

*Fort Knox Music, Inc. v. Baptiste,*
    203 F.3d 193 (2d. Cir. 2000)……………………………………………………………7

*Freihofer v Hearst Corp.,*
    65 NY.2.d 135 (1985)………………………………………………………………13

*Granite Partners, L.P. v Bear, Stearns & Co. Inc.,*
    58 F Supp 2d 228 (S.D.N.Y. 1999)……………………………………………………...21

*Guard-Life Corp. v S. Parker Hardware Mfg. Corp.,*
    50 NY2d 183 (1980) ………………………………………………………………....24, 25

*Health-Chem Corp. v. Baker,*
    915 F.2d 805 (2d Cir. 1990)……………………………………………………………..20

*Howell v. New York Post Co.,*
    81 N.Y.2d 115 (1993)………………………………………………………………Passim

*In re Magnetic Audiotape Antitrust Litig.,*
    334 F3d 204 (2d Cir 2003)……………………………………………………………7,8

*Innovative Networks, Inc. v. Young,*
    978 F. Supp. 167 (S.D.N.Y. 1997)…………………………………………………………21

*Kirch v. Liberty Media Corp.,*
    449 F.3d 388 (2d Cir. 2006)……………………………………………………………..19

*Kronos, Inc. v. AVX Corp.,*
    81 N.Y.2d 90 (1993)………………………………………………………………24

*Metro. Life Ins. Co. v. Roberston-Ceco Corp.,*
    84 F.3d 560 (2d Cir. 1996)……………………………………………………………7

*Mina Investment Holdings Ltd. v. Lefkowitz,*
    184 F.R.D. 245 (S.D.N.Y. 1999)……………………………………………………...21

*Mortimer ●ff Shore Servs. v. Fed. Republic of Germany,*

615 F.3d 97 (2d Cir. 2010)……………………………………………………..6

*R.A. Mackie & Co., L.P. v. PetroCorp Inc.,*
329 F. Supp. 2d 477 (S.D.N.Y. 2004)……………………………………………24

*RSM Prod. Corp. v. Fridman,*
643 F. Supp. 2d 382 (S.D.N.Y. 2009)……………………………………………19, 21

*Schleifer v. Yellen,*
158 A.D.3d 512 (1st Dep't 2018)……………………………………………………17

*Seltzer v. Bayer,*
272 A.D.2d 263 (1st Dep't 2000)……………………………………………………12

*Shannon v. MTA Metro-North Railroad,*
269 A.D.2d 218 (1st Dep't 2000)……………………………………………………12

*Snyder v. Phelps,*
562 U.S. 443 (2011)……………………………………………………..16

*Taggart v. Costabile,*
131 A.D.3d 243 (2nd Dep't 2015)……………………………………………10,11

*TC v. Valley Cent. Sch. Dist.,*
777 F. Supp. 2d 577 (S.D.N.Y. 2011)…………………………………………...16

*Thomas v. Ashcroft,*
470 F.3d 491 (2d Cir. 2006)……………………………………………………7

*Universal Trading & Inv. Co. v. Credit Suisse (Guernsey) Ltd.,*
560 F. App'x 52 (2d Cir. 2014)…………………………………………...6

*V.S. Int'l, S.A. v. Boyden World Corp.,*
1993 U.S. Dist. LEXIS 2586 (S.D.N.Y. Mar. 4, 1993)………………………………24

*Walden v. Fiore,*
134 S. Ct. 1115 (2014)……………………………………………………8

*Warner v. Druckier,*
266 A.D.2d 2 (1st Dep't 1999)……………………………………………………12

*Watts v. Jackson Hewitt Tax Serv.,*
675 F. Supp. 2d 274 (E.D.N.Y. 2009)………………………………………………24,25

*Wellington Shields & Co. LLC v. Breakwater Inv. Mgmt. LLC*,
    2016 U.S. Dist. LEXIS 35812 (S.D.N.Y. Mar. 18, 2016)………………………………19

**STATUTES**

N.Y.C.P.L.R. § 302(a)…………………………………………………………………………8

**OTHER SOURCES**

Restatement (Second) of Torts § 766…………………………………………………………20

Restatement (Second) of Torts § 774A……………………………………………………..24

## PRELIMINARY STATEMENT

Plaintiffs Joel and Mary Rich have brought this action against Fox News Network, LLC ("Fox"), Malia Zimmerman, and Ed Butowsky based on the publication of a May 16, 2017 news story ("May 16th Article") about their deceased son's involvement in the dissemination of stolen emails from the Democratic National Committee ("DNC") to WikiLeaks. Plaintiffs were not subjects of the article but assert claims as "innocent bystanders" of the fallout from its publication. Plaintiffs' claims are not supported by the facts alleged or the law in New York. The Complaint should be dismissed.

First, this Court does not have jurisdiction over claims against Mr. Butowsky, a Texas resident, where it is not alleged that Mr. Butowsky ever set foot in New York, let alone in connection with the underlying facts of this case. While Plaintiffs are required to allege a "substantial connection" between Butowsky and New York, they have alleged only that he has been a "contributor" on Fox programming at some unknown time and wrote a single email to certain Fox News personnel who were based in New York. The law requires Plaintiffs to allege a "necessary relationship" between Butowsky and New York, not an unspecified, non-financial relationship with Fox News whose location in New York is entirely incidental to his involvement in the underlying allegations.

Plaintiffs substantive claims fair no better. Plaintiffs allege that Butowsky's involvement in the development of the May 16th Article, and his interactions with them in connection with an investigation of their son's murder, give rise to a claim of intentional infliction of emotional distress. But, that claim fails because Plaintiffs cannot meet the high burden of showing that the alleged conduct was sufficiently extreme and outrageous under New York law. The claim also fails because Plaintiffs do not allege that Butowsky intended to cause them emotional harm;

1

rather, they allege that he intended to gather information for the May 16 Article on their son. New York courts do not uphold claims based on such incidental consequences.

The tortious interference claim should also be dismissed.  As with the emotional distress claim, Plaintiffs must allege that Butowsky intended to cause the breach of Plaintiffs' agreement with their private investigator, Rod Wheeler (the "Wheeler Agreement").  Specifically, Plaintiffs claim that Butowsky induced Wheeler's breach of a provision requiring their approval for the sharing of information with third parties.  New York law for tortious interference, again, requires an intent to harm.  The Complaint, however, explains that Butowsky's intent was to further a conspiracy.  If the breach of the Wheeler Agreement was an incidental cause of his efforts, the claim must fail.  Wheeler's own predisposition for disclosing information in violation of his agreement with Plaintiffs also invalidates their tortious interference claim.

Accordingly, Defendant Butowsky requests that the Court dismiss the Complaint in its entirety.

## FACTUAL BACKGROUND

On July 10, 2016, Seth Rich, former Democratic National Committee ("DNC") staffer, was murdered in the streets of Washington, D.C. Compl. ¶ 15.   The Complaint alleges that local law enforcement maintains a "working theory" that the murder was the result of a botched robbery, but it remains unsolved today.  *Id.* ¶ 17.   Plaintiffs allege that Defendants, including Butowsky, used the murder as an opportunity to craft a "sham story" that Seth Rich provided thousands of emails to WikiLeaks, not Russians, as part of a "political war." *Id.* ¶¶ 1; 22; 35. Plaintiffs allege that they are "innocent bystanders of this "political war."  *Id.*

According to the Complaint, Ed Butowsky, a citizen of Texas, is "a frequent contributor on Fox News and Fox Business News."  Compl. ¶ 12.  The Complaint does not allege whether

those contributions to this Fox programming took place in New York or anywhere else for that matter. During the 2016 presidential election, on July 22, 2016, WikiLeaks shared more than 44,000 DNC emails by posting them on its website. *Id.* ¶ 19. The Complaint alleges that certain United States intelligence agencies issued a report concluding that Russian hackers shared the emails with WikiLeaks. *Id.* ¶ 21.

In December 2016, Mr. Butowsky contacted Plaintiffs to share with them information that he had learned about their son – specifically, that Julian Assange, WikiLeaks founder, confirmed that Seth Rich provided WikiLeaks with the stolen emails. *Compl.* ¶ 26. In January 2017, California-based Fox News reporter, Malia Zimmerman, wrote Plaintiffs' spokesperson about the murder, and later, followed up with the spokesperson and Joel Rich stating, "would want to get the information directly from [Joel] or law enforcement to ensure accuracy." *Id.* ¶ 28. According to the Complaint, Plaintiffs told Butowsky that the rumors about their son and WikiLeaks were not true. *Id.* ¶ 32.

In February 2017, Butowsky contacted Rod Wheeler, private investigator in Washington D.C., about conducting an investigation into the murder of Seth Rich. Compl. ¶ 35. The Complaint alleges, on information and belief, that Butowsky and Zimmerman specifically engaged Wheeler "to help advance and further publicize the sham story that Seth was responsible for giving the DNC emails to WikiLeaks." *Id.* ¶ 36. Over the course of the next two months, Butowsky discussed with Plaintiffs the engagement of Wheeler to investigate their son's murder. *Id.* ¶¶ 41-49. The Riches did not pay for Wheeler's services; his services were paid for by Butowsky. *Id.* ¶¶ 49; 58.

Wheeler and the Riches signed an agreement (the "Wheeler Agreement"), attached hereto in the Declaration of David B. Harrison ("Harrison Decl."), Ex. 1, for Wheeler's services that

included Butowsky's obligation to pay for the services and a requirement that Wheeler obtain authorization before disclosing information developed in the investigation to third parties. Compl. ¶ 57. During the course of the investigation, according to the Complaint, Wheeler was working with Zimmerman and Butowsky to develop an article about the murder for Fox News, in violation of the Wheeler Agreement. *Id.* ¶ 59. The Complaint also alleges that Wheeler provided information about the investigation to other unauthorized third parties, including Sean Spicer who was the White House Press Secretary at the time. *Id.* ¶ 63.

During this time, Zimmerman continued working on her article for Fox News on Seth Rich's murder and his disclosure of emails to WikiLeaks. Compl. ¶ 70. She sent several drafts leading up to publication to Wheeler with Butowsky copied. *Id.* ¶ 71. Zimmerman also sought comment from Joel Rich prior to publication. *Id.* ¶ 78. On May 15, 2017, Mr. Butowsky sent an email to "various Fox news producers and on-air talent" about the article and the conclusions drawn from it. *Id.* ¶ 82. Wheeler disclosed the article to a local Fox affiliate reporter who published a story quoting Rod Wheeler, who confirmed the existence of correspondence between Seth Rich and WikiLeaks. *Id.* ¶ 83.

Fox News published the article on May 16, 2017. *Id.* ¶ 87. The Complaint claims, without support, that quotes from a federal investigator and from Wheeler regarding correspondence between Seth Rich and WikiLeaks were fabricated. *Id.* In an article published by Fox News later that day on the same story, Zimmerman confirmed that Wheeler's understanding about the WikiLeaks correspondence, and that the Riches spokesperson stated that Wheeler was not authorized to speak for the family. *Id.* ¶ 90. On May 22, 2017, Wheeler confirmed in a public press release that the information in the article was "essentially correct and worthy of investigation." *Id.* ¶ 105.

On May 23, 2017, Fox News retracted the May 16 Article.  Compl. ¶ 107.  The article claims that Fox News continued to cover the story on its programming over the next few weeks. *Id*. ¶ 108.  Butowsky is not alleged to have had anything to do with these programs.  On May 25, 2017, Butowsky is alleged to have written a private message to Joel Rich in which he urges Plaintiffs to reach out to Zimmerman who has more information about the investigation into their murdered son.  *Id*. ¶ 111.  The Complaint further alleges that Butowsky published two tweets supporting the story and its accuracy, including the fact that Plaintiffs were aware of their son's disclosures to WikiLeaks.  *Id*.  ¶¶ 112; 113.  Plaintiffs further claim that Butowsky confirmed to three separate news publications that Plaintiffs confirmed the story.  *Id*. ¶¶ 115; 116; 117.  Plaintiffs claim emotional harm as a result of the publication of the Fox News story about their son.  *Id*. ¶¶ 118-134.  Plaintiffs have not alleged any pecuniary harm as a result of the tortious interference claim.

## STANDARD OF REVIEW

To survive a motion to dismiss under FRCP 12(b)(6), the complaint "must meet a plausibility standard."  *Mortimer Off Shore Servs. v. Fed. Republic of Germany*, 615 F.3d 97, 114 (2d Cir. 2010).  Although courts accept as true the complaint's allegations, "[t]hreadbare recitals of the elements of a cause action, supported by mere conclusory statements, do not suffice."  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).  "This analysis is a context-specific task that requires [courts] to draw on [their] judicial experience and common sense."  *Mortimer*, 615 F.3d at 114 (quoting *Harris v. Mills*, 572 F.3d 66, 71 (2d Cir. 2009)).

Plaintiff bears the burden of establishing that this Court has jurisdiction.  *Universal Trading & Inv. Co. v. Credit Suisse (Guernsey) Ltd.*, 560 F. App'x 52, 54 (2d Cir. 2014).  "In order to survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must make a

prima facie showing that jurisdiction exists." *Thomas v. Ashcroft*, 470 F.3d 491, 495 (2d Cir. 2006). Such a showing entails making "legally sufficient allegations of jurisdiction," including "an averment of facts that, if credited[,] would suffice to establish jurisdiction over the defendant." *In re Magnetic Audiotape Antitrust Litig.,* 334 F3d 204, 206 (2d Cir 2003). Federal courts apply the personal jurisdiction rules of the forum state, *see Fort Knox Music, Inc. v. Baptiste*, 203 F.3d 193, 196 (2d. Cir. 2000), provided those rules are consistent with the requirements of Due Process, *see Metro. Life Ins. Co. v. Roberston-Ceco Corp.*, 84 F.3d 560, 567 (2d Cir. 1996).

The Court is plainly entitled to look outside the pleadings. *Faulkner v.* Beer, 463 F.3d 130, 134 (2d Cir. 2006). The Court also may consider documents within the public domain on a Rule 12(b)(6) motion. *Brodeur v. City of New York*, No. 04-1859, 2005 U.S. Dist. LEXIS 10865, at \*9-10 (E.D.N.Y. May 13, 2005).

## ARGUMENT

## I.   THE COURT LACKS PERSONAL JURISDICTION OVER ALL OF PLAINTIFFS' CLAIMS AGAINST BUTOWSKY

Plaintiffs' claims arise out of the publication of an article written by California-based Malia Zimmerman, with the assistance of Maryland-based Rod Wheeler and Texas-based Ed Butowsky about their son's involvement in the dissemination of emails to WikiLeaks. Plaintiffs are from Nebraska and their son lived in Washington, D.C. Butowsky has no alleged residence or business presence in New York. Plaintiffs' support for personal jurisdiction over Butowsky boils down to two allegations:

- "Butowsky is a frequent contributor on Fox News and Fox Business News in New York." Compl. ¶ 12.

- "That same day, according to Wheeler, Butowsky wrote by email to various Fox News producers and on-air talent in New York . . . regarding the Zimmerman/Fox Article . . . ." Compl. ¶ 82.

Plaintiffs bear the burden of demonstrating personal jurisdiction over Butowsky. *In re Magnetic Audiotape Antitrust Litig.*, 334 F.3d at 206.  Plaintiffs have fallen well-short.  The Complaint, as to Butowsky, must be dismissed with prejudice for lack of personal jurisdiction on that basis.

In order for New York to exercise specific jurisdiction, Plaintiff must establish that Butowsky's suit-related conduct "create[s] a substantial connection with the forum state." *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014).  This "necessary relationship" must arise out of contacts that the "defendant himself" creates with New York.  *Id.*  The mere occurrence of plaintiff's alleged injury in New York is not enough.  *Id.*

New York's long-arm statute provides that a court may exercise personal jurisdiction over a non-domiciliary whose suit-related conduct falls within one of the following sections:

1. transacts any business within the state or contracts anywhere to supply goods or services in the state; or

2. commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act; or

3. commits a tortious act without the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if he

   (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or

   (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce; or

4. owns, uses or possesses any real property situated within the state.

N.Y.C.P.L.R. § 302(a).

None of these sections plausibly apply to Plaintiffs' claims against Butowsky. New York allows for long-arm jurisdiction over defendants who "commit[] a tortious act within the state, except as to a cause of action for defamation." N.Y.C.P.L.R. 302(a)(2) (emphasis added). Under 302(a)(2), it is the tortious act itself that must be committed in New York to satisfy CPLR 302(a)(2). *Feathers v. McLucas*, 15 N.Y.2d 443, 448, 209 N.E.2d 68, 261 N.Y.S.2d 8 (1965). It is not alleged anywhere in the Complaint that Butowsky committed a tortious act in New York. Indeed, the Complaint is silent on the whereabouts of Butowsky when he participated on Fox programming, when he sent an email communication to Fox personnel, or when he communicated with Zimmerman and Wheeler (neither in New York) about the investigation. Without a single allegation asserting that Butowsky committed any acts within New York, the Complaint should be dismissed.

Further, even if it was determined that Butowsky committed a tortious act in New York, the exception for defamation under CPLR 302(a)(2) should apply. The acts giving rise to the claim relate to the gathering of information for a news story about a public concern. New York's exception for defamation claims was created "to avoid unnecessary inhibitions on freedom of speech or the press" as "[t]hese important civil liberties are entitled to special protections." *Best Van Line, Inc. v. Walker*, 490 F.3d 239, 245 (2d Cir. 2007). Similar concerns resonate here with the publication of a news article which forms the backbone of Plaintiffs' claims.

New York courts have held that, in certain, limited circumstances, Section 302(a)(1) can provide a basis for personal jurisdiction over defamation claims "where purposeful business transactions have taken place in New York giving rise to the cause of action," and there exists a "substantial relationship" between the claim asserted and the actions that occurred in New York. *Best Van Lines*, 490 F.3d at. 249. Those circumstances are not alleged here.

8

Accordingly, Plaintiffs' Complaint as to Butowsky, which alleges no conduct directed toward or from New York, must be dismissed for failure of personal jurisdiction.

## II.     Plaintiffs Have Failed to State a Claim for Intentional Infliction of Emotional Distress

New York courts have enumerated four elements of a cause of action for intentional infliction of emotional distress: "(1) extreme and outrageous conduct; (2) intent to cause, or disregard of a substantial probability of causing severe emotional distress; (3) a causal connection between the conduct and the injury; and (4) severe emotional distress." *Chanko v. American Broadcasting Cos.*, 27 N.Y.3d 46, 56 (N.Y. 2016) (quoting *Howell v. New York Post Co.*, 81 N.Y.2d 115, 121 (1993)).  "The tort of intentional infliction of emotional distress is a departure from the common law," as historically, actors were insulated from liability for causing solely emotional distress. *Taggart v. Costabile*, 131 A.D.3d 243, 249 (citing *McIntyre v. Manhattan Ford, Lincoln Mercury*, 256 A.D.2d 269, 270 (1998)).  Thus, alleging conduct sufficiently outrageous to state a claim for this cause of action is exceedingly difficult. *See Chanko*, 27 N.Y.3d at 57.  Pursuant to New York law, to state a claim for intentional infliction of emotional distress, Plaintiff must allege conduct that is "so outrageous in character, and so extreme in degree, as to go beyond all possible grounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *Fischer v. Maloney,* 402 N.Y.S.2d 991, 992-93 (1973).

### A.  The Conduct Alleged Against Butowsky by Plaintiffs Was Not Extreme and Outrageous

As mentioned above, the standard for stating conduct that is sufficiently "extreme and outrageous" is demanding, and Plaintiffs have failed to meet this great burden with respect to their allegations against Butowsky. *Howell v. New York Post Co.*, 81 N.Y.2d 115, 122 (1993).

122 ("the requirements of the rule are rigorous, and difficult to satisfy") (internal quotations omitted). Indeed, the Court of Appeals has held that "of the intentional infliction of emotional distress claims considered by this court, every one has failed because the alleged conduct was not sufficiently outrageous." *Howell*, 596 N.Y.S.2d at 353 (1993). New York courts have found that it is the first element, the outrageous conduct, that "serves the dual function of filtering out petty and trivial complaints that do not belong in court, and assuring that plaintiff's claim of severe emotional distress is genuine." *Id.* at 121 (citing William L. Prosser, *Insult and Outrage*, 44 Cal L Rev 40, 44-45 (1956)). The outrageousness requirement exists to limit the bounds of liability so that "fictitious claims" of emotional distress caused by "trivialities and mere bad manners" are not litigated in courts. *See Taggart*, 131 A.D.3d 250 (citing Prosser & Keeton, Torts § 12 at 56 (5th ed 1984).

The Complaint details several interactions between Butowsky and Plaintiffs regarding the investigation of their son's murder. These interactions included information that Butowsky had learned about their son (Compl. ¶ 26); that he followed up with them (*Id.* at ¶ 27); that he encouraged them to check their son's bank accounts for any payments from WikiLeaks (*Id.* at ¶ 31); that he would help them hire a private investigator to look into their son's murder (*Id.* at ¶¶ 41, 49); that he told them he knew what they had been through and that he would respect their relationship with Wheeler (*Id.* at ¶¶ 53-54); and finally, that they should contact Malia Zimmerman because she had learned new information about Seth Rich's murder. (*Id.* at ¶ 111).

Plaintiffs do not allege that Butowsky harassed them or was verbally abusive or aggressive towards them in any way. They do not allege that he contacted them against their wishes or that the communications were even unpleasant. This is not the kind of "extreme and outrageous" behavior towards a person that makes out an intentional infliction of emotional

distress claim. *See, e.g., Conboy v. AT & T Corp.*, 84 F. Supp.2d 492, 487, 507 (S.D.N.Y. 2000) (granting motion to dismiss intentional infliction of emotional distress claim where plaintiffs alleged a debt collector obtained their private number and contacted them between 30 and 50 times in a month); *Am. Credit Card Processing Corp. v. Fairchild*, 810 N.Y.S.2d 874, 880 (N.Y. Sup. Ct. Suffolk County 2006) (debt collectors threats that the secret service was going to arrest plaintiff, that he would lose his house, and other threats were "rash, rude, callous, unprofessional and improper" but not so outrageous to establish a cause of action for intentional infliction of emotional distress).

The rare instances where courts have found that the conduct may be enough to meet the strict standard for this claim are cases where the harassing behavior has been severe in nature and has continued for a period of several years. *See Shannon v. MTA Metro-North Railroad*, 269 A.D.2d 218, 219 (1st Dep't 2000) (finding that allegations that defendants "intentionally and maliciously engaged in a pattern of harassment, intimidation, humiliation and abuse, causing him unjustified demotions, suspensions, lost pay and psychological emotional harm over a period of years" were sufficient to support the cause of action); *Warner v. Druckier*, 266 A.D.2d 2, 3 (1st Dep't 1999) (allegations that defendants deliberately, systematically, and maliciously harassed plaintiff over a period of years properly stated a cause of action for intentional infliction of emotional distress).

While the outrageousness requirement can be satisfied "only where severe mental pain or anguish is inflicted through a deliberate and malicious campaign of harassment or intimidation," Butowsky's contact with Plaintiffs over the course of a six-month period cannot be considered a "malicious campaign." *See Seltzer v. Bayer*, 272 A.D.2d 263, 264 (1st Dep't 2000) (finding that plaintiff's allegations that defendant dumped a pile of cement on the sidewalk near his house,

tossed lighted cigarettes into his backyard, threw eggs on his front steps, and threatened to paint a swastika on his house did not meet the standard for outrageousness). As the court in *Seltzer* put it, "[n]oxious and deplorable though this conduct may be," to some, the incidents do not rise to the level of outrageousness required for intentional infliction of emotional distress. *Id*. at 265. In fact, Plaintiffs do not even allege that Butowsky acted in a malicious manner.

Courts similarly have not found the conduct outrageous when the behavior related to gathering material or information for purposes of publishing it in the press. For example, in *Howell v. New York Post Co.*, 81 N.Y.2d 115, a photographer from the New York Post trespassed onto the grounds of a psychiatric facility and took pictures of plaintiff, a patient in the facility. Despite the medical director of the facility asking the defendant not to publish the pictures, the Post published a picture showing the plaintiff's face on the front page of the paper the next day. *Id.* The court affirmed the dismissal of the intentional infliction of emotional distress claim, finding that the newspaper's publication of a newsworthy photograph is contemplated by the privileged-conduct exception, and further finding that the conduct of the photographer trespassing on the psychiatric facility grounds "does not remotely approach the required standard." *Id*. at 126. *See Freinhofer*, 65 N.Y.2d 135 (holding that the facts alleged "clearly" do not meet the standard where defendant newspaper obtained confidential court files in a matrimonial proceeding and published details from the files on multiple occasions). In another Court of Appeals case, the court held that broadcasting a recording of a patient's last moments of life, without consent, and showing the doctor sharing the news of decedent's death with his plaintiff family, also without consent, "would likely be considered reprehensible by most people," but [n]evertheless, it was not so extreme and outrageous to satisfy our exceedingly high legal standard." *Chanko v. American Broadcasting Cos.*, 27 N.Y.3d at 57.

12

Given that New York courts have not found such deplorable conduct sufficient to state the outrageous behavior required for this claim, it appears that what Plaintiffs have alleged against Butowsky would be nowhere near sufficient.  Essentially, what Plaintiffs have said is that Butowsky sought them out and engaged with them about the investigation into their son's murder.  He assisted them in hiring a private investigator, whose services he paid for on their behalf, and he encouraged them to reach out to a reporter who may have had additional information about their son's death.  Even if, as Plaintiffs allege, these actions were taken with the intent to develop a "sham" news story, Butowsky's alleged actions cannot be classified as "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Howell*, 612 N.E.2d at 702 (quoting *Murphy v. Am. Home Prods. Corp.*, 448 N.E.2d 86, 90 (N.Y. 1983)).  On this ground alone, the cause of action for intentional infliction of emotional distress against Butowsky should be dismissed.

### B. Plaintiffs Did Not Allege that Butowsky's Intent was to Cause Harm Against Plaintiffs

As set forth above, an important element of an intentional infliction of emotional harm claim is that Defendant actually intended to cause severe emotional distress.  *See Chanko*, 27 N.Y.3d at 56.  In their Complaint, Plaintiffs have attributed a completely different intention to Butowsky.  For example, at paragraph 25 of the Complaint, Plaintiffs allege that "Butowsky sought out Joel and Mary to further the Defendants' conspiracy."  Later, Plaintiffs assert that Defendants sought out investigator Rod Wheeler "to help advance and further publicize the sham story that Seth was responsible for giving the DNC emails to WikiLeaks."  Compl. ¶ 36.  In fact, the crux of the complaint against Butowsky is that he contacted Plaintiffs and hired Wheeler with the intention and goal of developing the story that Seth Rich provided WikiLeaks the emails,

thereby detracting from the story that the emails were provided by the Russians.  *Id.* ¶ 82.

Plaintiffs do not allege that Mr. Butowsky engaged in any of the alleged behavior with the intent

to harm Mr. and Mrs. Rich.  *See Costlow v. Cusimano*, 34 A.D.2d 196, 199 (4th Dep't 1970)

(intentional infliction of emotional harm claim insufficient where sole motivation of

photographer disseminating pictures of deceased children was not a malicious intent to injure

plaintiffs, who were the parents, but was motivated instead by making profits).  Plaintiffs also

have not alleged, other than in a conclusory fashion, that Butowsky acted with a reckless

disregard of a substantial probability of causing, severe emotional distress to Plaintiffs.  *See*

*Chanko*, 27 N.Y.3d at 57 (noting that the "allegations facially address all of the required

elements" but were still insufficient when plaintiff alleged defendants acted with reckless

disregard for the probability that they would causes plaintiffs to suffer emotional distress and that

defendants knew or should have known that distress was a likely result of their actions).

Finally, it should be noted that the story at issue in the May 16th was related to Plaintiffs'

son, and accordingly, any potential direct harm stemming from the story would only be suffered

by Seth Rich (who is deceased).  Plaintiffs, by their own description, are merely "innocent

bystanders," and, accordingly, are precluded from bringing a claim of emotional distress arising

from the May 16th article about their son.

## C.  Plaintiffs Do Not Allege Mr. Butowsky was Responsible for Publishing the Allegedly Harmful Story

Plaintiffs have alleged the "scurrilous allegations" about their son and his murder caused

them severe emotional harm.  Compl. ¶ 119.  They have also claimed that their symptoms of

emotional distress are "triggered by the constant stream of news coverage making false

accusations and maligning their son."  Compl. ¶ 132 (E).  Plaintiffs do not allege, however that

Butowsky, an independent (unpaid) contributor to Fox News, was responsible for publishing the

May 16 Article, or any related publications.  Plaintiffs merely state that "Butowsky *worked with* Fox News to publish it."  Compl. ¶ 139.  "Working with" a news organization to publish a story, whatever that may mean, is certainly not enough to face liability for any consequences stemming from the publication of the story.  Butowsky, as a contributor to Fox News (consistent with the allegations in the Complaint at Paragraph 12), has no ability to control what does or does not get published by Fox.  Thus, any alleged harm suffered by Plaintiffs as a result of the May 16 Article cannot be attributed to Butowsky, who is not a journalist and is not employed by or associated with Fox in any meaningful capacity.

Moreover, there is no plausible basis to claim that the harm allegedly suffered by Plaintiffs was caused by the civil interactions with Butowsky.  Plaintiffs cannot reasonably say that Butowsky's phone calls, text messages or the act of assisting them in hiring a private investigator (and paying for the services) is what caused the emotional distress they are claiming. As they make clear in the Complaint, Plaintiffs suffered harm as a result of the Fox May 16 Article and the subsequent coverage.  *E.g.*, Compl. ¶ 133.

### D. The Publication of the Story and Any Related Speech is Protected by the First Amendment

As set forth in the Memorandum in Support of the Motion of Fox News Network, LLC, and Malia Zimmerman to Dismiss for Failure to State a Claim, even if it is accepted as true the Fox News article was a "sham," New York law is clear that knowingly or recklessly publishing defamatory statements is not extreme or outrageous.  Fox Motion to Dismiss at 10, *See Cruz v. Marchetto*, No. 11-cv-8378, 2012 WL 4513484, at *5 (S.D.N.Y. Oct. 1, 2012), *TC v. Valley Cent. Sch. Dist.*, 777 F. Supp. 2d 577, 605 (S.D.N.Y. 2011).  The First Amendment precludes Plaintiffs from establishing the requisite outrageousness by referring to the content of the speech. *See Snyder v. Phelps*, 562 U.S. 443, 457-58 (2011) (finding that protests during a funeral could

not be deemed outrageous when emotional distress was caused by the content and viewpoint of the message conveyed by the protestors).

The same principles would apply to the statements made by Butowsky on Twitter, as well as his comments made to various news outlets.  Making remarks on social media or to the news media, even if false, are not extreme or outrageous.  The first of Butowsky's tweet included in Plaintiff's Complaint was about Rod Wheeler saying that he did not provide a quote to Fox. Compl. ¶ 112.  This comment did not relate to and was not directed at Plaintiffs, and, therefore, they have no grounds upon which to claim harm or bring a legal claim.  As for any other comments made by Butowsky, they were not outrageous, even if allegedly defamatory.  *See Cruz*, 2012 WL 4513484, at *5.

**III.** **Plaintiffs Have Failed to State a Claim for Aiding and Abetting and Conspiracy to Commit Intentional Infliction of Emotional Distress as They Have not Stated a Claim for the Underlying Tort**

**A. New York Law Does Not Recognize Aiding and Abetting or Conspiracy as Independent Causes of Action**

As Plaintiffs likely realize they cannot prevail on a direct claim against Butowsky for alleged harm incurred as a result of an article he was not responsible for publishing, they attempt to impose liability through the concerted action theories of conspiracy and aiding and abetting intentional infliction of emotional distress.  These claims against Butowsky fail as well as a matter of law.   New York does not recognize either conspiracy or aiding and abetting as an independent cause of action.  *Schleifer v. Yellen*, 158 A.D.3d 512, 513 (1st Dep't 2018) (finding that the court should have dismissed the conspiracy claim because New York does not recognize it as an independent claim, and where the underlying primary tort of fraud was being dismissed); *see also Dickinson v. Igoni*, 76 A.D.3d 943, 945 (2d Dep't 2010) (dismissing cause of action for

aiding and abetting conversion where plaintiff failed to plead valid cause of action for conversion).

"A cause of action sounding in civil conspiracy cannot stand alone, but stands or falls with the underlying tort." *Abacus Fed. Savings Bank v. Lim*, 75 A.D.3d 472 474 (1st Dep't 2010) (quoting *Romano v. Romano*, 2 A.D.3d 430, 432 (2003)). To establish civil conspiracy pursuant to New York law, the plaintiff "must establish the primary tort, plus the following four elements: (1) an agreement between two or more parties; (2) an overt act in furtherance of the agreement; (3) the parties' intentional participation in the furtherance of a plan or purpose; and (4) resulting damage or injury." *Abacus,* 75 A.D.3d at 474 (internal quotations omitted).

### B. The Aiding and Abetting and Conspiracy Claims Must Fail Because Plaintiffs Have Failed to State a Claim for the Underlying Tort of Intentional Infliction of Emotional Distress

Given that conspiracy and aiding and abetting claims stand or fall with the underlying tort, and in this case, Plaintiffs have failed to properly state a claim for intentional infliction of emotional distress against any of the Defendants, the claims of conspiracy and aiding and abetting must be dismissed. For the reasons set forth herein, as well as for the reasons set forth in the Memorandum in Support of the Motion Fox News Network, LLC and Malia Zimmerman To Dismiss for Failure to State a Claim, Plaintiffs have fallen woefully short of meeting the pleading standard for the tort of intentional infliction of emotional distress.

Even if there was an underlying claim adequately pled, the conspiracy and aiding and abetting claims would still fail as Plaintiffs have not alleged that Butowsky and the other defendants entered into an agreement with a joint purpose. Plaintiffs alleged that Butowsky wanted the "sham story" published to demonstrate that the Russians did not hack the emails and there was collusion between Trump and Russia. Compl. ¶ 82. On the other hand, they allege

17

that Fox exploited the sham story to generate ratings.  Compl. ¶ 109.  Without a joint purpose, no conspiracy can exist.

## IV.    Plaintiffs Have Failed to Allege a Tortious Interference of Contract Claim

Under New York law, to state a claim for tortious interference with contract, Plaintiff must allege: (1) the existence of a valid contract between the plaintiff and a third party; (2) defendant's knowledge of the contract; (3) the defendant's intentional procurement of the third-party's breach of the contract without justification; (4) actual breach of the contract; and (5) damages. *Kirch v. Liberty Media Corp.*, 449 F.3d 388, 401-02 (2d Cir. 2006) (quoting *Lama Holding Co. v. Smith Barney Inc.*, 88 N.Y.2d 413, 668 N.E.2d 1370, 1375, 646 N.Y.S.2d 76 (N.Y. 1996)).  In addition, Plaintiffs must show that each defendant was the "but for" cause of the alleged breach – "in other words, that there would not have been a breach but for the activities of the defendant."  *RSM Prod. Corp. v. Fridman*, 643 F. Supp. 2d 382, 405 (S.D.N.Y. 2009) (citing *Sharma v. Skaarup Ship Mgmt. Corp.*, 916 F.2d 820, 828 (2d Cir. 1990)).  The allegations in support of a tortious interference claim must include "some factual specificity." *Antonios A. Alevizopoulos & Assocs. v. Comcast Int'l Holdings, Inc.*, 100 F. Supp. 2d 178, 186 (S.D.N.Y. 2000) (citing *De Jesus v. Sears, Roebuck & Co.*, 87 F.3d 65, 70 (2d Cir. 1996).

Plaintiffs' entire complaint is based on Butowsky's intent to further a conspiracy about their son, which caused them tremendous emotional harm as innocent bystanders in a political war.  Thus, Plaintiffs cannot support a claim that Butowsky intended to cause the breach of the Wheeler Agreement, or that the solicitation of this information was without justification.  The fact is, Wheeler's own reckless conduct, as detailed in the Complaint, would have and did result in the disclosure of information about the investigation without any inducement from Butowsky. Plaintiffs' claim for tortious interference with contract, therefore, should be dismissed.

### A. The Solicitation of Information from Wheeler Had a Newsworthy Purpose and Any Resulting Breach was Incident to that Purpose

Under the third prong of their tortious interference claim, Plaintiffs must show that Butowsky intentionally procured Wheeler's breach of the contract without justification. *Kirch* 449 F.3d at 401. Thus, in order to show intent, "'it is not enough that a defendant engaged in conduct with a third-party that happened to constitute a breach of the third-party's contract with the plaintiff; instead, the evidence must show that the defendant's *objective* was to procure such a breach.'" *Wellington Shields & Co. LLC v. Breakwater Inv. Mgmt. LLC*, No. 14-cv-7529 (RJS), 2016 U.S. Dist. LEXIS 35812, at *14 (S.D.N.Y. Mar. 18, 2016) (quoting *Roche Diagnostics GmbH v. Enzo Biochem, Inc.*, 992 F. Supp. 2d 213, 221 (S.D.N.Y. 2013) (emphasis added). As detailed below, the solicitation of information about a newsworthy investigation, as alleged by Plaintiffs, was neither without justification, nor was it for the purpose of harming Plaintiffs or procuring the breach. The alleged breach was incidental to the Defendants' lawful purpose, and thus, not actionable under a tortious interference claim.

First, any inquiry conducted by Butowsky of Wheeler, clearly had a justification as noted by the Complaint itself. Throughout the relevant time period, the Complaint alleges a collaboration between Butowsky and Malia Zimmerman to develop a story about the murder of Plaintiffs' son. In constructing that story, Butowsky allegedly procured information about Wheeler's investigation to support the theory that Seth Rich, not Russian hackers, provided the stolen DNC emails to WikiLeaks. Butowsky's alleged pursuit of the information is plainly justified given the undisputed public concerns involved. Plaintiffs' contention that the conclusions sought were untrue, does not negate that Butowsky's efforts were not without justification.

Further, the Complaint details expressly that Butowsky's purpose in pursuing this information was to develop information for a news story, not to cause a breach of Wheeler's agreement with Plaintiffs. "To be actionable, the interference must be intentional and not incidental to some other lawful purpose." *Health-Chem Corp. v. Baker*, 915 F.2d 805, 809 (2d Cir. 1990) (citing *Alvord & Swift v. Stewart M. Muller Constr. Co.*, 46 N.Y.2d 276, 281, 413 N.Y.S.2d 309, 385 N.E.2d 1238 (1978); *see also* Restatement (Second) of Torts § 766 cmt. j (explaining that acting without intent to cause the breach, but with substantial certainty that it will occur, is generally not improper if the interfering party is advancing its own interest and does not use wrongful means). The Complaint does not allege that Butowsky specifically solicited information from Wheeler to cause the breach of his agreement with Plaintiffs. Rather, the complaint alleges that he did so to assist with the development of a sham news story. Without such allegations, other conclusory recitations of the standard, the tortious interference claim should be dismissed.

## B. Wheeler Would Have Disclosed, and in Fact Did Disclose Information About the Investigation Without Butowsky

Plaintiffs must also allege: "that there would not have been a breach but for the activities of defendants." *Innovative Networks, Inc. v. Young*, 978 F. Supp. 167, 180 (S.D.N.Y. 1997). Plaintiffs have not alleged that Butowsky was the but for cause of Wheeler's breach of their agreement; in fact, they have alleged that Wheeler breached the agreement to a third party without Defendants' knowledge or consent. When a complaint alleges that "[the breaching party] exhibited a predisposition toward breaching the Agreement independent of the alleged involvement of the Defendants, Plaintiffs cannot establish 'but for' causation." *RSM Production Corp. v. Fridman*, 643 F. Supp. 2d 382, 410 (S.D.N.Y. 2009); see *Mina Investment Holdings Ltd. v. Lefkowitz*, 184 F.R.D. 245, 251 (S.D.N.Y. 1999) (plaintiff failed to allege "but for" causation

because plaintiff alleged that contract would have been breached regardless of defendant's alleged action); *Granite Partners, L.P. v Bear, Stearns & Co. Inc.*, 58 F Supp 2d 228 (S.D.N.Y. 1999)(tortious interference with contract claim dismissed because, among others, original complaint alleged that non-party "was predisposed toward breaching its agreements . . . and would have done so independently of each of the [defendants]'s actions or participation" (internal quotation marks omitted)).

In this case, Plaintiff's allege that Wheeler independently approached Fox 5 DC and disclosed details and his conclusions about the investigation.  In that exchange, Wheeler first described the political impediments to the Seth Rich murder investigation:

> The police department nor the FBI have been forthcoming.  They haven't been cooperating at all. I believe that the answer to solving his death lies on that computer, which I believe is either at the police department or either at the FBI. I have been told both.

Harrison Decl. Ex. 2.  Wheeler then confirmed that he had an independent source linking Seth Rich to WikiLeaks:

> **Marraco:** "You have *sources at the FBI* saying that there is information…"
> **Wheeler:** "For sure."
> **Marraco:** "…that *could link Seth Rich to WikiLeaks*?"
> **Wheeler:** "Absolutely. *That's confirmed*."

*Id*. Wheeler then implicated the DNC as interfering with the Seth Rich murder investigation, and said that information would come out in the Fox News story:

> I have a source inside the police department that has looked at me straight in the eye and said, 'Rod, we were told to stand down on this case and I can't share any information with you.' Now, that is highly unusual for a murder investigation, especially from a police department . . . . I do believe there is a correlation between the mayor's office and the DNC and that is the information that will come out [on May 16].

*Id*. After Fox 5 DC reported the interview, it quickly became a top news story.  As the Complaint concedes, Fox and Zimmerman were very upset about these disclosures, and they were clearly

not authorized by any of the Defendants. Compl. ¶¶ 84-85. Indeed, it was Wheeler who initiated the contact with Marraco about the story, and he ignored Fox's instruction to refrain from speaking with her. Compl. ¶¶ 75-77. Wheeler's independent disclosure bars Plaintiffs' claim.

Wheeler did not stop there. On May 22, 2017, Wheeler issued a statement, saying that he still believes in a connection between Seth Rich's murder and his employment with the DNC, and that the Fox News story, at the center of this case, "was essentially correct." Compl. ¶ 105. (emphasis added). On May 23, 2017, Wheeler appeared on Fetch Your News, a conservative radio show, on which he confirmed, "I thought it was so important for the people that are watching this know exactly what's going on." He then continued: "I can't go into details because the cease and desist letter (from the Rich family) but let me just say this, I do believe that his death, his murder, is related in some kind of way to his job (with the DNC), or to the relationships at his job (with the DNC) . . . And I also feel that I was getting very close to identifying a motive in this case, and as soon as I got very close, that's when I got stopped." [1] (emphasis added).

A few days later, on or about May 29, 2017, on the radio show Crowdsource the Truth Interview, Wheeler insisted, "I haven't walked back anything. As a matter of fact . . . I said then in my statement in writing that I do believe that there was some communication between Seth and WikiLeaks. And I believe that based on common sense first of all…and from information we're getting from various sources." [2] (emphasis added).

Wheeler's conduct both before and after the publication of the May 16th Article bars any tortious interference claim with respect to the Wheeler Agreement. Wheeler clearly was

---

[1] Available at https://www.youtube.com/watch?v=qcwTF-ObV_g (last visited August 28, 2017).
[2] Available at https://www.youtube.com/watch?v=yDI0AFOHuNI (last visited August 28, 2017).

"predisposed to breaching" the Wheeler Agreement and would have breach it regardless of any conduct by Defendants.

### C. Plaintiffs Allege Damages that are not Supported by their Tortious Interference with Contract Claim

Plaintiffs vaguely allege that they have been substantially damaged by the inducement of Rod Wheeler's breach of the Wheeler Agreement with Plaintiffs, but do not provide any further details about what those damages are or how they were caused.  The rest of the Complaint details that the damages in this case relate to the emotional harm suffered by Plaintiffs from the publication of the May 16th Article, and the subsequent media attention that publication generated.

Plaintiffs cannot piggyback these alleged damages onto their tortious interference claim. The failure to allege damages for the tortious interference claims with any specificity warrants dismissal.  *Comcast Int'l Holdings, Inc.*, 100 F. Supp. 2d 186.[3]  Indeed, actual damages are required to establish a claim for tortious interference with contract. *See Kronos, Inc. v. AVX Corp.*, 81 N.Y.2d 90, 612 N.E.2d 289, 595 N.Y.S.2d 931 (1993); *see also Watts v. Jackson Hewitt Tax Serv.*, 675 F. Supp. 2d 274, 282 (E.D.N.Y. 2009) (dismissal for *inter alia* failing to allege any monetary damages with respect to plaintiff's tortious interference claim).  Plaintiffs concede that they did not pay for Wheeler's services, and they have not alleged any other pecuniary losses for the tortious interference claim.[4]  Without any specific allegations about Plaintiffs' tortious interference damages, the tortious interference claim should be dismissed.

---

[3] It is worth noting that Plaintiffs' single conclusory allegation would not meet the plausibility standard under *Iqbal* either.

[4] Courts have found that the measure of damages for a breach of contract claim and the tort of interference with contract are the same.  *R.A. Mackie & Co., L.P. v. PetroCorp Inc.*, 329 F. Supp. 2d 477, 508 n.10 (S.D.N.Y. 2004); *see also* Restatement (Second) of Torts § 774A, comment e (1979) (damages recoverable for breach of contract are

### D.  The Wheeler Agreement was Terminable At Will

Under New York law, a contract terminable at will cannot be the basis for a tortious interference with contract claim. *AIM Int'l Trading, L.L.C. v. Valcucine S.p.A.*, 2003 U.S. Dist. LEXIS 8594, at *17-18 (S.D.N.Y. May 21, 2003) (citing *Guard-Life Corp. v. S. Parker Hardware Mfg. Corp.,* 50 N.Y.2d 183, 406 N.E.2d 445, 450, 428 N.Y.S.2d 628 (N.Y. 1980)); *see also Watts v. Jackson Hewitt Tax Serv.*, 675 F. Supp. 2d 274, 281 (E.D.N.Y. 2009) ("[T]he case law is clear that  agreements that are terminable at will are classified as only prospective contractual relations, and thus cannot support a claim for tortious interference with existing contracts.") (quoting *Snyder v. Sony Music Entm't Inc.*, 252 A.D.2d 294, 299, 684 N.Y.S.2d 235 (1st Dep't 1999)).  "The reason for this principle is intuitive: there can be no breach of contract, a necessary element for tortious interference with contract, when the contract may be terminated at will." *Id.*  In other words, "[t]he party seeking to impose liability enjoys no legally enforceable right to performance; his interest is a mere expectancy--a hope of future contractual relations." *Guard-Life,* 406 N.E.2d at 450.

The Wheeler Agreement with Plaintiffs is terminable at will by either party, with or without cause.   The termination clause of the agreement reads: "This agreement shall be terminated immediately upon either party giving written notice to the other party."    In *Watts*, the defendants brought a tortious interference with contract counterclaim based on a competitor's induced breach of a confidentiality clause in defendant's employment agreement   The Court held that violations of the underlying employment agreements could not be a basis for a tortious

---

common to actions against the breaching party and the party inducing the breach).   But under New York law, damages for emotional distress are not available for breach of contract. *V.S. Int'l, S.A. v. Boyden World Corp.*, 90 Civ. 4091 (PKL), 1993 U.S. Dist. LEXIS 2586, at *32-33 (S.D.N.Y. Mar. 4, 1993) ("It is axiomatic under New York law that, in a breach of contract action, an individual generally cannot recover for emotional and mental distress, social humiliation, wounded feelings, serious anxiety, or public ridicule allegedly resulting from the breach.") (citing *Marcella v. ARP Films, Inc.*, 778 F.2d 112, 119 (2d Cir. 1985) ("emotional and mental distress is generally not compensable in a breach of contract action . . . particularly in the absence of a physical injury").

interference claim because the agreements were terminable at will. 675 F.Supp.2d at 277.  The court dismissed the claim stating that the at-will nature of the underlying agreement was fatal to tortious interference claim.  The same is true here.

## CONCLUSION

For the foregoing reasons, the Court should grant Defendant Butowsky's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(2) and (b)(6).


s/ David B. Harrison
David B. Harrison
Spiro Harrison
830 Morris Turnpike, 2nd Floor
Short Hills, NJ 07078
Tel: (973) 232-0881
Fax: (973) 232-0887

*Attorney for Defendant Ed Butowsky*

**CERTIFICATE OF SERVICE**

I hereby certify this 14th day of May, 2018 that I caused a true and correct copy of the foregoing document to be electronically filed with the Clerk of the Court using the CM/ECF system which will send notification to the attorneys of record.

*s/David B. Harrison*
David B. Harrison

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

JOEL RICH and MARY RICH

        Plaintiffs,

v.

FOX NEWS NETWORK LLC,
MALIA ZIMMERMAN in her
individual and professional capacities,
and ED BUTOWSKY in his individual
and professional capacities,

        Defendants.

Civil Action No. 1:18-cv-2223

**CERTIFICATION OF
DAVID B. HARRISON IN SUPPORT
OF ED BUTOWSKY'S MOTION TO
DISMISS**

I, DAVID B. HARRISON, of full age, hereby certify as follows:

1.      I am an attorney-at-law in the State of New York and Partner of the law firm Spiro Harrison, attorneys for Defendant Ed Butowsky ("Butowsky").

2.      I make this Certification in support of Butowsky's Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(2) and Fed. R. Civ. P. 12(b)(6).

3.      Attached hereto as Exhibit 1 is a true and correct copy of the Agreement between Plaintiffs Joel Rich and Mary Rich and Rod Wheeler, dated March 14, 2017.

4.      Attached hereto as Exhibit 2 is a true and correct copy of a Fox 5 DC news article dated May 17, 2017 titled "Family's private investigator: There is evidence Seth Rich had contact with Wikileaks prior to death."

I certify that the foregoing statements made by me are true.  I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

**SPIRO HARRISON**

Dated: May 14, 2018                    <u>s/David B. Harrison</u>
                                       David B. Harrison

**EXHIBIT 1**

**Capitol Investigations/Rod Wheeler Representative Agreement**
6710 Oxon Hill Rd. Suite 210
National Harbor, MD 20745
Ph. 202.805.8001
www.4capitol.com

---

**Client: Joel Rich, Mary Rich, Aaron Rich**
**Case: Murder of Seth Rich**
**MPD CCN#16-113-797**

Joel Rich, Mary Rich, and Aaron Rich hereinafter referred to as "Client" do hereby agree to
retain the services of Capitol Investigations/Rod Wheeler Private Investigation Consultants,
which maintains its offices at 6710 Oxon Hill Rd., Suite 210, National Harbor, MD. 20745, for
consultation and information gathering on behalf of the immediate family of Seth Rich on the
following matter:

- Interview and investigate with regards to the official police investigation surrounding
  the death of Seth Rich. The representation shall not include media representation,
  unless otherwise permitted by the Client in writing.
- Granted rights and privileges as that of immediate family members of Seth Rich, with
  discussions with investigating agencies, i.e. Metropolitan Police Department and the FBI.

Capitol Investigations agrees to use its best efforts to investigate the matters set forth and
perform the services for which it is being retained. Capitol Investigations makes no express
warranties, assurances or guarantees with regards to the work that they will complete.
Furthermore, the compensation payable to Capitol Investigations by the third party pursuant to
this agreement are not in any way contingent upon or related to the results of the services
performed or the information and details which are developed during the course of the
investigation.

Capitol Investigations will not retain any additional clients in relation to the murder of Seth
Rich. Capital Investigations will not perform additional services (outside the scope of this
agreement) that are related to the murder of Seth Rich.

This agreement shall be terminated immediately upon either party giving written notice to the
other party.

Client further agrees to defend, indemnify and hold Capitol Investigations and/or its agents and
employees harmless from any and all action, courses of action, claims, damages and demands
of whatever type arising directly or indirectly from the services Capitol Investigations are being
retained to perform pursuant to this agreement. The Client may, however, take actions against
Capitol Investigations and/or its agents or employees for representations made to the media in
violation of this agreement.

Capitol Investigations, LLC
6710 Oxon Hill Road, Suite 210
National Harbor, MD 20745
(202) 805.8001

This agreement shall be binding upon Client's heirs, devisees, legatees, administrators, executors, successors, and assignees.

This agreement shall be construed and interpreted in accordance with the laws of the State of Maryland. If any portion of this agreement is determined to be invalid or unenforceable, the remainder of the agreement shall continue in full force and effect.

All information developed and submitted by Capitol Investigations LLC and provided to Client or Client's authorized representative shall be treated as strictly confidential and not released or disclosed to any third party without the prior written authorization of Capitol Investigations. Capitol Investigations shall not release any information regarding the investigation, including but not limited to findings, working theories or path forward to any third party without prior authorization by Client; unless that third party is an investigating agency, i.e. Metropolitan Police Department and the FBI.

Any and all compensation or fees associated with the investigation and this agreement shall be paid by Mr. Ed Butowsky, the "third party," in accordance with agreements made between Capitol Investigations and Mr. Ed Butowsky. Should any action involved in the investigation create a fee outside of this agreement, or should Mr. Ed Butowsky fail to pay fees, the Client is held harmless and will not be responsible for paying any fees, including outstanding balances.

This agreement constitutes the entire agreement between the parties with respect to the services to be provided by Capitol Investigations pursuant to this agreement. There are no other agreements, express, implied, written, oral or otherwise, except as expressly set forth herein. This agreement may only by modified in writing signed by both parties.

Dated:

3 - 14 - 17

CLIENT(s):

Dated:

3/14/2017

Capitol Investigations, LLC: By:

Capitol Investigations, LLC
6710 Oxon Hill Road, Suite 210
National Harbor, MD 20745
(202) 805.8001

**EXHIBIT 2**



(http://www.fox5dc.com)

⛅ **76° (/weather)** 🔍

**Local News** ▶

DC News (http://www.fox5dc.com/news/dc)   Maryland News (http://www.fox5dc.com/news/maryland)   Virginia News (http://www.fox5dc.com/...

# Family's private investigator: There is evidence Seth Rich had contact with WikiLeaks prior to death



Private investigator: There is evidence Seth Rich had contact with WikiLeaks prior to death

**By: Marina Marraco (mailto:marina.marraco@foxtv.com?body=http://www.fox5dc.com/news/local-news/254852337-story)**

  •••

**POSTED:** MAY 15 2017 10:41PM EDT
**UPDATED:** MAY 17 2017 11:32PM EDT

**WASHINGTON** - **_EDITOR'S NOTE (5/17/17):_** We want to update you on a story you first saw on FOX 5 DC. We want to <u>make an important clarification (http://www.fox5dc.com/news/255305734-story)</u> on claims that were made by Rod Wheeler, the private investigator hired by Seth Rich's family, whose services are being paid for by a third party.

What he told FOX 5 DC on camera Monday regarding Seth Rich's murder investigation is in clear contrast to what he has said over the last 48 hours. Rod Wheeler has since backtracked.

In an interview Monday, Wheeler told FOX 5 DC he had sources at the FBI confirming there was evidence of communication between Seth Rich and WikiLeaks. This is the verbatim of that exchange:



**UP NEXT:**

Seth Rich

FOX 5 DC: "You have sources at the FBI saying that there is information..."

WHEELER: "For sure..."

FOX 5 DC: "...that could link Seth Rich to WikiLeaks?"

WHEELER: "Absolutely. Yeah. That's confirmed."

In the past 48 hours, Rod Wheeler has told other media outlets he did not get his information from FBI sources, contradicting what he told us on Monday.

Since Rod Wheeler backtracked Tuesday, FOX 5 DC attempted incessantly to communicate with him, but he didn't return calls or emails.

On Wednesday, just before our newscast, Wheeler responded to our requests via a telephone conversation, where he now backtracks his position and Wheeler characterizes his on-the-record and on-camera statements as "miscommunication."

When asked if Wheeler is still working for Seth Rich's family, Wheeler told FOX 5 DC the contract still stands-- ties have not been severed.

We reached out once again to the Rich family, and through a spokesperson the Rich family tells FOX 5 DC, "The family has relayed their deep disappointment with Rod Wheeler's conduct over the last 48 hours, and is exploring legal avenues to the family."

_____

*Original story:*

It has been almost a year since Democratic National Committee staffer Seth Rich was murdered in the nation's capital. There have been no solid answers about why he was killed until now.

Rich was shot and killed last July (http://www.fox5dc.com/news/172875295-story) in Northwest D.C and police have suggested the killing in the District's Bloomingdale neighborhood was a botched robbery. However, online conspiracy theories have tied the murder to Rich's work at the DNC (http://www.fox5dc.com/news/195969778-story).

Just two months shy of the one-year anniversary of Rich's death, FOX 5 has learned there is new information that could prove these theorists right.

Rod Wheeler, a private investigator hired by the Rich family, suggests there is tangible evidence on Rich's laptop that confirms he was communicating with WikiLeaks prior to his death. Wheeler's services were offered to the family and paid for by a third party, according to a statement issued by the Rich family Tuesday which also

includes that "the private investigator who spoke to press was offered to the Rich family and paid for by a third party, and contractually was barred from speaking to press or anyone outside of law enforcement or the family unless explicitly authorized by the family."

Now, questions have been raised on why D.C. police, the lead agency on this murder investigation for the past ten months, have insisted this was a robbery gone bad (http://www.fox5dc.com/news/local-news/193631067-story) when there appears to be no evidence to suggest that.

Wheeler, a former D.C. police homicide detective, is running a parallel investigation into Rich's murder. He said he believes there is a cover-up and the police department has been told to back down from the investigation.

**UP NEXT:**

"The police department nor the FBI have been forthcoming," said Wheeler. "They haven't been cooperating at all. I believe that the answer to solving his death lies on that computer, which I believe is either at the police department or either at the FBI. I have been told both."

When we asked Wheeler if his sources have told him there is information that links Rich to Wikileaks, he said, "Absolutely. Yeah. That's confirmed."

Wheeler also told us, "I have a source inside the police department that has looked at me straight in the eye and said, 'Rod, we were told to stand down on this case and I can't share any information with you.' Now, that is highly unusual for a murder investigation, especially from a police department. Again, I don't think it comes from the chief's office, but I do believe there is a correlation between the mayor's office and the DNC and that is the information that will come out [Tuesday].

Wheeler told FOX 5 that he will provide us with a full report with the new details.

FOX 5's Melanie Alnwick spoke with D.C. Police on Tuesday and was told that Wheeler's assertion that a source inside the department told him that detectives were instructed to stand down regarding the Rich case was false.

The family sent Alnwick a statement on Tuesday with the following statement:

"As we've seen through the past year of unsubstantiated claims, we see no facts, we have seen no evidence, we have been approached with no emails and only learned about this when contacted by the press. Even if tomorrow, an email was found, it is not a high enough bar of evidence to prove any interactions as emails can be altered and we've seen that those interested in pushing conspiracies will stop at nothing to do so. We are a family who is committed to facts, not fake evidence that surfaces every few months to fill the void and distract law enforcement and the general public from finding Seth's murderers. The services of the private investigator who spoke to press was offered to the Rich family and paid for by a third party, and contractually was barred from speaking to press or anyone outside of law enforcement or the family unless explicitly authorized by the family."

## PREVIOUS COVERAGE ON THE SETH RICH MURDER INVESTIGATION:

UP NEXT:

**Family of DNC staffer Seth Rich seeking to raise money to help solve his murder (http://www.fox5dc.com/news/local-news/243115020-story)**

**Republican lobbyist says murder of DNC staffer Seth Rich linked to Russian operatives (http://www.fox5dc.com/news/238926113-story)**

**Mother of murdered DNC staffer Seth Rich pleads for public's help (http://www.fox5dc.com/news/218883023-story)**

**Republican lobbyist offers $100K reward in murder of Democratic National Committee staffer Seth Rich (http://www.fox5dc.com/news/205324045-story)**

**WikiLeaks offers $20K reward in murder of DNC staffer Seth Rich (http://www.fox5dc.com/news/187151061-story)**

**WikiLeaks founder addresses death of DNC staffer Seth Rich in Fox News interview (http://www.fox5dc.com/news/195969778-story)**

**Comments by Julian Assange fuel speculation that murdered DNC staffer may have been WikiLeaks source (http://www.fox5dc.com/news/187644313-story)**

**What happened during final hours slain DNC employee Seth Rich was alive? (http://www.fox5dc.com/news/local-news/193631067-story)**

**Parents of slain DNC employee make emotional plea to help find son's killer (http://www.fox5dc.com/news/local-news/185406373-story)**

**DNC honors murdered staffer Seth Rich with memorial bike rack outside of headquarters (http://www.fox5dc.com/news/211991353-story)**

**Vigil held for slain DNC staffer in Bloomingdale (http://www.fox5dc.com/news/173559189-story)**

**DNC employee fatally shot in Northwest DC (http://www.fox5dc.com/news/172875295-story)**

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

JOEL RICH and MARY RICH

       Plaintiffs,

v.

FOX NEWS NETWORK LLC,
MALIA ZIMMERMAN in her
individual and professional capacities,
and ED BUTOWSKY in his individual
and professional capacities,

       Defendants.

Civil Action No. 1:18-cv-2223

**[PROPOSED] ORDER**

**THIS MATTER** having been opened to the Court by Spiro Harrison, attorneys for  Defendant Ed Butowsky, for entry of an Order, pursuant to Fed. R. Civ. P. 12(b)(2) and Fed. R. Civ. P. 12(b)(6), dismissing the Complaint of Plaintiffs Joel Rich and Mary Rich; and the Court having considered the papers and any oral argument related thereto; and for good cause shown;

    **IT IS** on this _____ day of_____2018,

    **ORDERED** that the Complaint of Plaintiffs Joel Rich and Mary Rich is hereby dismissed **with prejudice.**

    **IT IS FURTHER ORDERED** that this Order shall be served on all parties within seven (7) days of receipt thereof by Defendant.

    **SO ORDERED.**

_____
HON. GEORGE B. Daniels
United States District Judge