UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOEL RICH AND MARY RICH,<br><br>   Plaintiffs,<br><br>  v.<br><br>FOX NEWS NETWORK, LLC, MALIA ZIMMERMAN, AND ED BUTOWSKY,<br><br>   Defendants. | Civil Action No. 1:18-cv-02223 (GBD) |

**REPLY MEMORANDUM IN SUPPORT OF THE MOTION OF
FOX NEWS NETWORK, LLC, AND MALIA ZIMMERMAN TO DISMISS FOR
<u>FAILURE TO STATE A CLAIM</u>**

DECHERT LLP
David H. Stern (*pro hac vice*)
Katherine M. Wyman
U.S. Bank Tower
633 West 5th Street
Los Angeles, CA 90071
(213) 808-5700

1095 Avenue of the Americas
New York, NY 10036

*Attorneys for Malia Zimmerman*

June 18, 2018

WILLIAMS & CONNOLLY LLP
Kevin T. Baine
Dane H. Butswinkas
Joseph M. Terry (*pro hac vice*)
725 Twelfth Street, N.W.
Washington, D.C. 20005
(202) 434-5000

650 Fifth Avenue
Suite 1500
New York, NY 10019

*Attorneys for Fox News Network, LLC*

i

**TABLE OF CONTENTS**

I.  PLAINTIFFS FAIL TO STATE A CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS. ...........................................................................................2

   A.  The Intentional Infliction Claim Is an Impermissible Attempt To Recover For the Alleged Libel of Seth Rich. ........................................................................2

   B.  Plaintiffs Fail to Allege Any Extreme or Outrageous Conduct. .............................5

   C.  Fox News Cannot Be Held Liable for the Conduct of Wheeler or Butowsky. ................................................................................................................8

II.  PLAINTIFFS FAIL TO STATE A CLAIM FOR TORTIOUS INTERFERENCE. ............9

   A.  Plaintiffs Fail To Allege Intentional Procurement of Wheeler's Breach of His Contract. ...........................................................................................................9

   B.  Plaintiffs Fail to Allege That Any Procurement of Wheeler's Breach Was Unjustified and For the Sole Purpose of Harming Plaintiffs. ...............................10

   C.  Plaintiffs Fail to Allege Damages From Wheeler's Breach of His Contract. ........11

III.  PLAINTIFFS FAIL TO STATE A CLAIM FOR NEGLIGENT SUPERVISION. .........12

# **TABLE OF AUTHORITIES**

## **FEDERAL CASES**

*Anyanwu v. Columbia Broad. Sys., Inc.*, 887 F. Supp. 690 (S.D.N.Y. 1995) .................................. 2

*Conradt v. NBC Universal, Inc.*, 536 F. Supp. 2d 380 (S.D.N.Y. 2008) .................................... 2, 8

*De Sesto v. Slaine*, 171 F. Supp. 3d 194 (S.D.N.Y. 2016) ................................................................ 6

*Diaz v. NBC Universal, Inc.*, 536 F. Supp. 2d 337 (S.D.N.Y. 2008) ......................................... 2, 3

*Elliott Assocs., L.P. v. Rep. of Panama*, 975 F. Supp. 332 (S.D.N.Y. 1997) .............................. 10

*Galella v. Onassis*, 487 F.2d 986 (2d Cir. 1973) ............................................................................. 8

*Hartwig v. NBC*, 863 F. Supp. 558 (N.D. Ohio 1994) ..................................................................... 3

*Holloway v. Am. Media, Inc.*, 947 F. Supp. 2d 1252 (N.D. Ala. 2013) ........................................ 4

*Hustler v. Falwell*, 485 U.S. 46 (1988) ............................................................................... 3, 6, 7, 8

*Hwang v. Grace Road Church*, No. 14-CV-7187, 2016 WL 1060247
    (E.D.N.Y. Mar. 14, 2016) ............................................................................................................ 12

*Idema v. Wager*, 120 F. Supp. 2d 361 (S.D.N.Y. 2000) ................................................................. 6

*Levin v. McPhee*, 119 F.3d 189 (2d Cir. 1997) ............................................................................... 4

*N.Y. Times Co. v. Sullivan*, 376 U.S. 254 (1964) ....................................................................... 2, 3

*Plasticware, LLC v. Flint Hills Res., LP,* 852 F. Supp. 2d 398 (S.D.N.Y. 2012) ........................ 10

*Rosenblatt v. Baer*, 383 U.S. 75 (1966) ........................................................................................... 3

*Snyder v. Phelps*, 562 U.S. 443 (2011) ................................................................................... 6, 7, 8

*Sylvester v. City of New York*, 385 F. Supp. 2d 431 (S.D.N.Y. 2005) ...................................... 2, 3

## **STATE CASES**

*Armstrong v. Simon & Schuster, Inc.*, 649 N.E.2d 825 (N.Y. 1995) .............................................. 4

*Aronson v. Wiersma*, 483 N.E.2d 1138 (N.Y. 1985) ..................................................................... 5

*Benjamin Goldstein Prods., Ltd. v. Fish*, 603 N.Y.S.2d 849 (App. Div. 1993) .......................... 11

*Doe v. Am. Broad. Cos.*, 543 N.Y.S.2d 455 (App. Div. 1989) ....................................................... 6

*EDP Hosp. Comput. Sys., Inc. v. Bronx-Lebanon Hosp. Ctr.*, 622 N.Y.S.2d 557
(App. Div. 1995) ..................................................................................................10

*Esposito-Hilder v. SFX Broad. Inc.*, 665 N.Y.S.2d 697 (App. Div. 1997) ......................6

*Howell v. N.Y. Post Co.*, 612 N.E.2d 699 (N.Y. 1993) ....................................................6

*Huggins v. Povich*, No. 131164/94, 1996 WL 515498
(N.Y. Sup. Ct. Apr. 19, 1996) ..............................................................................11

*Lerman v. Med. Assocs. of Woodhull, P.C.*, 554 N.Y.S.2d 272 (App. Div. 1990) .........11

*Rapp Boxx, Inc. v. MTV, Inc.*, 642 N.Y.S.2d 228 (App. Div. 1996) ..............................11

*Roach v. Stern*, 675 N.Y.S.2d 133 (App. Div. 1998) ......................................................8

*Rosen v. Brown & Williamson Tobacco Corp.*, 782 N.Y.S.2d 795
(App. Div. 2004) ...................................................................................................9

## OTHER AUTHORITIES

Restatement (Second) of Torts § 614 ................................................................................4

Mark Feldstein, Op-Ed, *Leaking Is As American As Apple Pie and Fourth of July Fireworks*, Wash. Post, Feb. 18, 2017 ....................................................................7

Charlie Savage, *Chelsea Manning To Be Released Early as Obama Commutes Sentence*, N.Y. Times, Jan. 17, 2017 .....................................................................7

Each of the tort claims in this case must be dismissed because they intrude on the right of the free press to report on matters of public concern.  The Fox Defendants argued in their opening brief that the intentional infliction claim could not be sustained because it was an impermissible attempt to plead around one of the elements of a defamation claim—the "of and concerning" requirement.  Plaintiffs do not dispute that this requirement is constitutional in nature, yet they take the remarkable position that they need not satisfy it here.  Their contention has been repudiated by a substantial body of New York case law—just one of the several instances where Plaintiffs misconstrue or outright misstate the law.  Their intentional infliction claim fails for the additional reason that Plaintiffs cannot show that either the content of Fox's news coverage or its reporting techniques were extreme or outrageous as a matter of law.

The tortious interference claim must likewise be dismissed because Plaintiffs have failed to satisfy its essential elements.  Plaintiffs have failed to set forth an adequate allegation that Fox News or Zimmerman intentionally procured the breach of Wheeler's confidentiality clause, because they make no allegation that Zimmerman knew Wheeler lacked permission to speak about his investigation.  They likewise fail to allege that any interference with the contract was accomplished without justification and for the sole purpose of harming the Plaintiffs.  Indeed, the fact that Fox News was reporting on a question of obvious national importance negates any inference that the object of its May 16, 2017, article or subsequent coverage was to injure the Plaintiffs.

For these reasons and others given below, the complaint should be dismissed with prejudice.

## I. PLAINTIFFS FAIL TO STATE A CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS.

### A. The Intentional Infliction Claim Is an Impermissible Attempt To Recover For the Alleged Libel of Seth Rich.

The key to dismissing the intentional infliction claim is contained in the first paragraph of the opposition brief, where Plaintiffs claim a right to relief for Fox's alleged effort "*to smear [their] dead son.*" Opp. 1 (emphasis added). The law could not be more clear that Plaintiffs cannot recover for allegedly libelous news coverage that is not "of and concerning" them, nor can they plead around that ancient limitation on defamation actions by repackaging their claim as one for intentional infliction of emotional distress. Fox Br. 5–9. The "of and concerning" requirement is imposed by the First Amendment itself, *see N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 288 (1964), and cannot be so easily circumvented.

Relying entirely on two district court cases from Ohio and Alabama, Plaintiffs contend that the "of and concerning" requirement does not apply to intentional infliction claims. Opp. 16–17. To state the obvious, this nonbinding authority cannot subvert the large body of New York case law holding that intentional infliction claims premised on speech must be dismissed if plaintiffs cannot show the speech was actually *about them. See, e.g.*, *Diaz v. NBC Universal, Inc.*, 536 F. Supp. 2d 337, 344–45 (S.D.N.Y. 2008); *Anyanwu v. Columbia Broad. Sys., Inc.*, 887 F. Supp. 690, 693–94 (S.D.N.Y. 1995); *Conradt v. NBC Universal, Inc.*, 536 F. Supp. 2d 380, 399–400 (S.D.N.Y. 2008) (applying Texas law) (cited by Plaintiffs); Fox Br. 7–9 (citing additional cases).[1]

---

[1] Plaintiffs argue that one of the cases cited in Fox's opening brief, *Sylvester v. City of New York*, 385 F. Supp. 2d 431 (S.D.N.Y. 2005), actually supports their position because the district court there permitted plaintiffs—surviving family of a man killed by New York City police—to maintain an intentional infliction claim where police "implicat[ed]" the family in false statements about the decedent. Opp. 17. Plaintiffs significantly misstate the facts and holding of *Sylvester*. The court there *rejected* an intentional infliction claim based on false statements the police made about the decedent, because plaintiffs could not show the statements were of and concerning *them*. 385 F. Supp. 2d at 442. The court *permitted* the intentional infliction claim only to the extent it was based on the following facts: the police detained plaintiffs for

Nor does Plaintiffs' position square with *Hustler Magazine v. Falwell*, 485 U.S. 46 (1988), where the Supreme Court held that a public figure plaintiff cannot attack speech under an intentional infliction theory without proving falsity and actual malice, two constitutionally required elements of a libel claim.  Like those elements, the "of and concerning" requirement is constitutional in nature, *see Rosenblatt v. Baer*, 383 U.S. 75, 80–83 (1966); *N.Y. Times*, 376 U.S. at 288; *Diaz*, 536 F. Supp. 2d at 342, and there is no conceivable reason the Supreme Court would elevate some First Amendment limits on defamation actions over others.[2]  Permitting plaintiffs to hold news organizations liable for reporting that is *not even about them* would render the limits on defamation actions all but meaningless, with an all but certain chilling effect on protected speech. Plaintiffs have not cited, nor are the Fox Defendants aware of, a single appeals court decision that countenances such a result.

Even the two out-of-state district court cases cited by Plaintiffs recognize that plaintiffs cannot maintain an intentional infliction claim unless the publication at issue actually targets *them*. Although these courts declined to recognize the "of and concerning" requirement as a formal limitation on intentional infliction claims, they reached the same result by other means.  In *Hartwig v. NBC*, 863 F. Supp. 558, 563 (N.D. Ohio 1994), the court concluded that plaintiffs, the family of a deceased Navy seaman whose role in a deadly explosion was the subject of several news stories,

---

questioning, although they had committed no crime; pressured *them* to make false statements about the decedent; and refused their requests to be released from custody as their family member was dying from his wounds in a nearby hospital.  *Id.* at 443.  No remotely similar circumstances are present here.  Plaintiffs' statement that *Sylvester* permitted a speech-based claim to proceed is simply false.

[2] Plaintiffs argue that they need not satisfy the "of and concerning" requirement because, unlike defamation actions, intentional infliction claims do not protect their interest in reputation—rather, they protect their "mental or emotional well-being."  Opp. 16.  In *Hustler*, the plaintiff made this same point in arguing that the falsity and actual malice requirements should not apply to intentional infliction claims, and the Supreme Court expressly rejected it.  485 U.S. at 52–53.  And notably, in *Hustler*, unlike this case, the publication was "of and concerning" the plaintiff.

3

could not show extreme or outrageousness conduct where there was no evidence that the reporting was in any way *directed at them*. And in *Holloway v. American Media, Inc.*, 947 F. Supp. 2d 1252 (N.D. Ala. 2013), the court held that a plaintiff could not satisfy the intent element of an intentional infliction claim except upon a showing that the speech was "motivated by a specific intent to cause emotional harm to a particular person," *id.* at 1263. The court even observed that "[t]he limiting principles that the 'of and concerning' requirement provide[s] in a libel case are similarly served in an outrage case by the intent element." *Id.* at 1264. In this case, there is simply no allegation that the object of Fox's news reporting was to inflict emotional injury on the Rich family. To the contrary, in the opening line of their complaint, Plaintiffs describe themselves as "*collateral damage* in a political war to which they are *innocent bystanders*." Compl. ¶ 1 (emphasis added).

Plaintiffs next argue that even if the "of and concerning" requirement does apply here, they can satisfy it because the May 16, 2017, Fox News article implied they "were involved in establishing that their son passed documents to Wikileaks" when it used their private investigator as a source. Opp. 16. This argument suffers from two fundamental flaws.

*First*, the article cannot reasonably be understood to imply that Plaintiffs had established a connection between their son and Wikileaks. Plaintiffs contend, without citation, that it is a question of fact whether the article conveys such a meaning. Opp. 14, 16. They misstate the law: it is well-established that the court must decide *as a matter of law* whether a publication can reasonably be understood to bear the meaning plaintiff ascribes to it. *See, e.g.*, *Levin v. McPhee*, 119 F.3d 189, 195 (2d Cir. 1997); *Armstrong v. Simon & Schuster, Inc.*, 649 N.E.2d 825, 829 (N.Y. 1995); Restatement (Second) of Torts § 614(1). Plaintiffs contend that the article's reference to Joel Rich's "*previous[]*" denial that his son had leaked the emails might be understood to imply that he had changed his position in light of Rod Wheeler's investigation. Opp. 14. But the Court

4

need not accept this "strained [and] artificial construction" urged by Plaintiffs. *Aronson v. Wiersma*, 483 N.E.2d 1138, 1139 (N.Y. 1985). As an initial matter, Fox News did not use the word "previous," on which Plaintiffs place so much emphasis. It reported that Joel Rich "told Fox News in January that he didn't believe his son would leak the emails"—while simultaneously noting that he could not be reached for comment at the time of publication. Ex. 1. What is more, when Fox reached the Rich family spokesman *later that day*, it updated the article to convey the family's vigorous denial of Seth's involvement in the email leak. Exs. 2, 3. Plaintiffs have no response at all to Fox's argument that this updated version of the article could not possibly be understood to convey that Plaintiffs were "a mouthpiece for their own son's guilt," Opp. 1, much less that Fox intended such an implication.

*Second*, Plaintiffs have not sufficiently alleged that their emotional injury flows from any statement about them in the Fox News article. To the contrary, their complaint is replete with allegations that their injury stems from "the scurrilous allegations *about their son and his murder*." Compl. ¶ 119 (emphasis added). To underscore the point, Plaintiffs claim damages not just from Fox's May 16 article, but also from Fox's continued repetition of the Seth Rich story on various news talk shows. *Id.* ¶¶103–104, 108–109, 122–123, 133, 136(H); *see also* Opp. 11. But they make no allegation that either Fox News or its guests ever stated or implied in this subsequent coverage that Plaintiffs were "involved in and confirmed the substance of this smear campaign." *Id.* ¶ 4. Their own allegations make plain that their damages flow from the alleged—and *nonactionable*—libel of their son.

### B. Plaintiffs Fail to Allege Any Extreme or Outrageous Conduct.

The intentional infliction claim must be dismissed for the independent reason that neither the content of the article nor Fox's newsgathering methods were extreme or outrageous. Plaintiffs contend that their claim should survive the motion because "courts have sustained claims that

5

allege less egregious conduct." Opp. 10. But this court has rejected the three specific cases on which Plaintiffs rely, Opp. 10–11 (citing *Flatley*, *Halio*, and *Flamm*), as "inconsistent with the high standard New York state has established for claims of intentional infliction of emotional distress," *De Sesto v. Slaine*, 171 F. Supp. 3d 194, 202–03 (S.D.N.Y. 2016), noting that they "significantly predate" the seminal decision in *Howell v. New York Post Co.*, 612 N.E.2d 699 (N.Y. 1993).[3] Far from taking a permissive stance toward these claims, as Plaintiffs suggest, this court has recognized that "[i]t is nearly impossible in New York for a plaintiff to state a viable claim for intentional infliction of emotional distress." *Idema v. Wager*, 120 F. Supp. 2d 361, 370 (S.D.N.Y. 2000); *see also Hustler*, 485 U.S. at 53 ("the law does not regard the intent to inflict emotional distress as one which should receive much solicitude"); *Doe v. Am. Broad. Cos.*, 543 N.Y.S.2d 455, 456 (App. Div. 1989) (rejecting intentional infliction claim by rape victims induced to participate in television news story by promises of anonymity).

Plaintiffs readily acknowledge that their intentional infliction claim is premised in part on the content of the Fox News article and subsequent coverage. Opp. 11, 19–20. But the Supreme Court held in *Snyder v. Phelps*, 562 U.S. 443, 457–58 (2011), that the First Amendment bars a plaintiff from satisfying the outrageousness element of the claim by reference to the content of speech on a matter of public concern.[4] *Snyder* is of particular relevance here because the plaintiff

---

[3] In support of their position that intentional infliction may be used to punish pure speech, Plaintiffs quote a line from *Howell* in which the Court of Appeals noted that the tort "may overlap other areas of the law, with potential liability for conduct that is otherwise lawful." Opp. 16 (quoting 612 N.E.2d at 702). Plaintiffs take this quote entirely out of context: for the *Howell* court, the open-ended nature of the tort was a reason to *restrict* its reach where speech was concerned. 612 N.E.2d at 702.

[4] Plaintiffs contend that "speech alone may form the basis for an IIED claim." Opp. 16. But the case on which they rely, *Esposito-Hilder v. SFX Broadcasting Inc.*, 665 N.Y.S.2d 697 (App. Div. 1997), not only predated *Snyder*—it also involved speech about *a private figure* and *a matter of purely private concern*, *id.* at 699. Additionally, in *Esposito*, unlike in this case, the facts alleged permitted the court to draw "an inference that defendants' conduct represented a deliberate intent to inflict injury upon plaintiff," with whom defendants had a professional rivalry. *Id.* at 700–01.

there, like Plaintiffs here, was a parent whose grieving over his deceased son was compounded by speech challenged as offensive—there, pickets with messages such as "Thank God for Dead Soldiers." Because the speech at issue was at a public place on a matter of public concern, it was "entitled to 'special protection' under the First Amendment . . . that . . . cannot be overcome by a jury finding that the picketing was outrageous." *Id.* at 458. Indeed, the Court cautioned that outrageousness "is a highly malleable standard with an 'inherent subjectiveness about it which would allow a jury to impose liability on the basis of the jurors' tastes or views'"—a risk the Court called "unacceptable." *Id.* (quoting *Hustler,* 485 U.S. at 55).[5]

Plaintiffs argue that *Snyder* and *Hustler* do not apply because they involved challenges to pure speech, whereas their claim involves a challenge to *both* the Fox News article and the supposedly outrageous conduct that preceded it. Opp. 19, 21. But Plaintiffs cite no authority, and Fox is aware of none, that would insulate their claim from First Amendment analysis simply because they have paired their attack on the *content* of the Fox News article with allegations of impermissible *conduct* in the reporting of the news story. Nor would such a result make sense when, as in this case, the damage claimed stems from the content of the publication.

Plaintiffs also argue that Fox's newsgathering techniques were themselves extreme and outrageous, but unlike in the cases cited by Plaintiffs, there is no allegation here that the

---

[5] Fox argued in its opening brief that the May 16, 2017, article was not outrageous as a matter of law because readers would hold divergent opinions about Seth Rich's alleged leak—with some doubtless considering Rich a hero. Plaintiffs dismiss this position as "absurd," and liken it to arguing that a defendant should escape liability for calling plaintiff a Nazi because Skinheads would regard the accusation as an accolade. Opp. 15. Far from it. Whether and when it is ever acceptable to leak confidential documents on matters of public concern is a hotly contested question in civil society. *See, e.g.*, Mark Feldstein, Op-Ed, *Leaking Is As American As Apple Pie and Fourth of July Fireworks*, Wash. Post, Feb. 18, 2017 (describing some of "Washington's most important leaks" as "heroic" even though they "technically run afoul of the law"); Charlie Savage, *Chelsea Manning To Be Released Early as Obama Commutes Sentence*, N.Y. Times, Jan. 17, 2017 (noting that the President's act of clemency was "sharply criticized by several prominent Republicans"). The fact that a reader's reaction to Seth Rich—menace or whistleblower?—will turn on his political "tastes or views" is precisely the reason that the speech cannot be outrageous as a matter of law.

7

newsgathering techniques were *independently tortious*. *See Galella v. Onassis*, 487 F.2d 986 (2d Cir. 1973) (paparazzo committed assault while attempting to take photos of President Kennedy's widow and children); *Conradt*, 536 F. Supp. 2d at 383–87, 397 (applying Texas law) (news organization stage-managed a police raid that led to the suicide of the intended target); *Roach v. Stern*, 675 N.Y.S.2d 133 (App. Div. 1998) (radio personality Howard Stern played with the cremated remains and chewed on the bone fragments of a former topless dancer); *see also Snyder*, 562 U.S. at 461 (Breyer, J., concurring) (arguing that the First Amendment would not protect a defendant who physically assaulted plaintiff in order to "transmit . . . his views on a matter of public concern"). Here, there was no separate tort causing injury apart from the publication itself. Indeed, according to Plaintiffs, the very purpose of the alleged scheme to "plant[]" Wheeler with the Rich family was to give Zimmerman a source who would lend her article credibility. Opp. 11.

And the Plaintiffs, relying on *Hustler*, further argue that the First Amendment does not bar their claim for intentional infliction of emotional distress because they have alleged that Fox News published false statements of fact with actual malice. Opp. 21. But *Hustler* did not hold that a showing of malice can satisfy the outrageousness element. *Hustler* held that a publication that was of and concerning a public figure plaintiff could not give rise to liability without a showing of actual malice. 485 U.S. at 56. It did not hold that the conduct at issue satisfied any state law requirement of outrageousness. And the courts of New York have held *as a matter of New York law* that publication of a knowingly false statement of fact is insufficient to satisfy the outrageousness element. Fox Br. 10–11. Plaintiffs ignore those cases altogether.

      **C.**    **Fox News Cannot Be Held Liable for the Conduct of Wheeler or Butowsky.**

Plaintiffs argue that Fox News is vicariously liable for Wheeler and Butowsky's conduct because both were agents over whom Fox News exercised control. To establish such an agency relationship, Plaintiffs point to allegations that Wheeler sought "*permission*" from Fox News

8

before he provided information about his investigation to the local D.C. Fox affiliate. Opp. 24. But the complaint alleges that Fox News actually *refused* Wheeler such permission—and that he talked to the Fox 5 reporter anyway. *See* Compl. ¶¶ 76–77. Plaintiffs' own allegations therefore refute any suggestion that Fox News exercised the control over Wheeler necessary to establish an agency relationship. As for Butowsky, Plaintiffs argue that he had an agency relationship with Fox News because Fox "worked with" him to develop the Seth Rich story. Opp. 25 (citing Compl. ¶ 138). But the threadbare assertion that Butowsky worked with Fox News is plainly insufficient to establish that Fox News exercised *control* over him in relation to the Rich story. Fox Br. 16.

Plaintiffs likewise fail to allege facts supporting an aiding and abetting theory. As Plaintiffs acknowledge, they must plead and prove that Fox provided "substantial assistance" in the commission of an underlying tort. But they point to no conduct by Wheeler or Butowsky, assisted by Fox, that could independently give rise to a claim for intentional infliction of emotional distress.

As for the conspiracy count, Plaintiffs acknowledge that they must show that Defendants reached an agreement *to intentionally inflict emotional distress* and that each played a key role in carrying out that agreement. Opp. 27. The conspiracy count must be dismissed because there is not a single allegation in the complaint that would support the inference that the *purpose* of Defendants' alleged scheme was to inflict emotional distress on Plaintiffs, as opposed to publishing a news article. *See Rosen v. Brown & Williamson Tobacco Corp.*, 782 N.Y.S.2d 795, 795 (App. Div. 2004).

## II. PLAINTIFFS FAIL TO STATE A CLAIM FOR TORTIOUS INTERFERENCE.

### A. Plaintiffs Fail To Allege Intentional Procurement of Wheeler's Breach of His Contract.

The tortious interference claim must be dismissed because Plaintiffs have failed to allege facts to establish that Zimmerman intentionally procured any breach of Wheeler's contract.

9

Plaintiffs emphasize in their opposition that Zimmerman was *aware of* the contractual relationship between Wheeler and the Riches. But awareness of the contract and intentional procurement of Wheeler's breach of the contract are not the same thing. Wheeler's contract with the Plaintiffs permits him to share the results of his investigation with the family's authorization, *see* Ex. 4; Compl. ¶ 57, and there is no allegation that Zimmerman knew the Plaintiffs had failed to give him such permission here. Nor do Plaintiffs argue, because they cannot, that Zimmerman had any obligation to verify whether Wheeler had sign-off from the Rich family before she quoted him as a source in her news article. Because a tortious interference claim requires proof of intentional procurement of a breach, and Plaintiffs have failed to allege such an intentional procurement, their claim must be dismissed. *See Plasticware, LLC v. Flint Hills Res., LP,* 852 F. Supp. 2d 398, 404 (S.D.N.Y. 2012).

### B. Plaintiffs Fail to Allege That Any Procurement of Wheeler's Breach Was Unjustified and For the Sole Purpose of Harming Plaintiffs.

The tortious interference claim fails for the independent reasons that Plaintiffs have failed to allege facts showing that the "sole purpose" of this conduct was to harm them, *see Elliott Assocs., L.P. v. Rep. of Panama*, 975 F. Supp. 332, 342 (S.D.N.Y. 1997), or that Fox lacked justification for its purported inducement of the contract breach, *see Plasticware, LLC,* 852 F. Supp. 2d at 404. Plaintiffs' assertion that New York courts apply the "sole purpose" requirement only to claims for interference with prospective contracts is incorrect. *See* Opp. 28–29. Numerous cases cited in Fox's opening brief hold that New York *does* require a "sole purpose" analysis for claims of tortious interference with *existing* contracts. *See, e.g.*, *EDP Hosp. Comput. Sys., Inc. v. Bronx-Lebanon Hosp. Ctr.*, 622 N.Y.S.2d 557, 558 (App. Div. 1995) ("To prevail on a claim for tortious interference with *contractual or prospective contractual relations*, a party must show that the alleged tort-feasor wrongfully interfered with the contract for the sole purpose of harming the

10

plaintiff, or that he committed independent torts or predatory acts towards the third party" (emphasis added)).[6]  There is not a single allegation in the complaint to support the inference that Fox had *any* purpose, much less a sole purpose, to harm the Plaintiffs.

But even if Plaintiffs are correct that they are required to plead and prove only a lack of justification, Opp. 28, their claim should still be dismissed.  Plaintiffs have failed to refute Fox's argument that its alleged interference could not possibly lack justification because its news reporting and commentary about Seth Rich addressed a matter of public concern.  In this case, as in *Huggins v. Povich*, Fox News's "first amendment right to [report on] an issue of public importance, its lack of any motive to harm the plaintiff[s], and the obvious societal interest in encouraging freedom of the press, negate essential elements of the tort."  No. 131164/94, 1996 WL 515498, at *9 (N.Y. Sup. Ct. Apr. 19, 1996).  Plaintiffs attempt to distinguish *Povich* by observing that the broadcaster in that case lacked any motive to harm the plaintiff, Opp. 29 n. 15, but there is likewise no allegation here that the Fox Defendants had a motive to injure Rich's parents.  For these reasons, the tortious interference claim should be dismissed.

### C. Plaintiffs Fail to Allege Damages From Wheeler's Breach of His Contract.

The tortious interference claim fails for the additional reason that the only damages asserted by Plaintiffs stem from the Fox News article, not from any unauthorized communications between Wheeler and Zimmerman.  Plaintiffs argue that they have been forced to expend time "responding to the baseless allegations in the Fox Article," Opp. 32, but any such damages plainly flow from the content of the article itself, not from the breach of Wheeler's confidentiality agreement.  Underscoring that Plaintiffs have no damages stemming from the alleged interference with their

---

[6] *See also Rapp Boxx, Inc. v. MTV, Inc.*, 642 N.Y.S.2d 228, 228 (App. Div. 1996); *Benjamin Goldstein Prods., Ltd. v. Fish*, 603 N.Y.S.2d 849, 851 (App. Div. 1993)*; Lerman v. Med. Assocs. of Woodhull, P.C.*, 554 N.Y.S.2d 272, 273 (App. Div. 1990).

11

contract, Plaintiffs claim in their opposition that *Zimmerman learned nothing from Wheeler* and instead fed *him* information about Seth's supposed ties to Wikileaks. Opp. 6, 21.

## III. PLAINTIFFS FAIL TO STATE A CLAIM FOR NEGLIGENT SUPERVISION.

Plaintiffs acknowledge that to state a claim for negligent supervision they must plead facts to establish that the Fox Defendants "knew or should have known of the employee's propensity for the conduct which caused the injury prior to the injury's occurrence." Opp. 35. But the lone case they cite in support of their claim only serves to highlight why no such showing can be made here. In *Hwang v. Grace Road Church*, No. 14-CV-7187, 2016 WL 1060247, at *13, 15 (E.D.N.Y. Mar. 14, 2016), the plaintiff, who suffered from paranoid schizophrenia, alleged that members of a church had forcibly prevented him from taking his medication—and then a month later forcibly restrained him with duct tape to the point that he developed gangrene and required amputation. In *Hwang*, the violent nature of the initial behavior clearly placed the employer on notice of the employees' tortious propensities. Here, by contrast, Plaintiffs merely assert that Zimmerman and Wheeler communicated with the Riches in the months preceding the article—behavior that is not itself tortious. Opp. 36. In tellingly vague terms, Plaintiffs assert that Fox should have been aware of Zimmerman's tendency to engage in "tortious conduct" without identifying any conduct on her part that was actually tortious. Because Plaintiffs have failed to allege that Fox News was aware of any tendency on Zimmerman or Wheeler's part to engage in any allegedly tortious conduct, much less tortious conduct that caused their injury here, their claim should be dismissed.

## CONCLUSION

For these reasons and those stated in the Fox Defendants' opening brief, the claims against the Fox Defendants should be dismissed with prejudice.

Respectfully submitted,

s/   Kevin T. Baine

12

        Kevin T. Baine
Dane H. Butswinkas
Joseph M. Terry (*pro hac vice*)

WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C. 20005

650 Fifth Avenue
Suite 1500
New York, NY 10019
Tel: (202) 434-5000
Fax: (202) 434-5029
kbaine@wc.com
dbutswinkas@wc.com
jterry@wc.com

*Attorneys for Fox News Network, LLC*

*With Consent*,

DECHERT LLP
David H. Stern (*pro hac vice*)
Katherine M. Wyman
U.S. Bank Tower
633 West 5th Street
Los Angeles, CA 90071
(213) 808-5700

1095 Avenue of the Americas
New York, NY 10036
david.stern@dechert.com
katherine.wyman@dechert.com

*Attorneys for Malia Zimmerman*

DATED: June 18, 2018

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 18, 2018, I electronically filed the foregoing Reply Memorandum in Support of the Motion of Fox News Network, LLC, and Malia Zimmerman to Dismiss For Failure to State a Claim with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record in this matter who are on the CM/ECF system.

*s/ Kevin T. Baine*
Kevin T. Baine