**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------- X

JOEL RICH and MARY RICH,              :     Civil Action No. 1:18-cv-02223 (GBD)

                                      :

                 Plaintiffs,      :

                                        :

                     v.          :

                                        :

FOX NEWS NETWORK, LLC, MALIA :
ZIMMERMAN in her individual and professional :
capacities, and ED BUTOWSKY, in his individual :
and professional capacities,

                                        :

                     Defendants.      :

---------------------------------------------------------------- X

## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ED BUTOWSKY'S MOTION TO DISMISS THE COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(2) AND 12(B)(6)

David B. Harrison
Spiro Harrison
830 Morris Turnpike, 2nd Floor
Short Hills, NJ 07078
Tel: (973) 232-0881
Fax: (973) 232-0887

*Attorney for Defendant Ed Butowsky*

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES………………………………………………………..……ii

INTRODUCTION…………………………………………………………………………1

ARGUMENT………………………………………………………………………….....1

I.    Plaintiffs Fail to Allege Prima Facie Case for Jurisdiction Over Butowsky…………………1

    A.  Butowsky's Communication is not a Transaction of Business…………………………..2

    B.  Jurisdictional Discovery Would Be Futile……………………………………………4

II.   Plaintiffs have Failed to State a Claim for IIED……………………………………………4

    A.  The Alleged "Scheme" is not Sufficiently
    Extreme or Outrageous………………………………………………………………4

    B.  Plaintiffs Have Not Alleged the Required
    Intent to Cause Harm…………………………………………………………………6

    C.  The Alleged Acts of Butowsky Have not Been Properly
    Alleged to Have Been the Proximate cause of the Alleged Harm…………………...6

        1.   The Harm Alleged by Plaintiffs Cannot Reasonably
        Have been Alleged to Have Been Caused
        by Butowsky's Conduct ………………………………………………………6

        2.   Butowsky's Conduct Was Also Not
        the Proximate Cause of Plaintiffs' Harm…………………………………………6

III.   Both the Aiding and Abetting Claim and Conspiracy Claim Fail………………….....8

IV.   Plaintiffs Fail to Allege Tortious Interference with Contract………………………….8

    A.  Wheeler Did Not Breach the Contract……………………………………………...8

    B.  Plaintiffs Fail to Plead Intent to Interfere with Wheeler's Contract……………………..9

    C.  Wheeler's Propensity for Media Precludes a Tortious Interference Claim……………9

    D.  The Confidentiality Provision Was At Will…………………………………………10

CONCLUSION……………………………………………………………………...………11

## <u>TABLE OF AUTHORITIES</u>

### <u>Cases</u>

*Balderman v. ABC*,
     292 A.D.2d 67 (4th Dep't 2002) ……………………………………………………7

*Best Van Lines, Inc. v. Walker*,
     490 F.3d 239, 246 (2d Cir. 2007). ………………………………………………2,3

*Carlson v. Cuevas*,
     932 F. Supp. 76 (S.D.N.Y. 1996) ……………………………………………………3

*Chanko v. Am. Broad. Cos.*,
     49 N.E.3d 1171 (N.Y. 2016). …………………………………………………Passim

*Charles Schwab Corp. v. Bank of America Corp.*,
     883 F.3d 68 (2d Cir. 2018) …………………………………………………...4

*Courtroom Television Network v. Focus Media, Inc.*,
     264 A.D.2d 351 (N.Y. App. Div. 1999) …………………………………………...2

*D & R Glob. Selections, S.L. v. Bodega Olegario Falcon Pineiro*,
     29 N.Y.3d 292 (2017) …………………………………………………...........3

*Dickinson v. Igoni*,
     76 A.D.3d 943 (2d Dep't 2010) …………………………………………………8

*DirecTV Latin Am., LLC v. Park, 610, LLC*,
     691 F. Supp. 2d 405, 422 (S.D.N.Y. 2010) …………………………………………3

*Eades v. Kennedy, PC Law Offices*,
     799 F.3d 161 (2d Cir. 2015) …………………………………………………...2

*Flatley v. Hartmann*,
     138 A.D.2d 345 (2d Dep't 1998). ………………………………………………5,6

*Galella v. Onassis*,
     487 F.2d 986 (2d Cir. 1973) …………………………………………………..5

*Guard-Life Corp. v. S. Parker Hardware Mfg. Corp.*,
     50 N.Y.2d 183, 194 (1980). …………………………………………………..10

*Halio v. Lurie,*
    15 A.D.2d 62 (1961) …………………………………………………............6

*Howell v. N.Y. Post Co.,*
    612 N.E.2d 699 (N.Y. 1993) …………………………………………………...5

*In re Aluminum Warehousing Antitrust Litig.,*
    90 F. Supp. 3d 219 (S.D.N.Y. 2015) …………………………………………4

*In re Elec. Books Antitrust Litig.,*
    859 F. Supp. 2d 671 (S.D.N.Y. 2012) …………………………………………8

*Johnson v. Ward,*
    4 N.Y.3d 516 (2005) …………………………………………………............3

*Laydon v. Bank of Tokyo-Mitsubishi, UFJ, Ltd.,*
    2017 U.S. Dist. LEXIS 38271 (S.D.N.Y. Mar. 10, 2017). ………………………4

*Long v. Beneficial Finance Co.,*
    39 A.D.2d 11 (4th Dep't 1972) …………………………………………………6

*Roach v. Stern,*
    252 A.D.2d 488 (2d Dep't 1998) …………………………………………………5

*RSM Production Corp. v. Friedman,*
    643 F. Supp. 2d 382 (S.D.N.Y. 2009). …………………………………………10

*Schleifer v. Yellen,*
    158 A.D.3d 512 (1st Dep't 2018) …………………………………………………8

*Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC,*
    450 F.3d 100 (2d Cir. 2006). …………………………………………………3

*Watts v. Jackson Hewitt Tax Serv.,*
    675 F. Supp. 2d 274 (E.D.N.Y 2009) …………………………………………10

*Wellington Shields & Co. LLC v. Breakwater Inv. Mgmt. LLC,*
    No. 14-7529, 2016 U.S. Dist. LEXIS 35812 (S.D.N.Y. Mar. 18, 2016). ………………9

*World Wrestling Federation Entm't, Inc. v. Bozell,*
    142 F. Supp. 2d 514 (S.D.N.Y. 2001) …………………………………………..2

**STATUTES**

CPLR 302(a)(1)…………………………………………………………………………..2

## INTRODUCTION

Plaintiffs seek redress for the publication of a news story about their murdered son by circumventing the First Amendment through a claim for intentional infliction of emotional distress ("IIED") and tortious interference with contract.  The strain of this legal maneuvering is revealed in their Opposition, as they stretch and contort the underlying allegations to fit within these claims.  It's a square peg in round hole.  According to the complaint, Defendant Ed Butowsky ("Butowsky"), a Dallas resident, had the sum total of one interaction with New York-based Fox employees – Zimmerman was elsewhere.  The mere, incidental fact that the article ultimately was published from New York (a portion of the alleged harm) is not sufficient to confer jurisdiction here.

Regarding the claims themselves, Plaintiffs do not allege the requisite intent for either – the incidental consequences of Butowsky alleged desire to further a conspiracy are insufficient under the law.  Butowsky did not publish the article in question, and the claim that the alleged deception leading up to the publication is sufficiently outrageous on its own is without merit.  Notably, the harm Plaintiffs claim is almost exclusively based upon the reliving of their son's death, but the conspiracy theory was in the public domain long before the Fox News piece ran.  Finally, by Plaintiffs own account, the information supporting the conspiracy theory was false, originated by Butowsky and Zimmerman, not Wheeler.  Wheeler furthered the "sham story" by voluntarily sharing the information about the conspiracy with third parties.  There was no breach here, and even if there was, Wheeler's propensity for sharing precludes but for causation.

## ARGUMENT

### I.    Plaintiffs Fail to Allege Prima Facie Case for Jurisdiction Over Butowsky

Plaintiffs' allegations supporting personal jurisdiction against Butowsky, by their own admission, amount to a single allegation.   The repeatedly cited paragraph 82, which purportedly

quotes a single email Butowsky sent to members of the Fox News team regarding the publishing of the Fox News article, is the only allegation connecting Butowsky to New York in the entire Complaint. *See* Opp. pp. 37-38. Plaintiffs do not allege that Butowsky or the email's recipients were in New York at the time of the email. The solitary allegation concerning one email is not enough for personal jurisdiction – it's not even close.

Plaintiffs attempt to bury this deficiency, as they do others, by borrowing from and conflating other parts of the Complaint that have nothing to do with Butowsky's contacts in New York. But, the fact remains, that not a single case under New York law supports personal jurisdiction based on a single email, including quite clearly the cases Plaintiffs cited.[1] Plaintiffs obfuscation of the Complaint's allegations and their ill-timed declaration[2] apparently supporting general jurisdiction, which was not alleged, should not be considered and are insufficient in any event. Plaintiffs' claims should be dismissed, and their hail mary attempt for discovery denied because they have not met their burden.

### A. Butowsky's Communication is not a Transaction of Business

Plaintiffs rely on CPLR 302(a)(1) to allege the Court has jurisdiction here. In determining whether a court may exercise personal jurisdiction under section 302(a)(1), "a court must decide (1) whether the defendant 'transacts any business' in New York and, if so, (2) whether this cause of action 'aris[es] from'] such a business transaction." *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 246 (2d Cir. 2007).

---

[1] Notably, the contacts in the three cases cited by Plaintiffs extend well beyond those alleged here. In *World Wrestling Federation Entm't, Inc. v. Bozell*, 142 F. Supp. 2d 514 (S.D.N.Y. 2001), the Defendant "took advantage of New York's unique resources in the entertainment industry on numerous occasions." Similarly, in *Courtroom Television Network v. Focus Media, Inc.*, 264 A.D.2d 351 (N.Y. App. Div. 1999), the out-of-State defendant actually contracted with the New York plaintiff for the latter to perform commercial activities in New York for defendant's benefit. Plaintiffs citation to *Eades v. Kennedy, PC Law Offices*, 799 F.3d 161, 168 (2d Cir. 2015) utterly fails for the same reason.

[2] Plaintiffs' declaration provides links to completely unrelated television appearances that are several months, if not years, old as a basis for jurisdiction, falsely claiming that "the public record makes clear Butowsky's presence in New York." It doesn't, and these statements do not support the Complaint or jurisdiction for Butowsky.

2

Plaintiffs contend that Butowsky's interactions with Wheeler (Maryland), and Zimmerman (California), confer jurisdiction because they are affiliated with Fox, a New York company. This, of course, is ridiculous. *DirecTV Latin Am., LLC v. Park,* 610, LLC, 691 F. Supp. 2d 405, 422 (S.D.N.Y. 2010) (holding that intra-company communications between nonresident executive and employees in New York who were "ostensibly acting on the same side" of a transaction did not confer personal jurisdiction over the executive). Indeed, Plaintiffs fail to allege, nor could they, that Butowsky's interactions with Wheeler and Zimmerman occurred in or had anything to do with New York.

More specifically, Plaintiffs argue that the single post-publication email Butowsky sent to Fox producers about their response to the article, is sufficient because, again, Fox is located in New York. This is not a serious contention. First, a defendant's contacts must be "purposeful," meaning he "seeks out and initiates contact with New York, solicits business in New York, and establishes a continuing relationship." *D & R Glob. Selections*, S.L., 29 N.Y.3d at 298. Communications into the forum state alone do not amount to a transaction of business. *See e.g. Carlson v. Cuevas*, 932 F. Supp. 76, 78 (S.D.N.Y. 1996) ("… telephone conversations into New York are not sufficient to sustain New York long arm jurisdiction").

Second, "'[a] suit will be deemed to have arisen out of a party's activities in New York if there is an articulable nexus, or a substantial relationship, between the claim asserted and the actions that occurred in New York.'" *Best Van Lines*, 490 F.3d at 246. "[J]urisdiction is not justified where the relationship between the claim and transaction is too attenuated," *Johnson v. Ward*, 4 N.Y.3d 516, 520 (2005), and "[a] connection that is merely coincidental is insufficient to support jurisdiction," *Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt*., LLC, 450 F.3d 100, 103 (2d Cir. 2006). The physical location of Fox News vis-à-vis Butowsky's email is plainly tangential to Plaintiffs' claims. This is particularly true given that Plaintiffs have argued on the

3

one hand that this case is about much more than the publication – namely, the interactions with Plaintiffs in Omaha from Dallas - yet now argue that this single email and the publication are central to the claim.  They can't have it both ways.  The case should be dismissed.[3]

## B.  Jurisdictional Discovery Would Be Futile

Plaintiffs' request for jurisdictional discovery is futile - no facts can save Plaintiff from the reality that Butowsky is subject to neither specific nor general personal jurisdiction of this Court.  As this Court noted in *Laydon v. Bank of Tokyo-Mitsubishi, UFJ, Ltd.*, "District Courts in this Circuit routinely reject requests for jurisdictional discovery where a plaintiff's allegations are insufficient to make out a prima-facie case of jurisdiction." 2017 U.S. Dist. LEXIS 38271, at *27 (S.D.N.Y. Mar. 10, 2017).  Conducting jurisdictional discovery in this case, would entail a waste of time and judicial resources.  As such, Plaintiffs' request should be denied.

## II.   Plaintiffs have Failed to State a Claim for IIED

### A.  The Alleged "Scheme" is not Sufficiently Extreme or Outrageous

Plaintiffs' labeling of Defendants' acts as a "scheme" does not change the conclusion that the acts pled against Butowsky are insufficiently extreme and outrageous to meet the strict standard required by New York courts, and therefore this claim must be dismissed against Butowsky.  The threshold for pleading conduct that is extreme and outrageous enough to sustain an IIED claim is very strict, particularly in New York where the Court of Appeals has *never* seen a case where they deemed the conduct sufficiently extreme and outrageous.  *See Chanko v. Am. Broad. Cos.*, 49 N.E.3d 1171, 1179 (N.Y. 2016).

---

[3] Plaintiffs incorrectly rely on *Charles Schwab Corp. v. Bank of America Corp.*, 883 F.3d 68, 87 (2d Cir. 2018), suggesting jurisdiction lies by virtue of the allegations of conspiracy.  It doesn't.  *See In re Aluminum Warehousing Antitrust Litig.*, 90 F. Supp. 3d 219, 227 (S.D.N.Y. 2015) (rejecting notion that "participation in a conspiracy generally can provide a standalone basis for jurisdiction," as the "rules and doctrines applicable to personal jurisdiction are sufficient without the extension of the law to a separate and certainly nebulous 'conspiracy theory' doctrine.").  Plaintiffs' have not met their burden and are not saved merely because they alleged a conspiracy.

The conduct alleged against Butowsky by Plaintiffs simply does not come close to the required level. *See Howell v. N.Y. Post Co.,* 612 N.E.2d 699, 702 (N.Y. 1993) ("conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."). Plaintiffs allege that Butowsky used the family's Jewish heritage to gain an introduction and suggested that they hire Wheeler as part of a supposed scheme. Even when you take all these acts together and assuming that this was done in an effort to create the "sham story," this does not support a finding of outrageous conduct. Compl. ¶ 36. Nor is there a single case to support it. The conduct found to be sufficiently extreme and outrageous by New York courts to withstand a motion to dismiss is much more direct, whereas here much of the conduct alleged in the Complaint was indirect and far removed from Plaintiffs and was not done (as even Plaintiffs cannot dispute) with an intention to harm them. Plaintiffs were not aware of most of the alleged conduct, such as third-party communications and meetings. *See, e.g.,* Compl. ¶¶ 59-64.

In addition to being more direct, allegations supporting the claim must be much more shocking and/or fear inducing. *See Roach v. Stern*, 252 A.D.2d 488 (2d Dep't 1998) (cremated remains of plaintiffs' sister were handled on a radio show while making crude remarks about her); *see also Galella v. Onassis*, 487 F.2d 986, 995 (2d Cir. 1973)(the papparazo had endangered the physical safety of Jacqueline Kennedy Onassis's children in an effort to take photographs). The allegations against Butowsky cannot be credibly compared to those in either *Stern* or *Onassis*. No crude acts were committed nor crimes alleged that put Plaintiffs in any fear of danger. The allegations against him simply do not meet New York's strict standard.[4]

---

[4] Plaintiffs cite to three cases, two from prior to IIED's recognition as an independent tort, where they say that courts have sustained claims that allege less egregious conduct than what Plaintiffs allege in this case. *See* Opp. at p. 10. In *Flatley*, the defendant pled guilty to a crime for her actions also related to the civil case, and even after pleading guilty, she continued the same behavior towards plaintiff that formed the basis for her conviction. *Flatley v. Hartmann*, 138 A.D.2d 345, 346 (2d Dep't 1998). As for *Halio*, the Appellate Division in the Second Department

**B.  Plaintiffs Have Not Alleged the Required Intent to Cause Harm**

Another essential element to the IIED claim is intent to cause the harm suffered by Plaintiffs.  *See Chanko,* 49 N.E.3d at 1178.  The cases Plaintiffs cite to for the proposition that intent can be found where there is also a justifiable objective or legitimate motive do not support their cause.  In *Long v. Beneficial Finance Co.*, 39 A.D.2d 11, 15 (4th Dep't 1972), the court held that the plaintiff need not plead that the harmful acts be *solely* motivated by malice where the IIED was a "significant part of the chosen plan of harassment employed by defendant . . . ."  Here, Plaintiffs have not alleged that causing them harm was a significant part (or any part) of Butowsky's plan, nor could they reasonably do so.

**C.  The Alleged Acts of Butowsky Have not Been Properly Alleged to Have Been the Proximate cause of the Alleged Harm**

**1.      The Harm Alleged by Plaintiffs Cannot Reasonably Have been Alleged to Have Been Caused by Butowsky's Conduct**

While Plaintiffs allege that, in addition to the publication, Defendant's "behind the scenes" conduct caused their harm, this does not bear out in the harm they alleged in their Complaint.  *See, e.g.*, Compl. ¶ 132.  The harm alleged is clearly connected solely to the publication of the article.  They are not experiencing anxiety, which is "continuously triggered by additional stories in the media," because Butowsky used his Jewish heritage to reach out to them, or because Butowsky set them up with private investigator Wheeler under allegedly false pretenses.  *Id.* ¶ 132B.  The harm they list in their Complaint could only reasonably be understood to have occurred from having the news story about their son made public.  *See, e.g.*, Compl. ¶ 133.  Plaintiffs' assert that Butowsky cannot "disavow his role in the publication of the

---

was first deciding whether IIED without physical impact could even be sustained as an independent tort.  *Halio v. Lurie*, 15 A.D.2d 62 (1961).  It decided that it could where the conduct was direct, and plaintiff alleged that it was intended to cause her anguish and emotional shock.  *Id.*  Plaintiffs have not alleged so here.

sham story" because he allegedly said that he was "actually the one who's been putting this together," Opp. at 23. But, even if Butowsky assisted in gathering background information to put the story together, Plaintiffs still do not and cannot allege that Butowsky ultimately published the story.[5] Because Butowsky's conduct did not cause the alleged injury, this claim should be dismissed. *See Chanko*, 49 N.E.3d at 1178.[6]

### 2.   Butowsky's Conduct Was Also Not the Proximate Cause of Plaintiffs' Harm

Conspiracy theories related to Seth Rich divulging the DNC emails to WikiLeaks had already existed prior to any of Defendant Butowsky's acts and prior to the publication of the Fox News story. In fact, they began immediately after Seth Rich's untimely death. Thus, Plaintiffs cannot assert that their alleged harm was proximately caused by Defendants. As even Plaintiffs mention in their Complaint (¶¶ 22-23) and in their Opposition, these theories had been around at least 9 months prior to the publication of the Fox articles. Opp. at 23. While Plaintiffs state that the theories were only popular among "fringe political groups," at the time (Compl. ¶ 22), the media inquiries were widespread enough to warrant a public response from Plaintiffs on August 10, 2016. *See* Compl. ¶ 23 (stating, among other things, "…some are attempting to politicize this horrible tragedy, and in their attempts to do so, are actually causing more harm than good and impeding the ability for law enforcement to properly do their job.") Notably, on August 9, 2016, the day before the public statement, WikiLeaks offered a $20,000 reward for information leading to the conviction for the murder of Seth Rich.[7] Indeed, news outlets across the world were talking for months about the possible connection between Seth

---

[5] To the extent that Plaintiffs are alleging liability against Butowsky for the publication of the story or related activity, Butowsky adopts Zimmerman and Fox's arguments related to the protections of the First Amendment.

[6] The only New York case referenced in Plaintiff's Opposition relating to "behind the scenes" deceptive conduct is *Balderman v. ABC*, 292 A.D.2d 67 (4th Dep't 2002). In that case, the court held, that "any injury to plaintiff, however, is the result of the allegedly unfavorable portrayal of him in the broadcast, not of defendant's behind the scenes deception . . . ." *Id*. This reasoning applies equally here.

[7] *See* Declaration of David B. Harrison ("Harrison Decl."), Ex. 1, Wikileak Tweet dated Aug. 9, 2016.

Rich and WikiLeaks.[8]  Thus, while Plaintiffs allege that Defendants sought to take the conspiracy theory from the fringe to the front page, this had already occurred well before any of the acts of Defendants were alleged to take place, breaking the causal chain.

### III.    Both the Aiding and Abetting Claim and Conspiracy Claim Fail

Both the aiding and abetting claim and the conspiracy claim should be dismissed, first, because Plaintiffs failed to sufficiently allege the underlying tort of IIED. *Schleifer v. Yellen*, 158 A.D.3d 512,513 (1st Dep't 2018) (finding that the court should have dismissed the conspiracy claim because New York does not recognize it as an independent claim, and where the underlying primary tort of fraud was being dismissed); see also *Dickinson v. Igoni*, 76 A.D.3d 943, 945 (2d Dep't 2010) (dismissing claim for aiding and abetting conversion where plaintiff failed to plead valid conversion claim).  The claims also fail because Plaintiffs do not allege any agreement between the parties in furtherance of a joint purpose.  Indeed, Plaintiffs allege, and apparently concede, that the Defendants had different purposes for the purported acts.[9]

### IV.    Plaintiffs Fail to Allege Tortious Interference with Contract

#### A.  The Court Should Dismiss Plaintiffs' Contradictory Tortious Interference Claim

Plaintiffs' tortious interference claim is entirely contradictory and should be dismissed. On the one hand, Plaintiffs claim that the entire conspiracy theory about their son is made up, and the sources of the conspiracy as well as the information provided for the Fox News story came from Butowsky and Zimmerman; but on the other hand, they claim that Wheeler breached a confidentiality provision by giving that information to Butowsky and Zimmerman.  Certainly,

---

[8] *See* Harrison Decl., Ex. 2 & 3, Wash. Post and Telegraph articles, dated Aug. 9 2016 and Aug. 10, 2016, respectively.
[9] In citing *In re Elec. Books Antitrust Litig.*, 859 F. Supp. 2d 671, 690 (S.D.N.Y. 2012), Plaintiffs conflate the joint purpose requirement with the "motivation for joining the conspiracy."  As that court noted, conspiracy still requires "a unity of purpose or a common design and understanding, or a meeting of minds in an unlawful arrangement." *Id*. No such unity of purpose has been alleged here. For these reasons, both claims should be dismissed.

Wheeler could not breach a confidentiality agreement by providing information to Butowsky and Zimmerman that was originated by Butowsky and Zimmerman.  That would be nonsensical.

Similarly, if Butowsky and Zimmerman persuaded Wheeler to appear on television concerning information they provided to him, that would not be in breach of the contract with Plaintiffs either.   Indeed, the provision in the contract addressing the media merely prevents Wheeler from being the Rich's "media representative," it is not a gag order.  Plaintiffs incorrectly rest their claim on the appearances themselves, which were not barred.

**B.  Plaintiffs Fail to Plead Intent to Interfere with Wheeler's Contract**

Plaintiffs do not address in any meaningful way Butowsky's contention that the Complaint fails to state that he intended for a breach to occur in speaking with Wheeler about the investigation or causing him to make appearances about the murder of their son.  Under New York law, Plaintiffs must show that Butowsky's "objective was to procure such a breach." *Wellington Shields & Co. LLC v. Breakwater Inv. Mgmt. LLC*, No. 14-7529, 2016 U.S. Dist. LEXIS 35812, at *14 (S.D.N.Y. Mar. 18, 2016).  Plaintiffs do not allege that Butowsky intended to cause a breach at all.

**C.  Wheeler's Propensity for Media Precludes a Tortious Interference Claim**

Plaintiffs contend that Wheeler's propensity to share his theories about their murdered son do not preclude their tortious interference claims because a breach occurred prior to Wheeler's rogue media campaign.  But, as the Complaint makes clear, and Wheeler's own conduct resoundingly demonstrates, he voluntarily provided all of the information he collected in his investigation and willingly shared in not just to Butowsky and Zimmerman but several other reporters and media personalities.  Butowsky and Zimmerman were not the but for cause of these disclosures, nor the resulting harm, because Wheeler disclosed them to third parties voluntarily and would have does so with or without Butowsky.  Even the Complaint does not allege any

9

improper acts by Butowsky in furtherance of soliciting the information from Wheeler; actually it's the opposite – Wheeler voluntarily shared it with them.  New York law is clear, to the extent that Wheeler's conduct made up a breach, Butowsky is not liable for tortious interference where Wheeler was predisposed to breaching.  *RSM Production Corp. v. Friedman*, 643 F. Supp. 2d 382,410 (S.D.N.Y. 2009).[10]

### D.  The Confidentiality Provision Was At Will

Plaintiffs concede that the agreement between them and Wheeler was at-will, but claim that the provision regarding the sharing of information under the agreement was not.  In doing so, Plaintiff do not cite any authority, rather they attempt to distinguish *Watts v. Jackson Hewitt Tax Serv.,* 675 F. Supp. 2d 274, 281 (E.D.N.Y 2009) by claiming that nothing in that case suggested that the confidentiality obligation there survived termination.  If Plaintiffs are correct that the lack of any language suggesting a continuing obligation is controlling, then their claim must be dismissed because no such language can be found here either.[11]  Furthermore, the assertion that the holding was dicta is just wrong.  The court dismissed the tortious interference counterclaim on the grounds that the agreements were at will, but "even if" that were not true, the claims could have been dismissed on other grounds.  *Id.*  We note, finally, that Plaintiffs falsely assert that the allegations supporting the tortious interference by Butowsky amount to fraud, so as to support the exception outlined in *Guard-Life Corp. v. S. Parker Hardware Mfg. Corp.*, 50 N.Y.2d 183, 194 (1980).  Indeed, Plaintiffs never once allege that Butowsky misrepresented anything in connection with any solicitation of information from Wheeler, nor do they allege fraud generally anywhere in the Complaint.

---

[10] Additionally, Plaintiffs argue that because Butowsky arranged for the them to meet Wheeler, that introduction is the but for cause for every breach of the agreement by Wheeler.  This is absurd.  The agreement and the formation of its terms came well before the alleged breach, and thus, its terms were not known at that time.

[11] Wheeler's right to sue from a breach do not demonstrate an agreement between the parties that the obligations extend beyond termination of the agreement.

## <u>CONCLUSION</u>

For the forgoing reasons, Butowsky respectfully requests the Court grant its motion to dismiss pursuant to Fed. R. Civ. P 12(b)(2) and (b)(6).


<u>s/ David B. Harrison</u>
David B. Harrison
Meredith Paley
Spiro Harrison
830 Morris Turnpike, 2nd Floor
Short Hills, NJ 07078
Tel: (973) 232-0881
Fax: (973) 232-0887

*Attorney for Defendant Ed Butowsky*

Dated: June 18, 2018

11