SUSMAN GODFREY L.L.P.

A REGISTERED LIMITED LIABILITY PARTNERSHIP
32ND FLOOR
1301 AVENUE OF THE AMERICAS
NEW YORK, NEW YORK 10019-6023
(212) 336-8330
FAX (212) 336-8340
WWW.SUSMANGODFREY.COM

_____

| SUITE 5100 | SUITE 1400 | SUITE 3800 |
|---|---|---|
| 1000 LOUISIANA STREET | 1900 AVENUE OF THE STARS | 1201 THIRD AVENUE |
| HOUSTON, TEXAS 77002-5096 | LOS ANGELES, CALIFORNIA 90067-6029 | SEATTLE, WASHINGTON 98101-3000 |
| (713) 651-9366 | (310) 789-3100 | (206) 516-3880 |

ARUN SUBRAMANIAN
DIRECT DIAL (212) 471-8346

E-MAIL ASUBRAMANIAN@SUSMANGODFREY.COM

June 29, 2018

VIA HAND DELIVERY

Hon. George B. Daniels
United States District Judge
Daniel Patrick Moynihan
United States Courthouse
500 Pearl St.
Chambers: Room 1310
New York, NY 10007-1312

Re:    *Rich v. Fox News Network LLC et al.*, Civ. No. 18-cv-02223

Dear Judge Daniels:

On behalf of plaintiffs Joel and Mary Rich, we submit this supplemental letter brief to respond to points raised by the Court at the June 20, 2018 hearing. For the reasons stated below and in our briefs, plaintiffs have properly pleaded claims for relief for intentional infliction of emotional distress, concerted liability, and tortious interference with contract. Defendants' fact-intensive arguments—turning on the nature of Defendants' conspiracy, "outrageousness," defendants' "knowledge" and "intent," and whether or not discovery shows that Butowsky had sufficient New York contacts—are not valid grounds for dismissal at the pleadings stage, before a page of discovery has been turned over and when all inferences must be *in the plaintiffs' favor*.

## I.    Tortious Interference with Contract

At the hearing, the Court asked questions about the validity of the contract between the Riches and Wheeler, and also whether Defendants' behind-the-scenes orchestration of the contract preclude recovery. Neither is a barrier to the tortious interference claim, particularly at this stage.

June 29, 2018
Page 2

The "valid contract" element merely requires the "existence of a contract, enforceable *by the plaintiff*." *Cortes v. Twenty-First Century Fox Am., Inc.*, 285 F. Supp. 3d 629, 640 (S.D.N.Y. 2018) (emphasis added). No defendant has contested the enforceability of the contract, which is a signed, initialed, and dated written contract. *See* Exhibit 4 to Fox Motion [Dkt. 37-4]. There is also no question that Defendants are "strangers" to the contract. The "stranger" element for tortious interference liability simply requires that defendant not be "*a party* to the contract with which he allegedly interfered." *Cortes*, 285 F. Supp. 3d at 640 (emphasis added). No one has argued that Defendants are parties to the contract.

The Court also questioned whether allegations of a pre-existing conspiracy among Defendants and Wheeler would foreclose liability. The answer is no. Butowsky himself cited in his reply *Antonios v. Comcast Int'l Holdings*, *Inc,* 100 F. Supp. 2d 178 (S.D.N.Y. 2000). In *Comcast*, the court rejected the argument that an alleged conspiracy between the defendant and the breaching party foreclosed liability. The court concluded that rather than demonstrating some independent "predisposition" of the party to the contract to breach it:

> the allegation of collusion coupled with the allegation of wrongful interference or inducement to breach, leads to the conclusion of tortious interference by the third party.

*Id*. at 187 (emphasizing that "every *inference* is made in plaintiffs' favor") (emphasis in original). The court found the inference of causation stronger because the third party's participation in the alleged fraud was a "condition precedent" for the breach. *Id.* Here that inference is exponentially stronger given that the only reason Wheeler was even hired by the Riches, let alone able to breach the agreement, was because of the defendants. Thus, as in *Comcast*, the Complaint alleges that absent the "defendants' participation in the fraud," the breach would not have occurred. *Id.* To the extent the Court finds it relevant whether the Complaint alleges additional conduct by Defendants after the date the contract was signed that procured a breach, the Complaint alleges that in spades, although this is a fact question should be resolved after discovery. *See, e.g.*, Compl. ¶ 74 ("Fox's Zimmerman called Wheeler and told him the "bosses at Fox want her to go" with the Zimmerman/Fox Article the next day and Butowsky left Wheeler a voicemail telling him to "close this deal, whatever you got to do."); ¶¶ 61-63 (Butowsky telling Wheeler "I am meeting [White House Press Secretary] Sean Spicer and want you with me" and providing Spicer with copies of Wheeler's purported investigation); ¶ 73 (Butowsky telling Wheeler that President Trump wanted the article published "immediately.").

June 29, 2018
Page 3

In any event, the Court cannot dismiss the tortious interference claim based on allegations of conspiracy given the Defendants' vigorous denial that the conspiracy exists. *See* Fox Motion at 19 ("Plaintiffs make no plausible allegation in this case that the Fox Defendants, Butowsky, and Wheeler had a joint purpose to inflict emotional distress on the Plaintiffs."); Butowsky Motion at 17 ("Plaintiffs have not alleged that Butowsky and the other defendants entered into an agreement with a joint purpose.").

Defendants cannot both dispute the existence of the conspiracy and *simultaneously* argue that the tortious interference claim must be dismissed because of that same conspiracy. Plaintiffs are permitted to argue different theories where there is a bona fide dispute as to an underlying factual predicate. *See Alaska Elec. Pension Fund v. Bank of Am. Corp.*, 175 F. Supp. 3d 44, 64 (S.D.N.Y. 2016) ("New York law provides that a party can pursue alternative claims for unjust enrichment and breach of contract only where there is a bona fide dispute as to whether an express contract governs the subject matter of the disagreement." (quotations omitted)). Here, there is clearly a "bona fide dispute" concerning the existence and nature of defendants' concerted activity. These fact-intensive issues preclude dismissal on these grounds.

## II.    Defendants' Extreme and Outrageous Conduct Must Be Viewed in its "Totality" and Cannot Be Dismissed if a Reasonable Juror Would Find it Outrageous

Defendants downplay their conduct as "newsgathering" or, at worst, mere "deception," *see, e.g.*, Tr. at 180, but that is nothing close to what the complaint alleges. Instead, the complaint alleges a ***campaign*** of harassment by Defendants against the plaintiffs to concoct a fake news story accusing Joel and Mary's dead son of criminal conduct, and to lend credibility to that story by:

> "induc[ing] Joel and Mary… to hire Rod Wheeler, a purportedly independent investigator, to help 'solve' their sons murder"; "work[ing] with Wheeler to … develop a fiction that Seth had leaked thousands of DNC emails to Wikileaks"; "publish[ing]… and publiciz[ing] the sham story"; and "intentionally ma[king] it appear that Joel and Mary were involved in and confirmed that substance of this smear campaign."

Compl. ¶¶ 3-4. Contrary to defendants' suggested approach, the Court in reviewing these allegations of outrageous conduct "must consider the 'totality of the circumstances rather than each individual allegation in isolation.'" *Pottie v.*

June 29, 2018
Page 4

*Atlantic Packaging Grp., LLC*, 2012 WL 6087282, at *3 (D. Conn. 2012);[1] *cf. De Santis v. City of New York*, No. 10 CIV. 3508 JPO GWG, 2013 WL 3388455, at *6 (S.D.N.Y. July 8, 2013), *report and recommendation adopted*, No. 10 CIV. 3508 JPO, 2014 WL 228659 (S.D.N.Y. Jan. 22, 2014).

If the facts in this case are not identical to those in the prior published caselaw, it is because defendants' actions in this case were so far outside of the norms of accepted conduct. Defendants tricked grieving parents into hiring an investigator with the goal of aborting the legitimate investigation of their son's murder. They then used the parents as pawns to concoct a fake news story that their son is a traitor. This despicable and unprecedented campaign by a national news organization and its agents is far worse than the facts in *Holloway v. Am. Media, Inc.*, 947 F. Supp. 2d 1252 (N.D. Ala. 2013). Fox attempted to distinguish *Holloway* by stating that the defendants there had a "pre-existing relationship" with the plaintiff and "allegedly knew that the plaintiff would suffer great distress and allegedly … intended to inflict harm upon her." Tr. at 177.

The Complaint here alleges a far stronger pre-existing relationship and that Joel and Mary specifically informed Defendants of the emotional distress their actions would cause. *See, e.g.,* Compl. ¶2 (defendants "intentionally exploited this tragedy . . . with disregard for the obvious harm that their actions would cause Joel and Mary"); ¶137 (defendants "each intended to cause, or at the very least disregarded the high probability that their acts would cause severe emotional distress to Joel and Mary"); *id*. (Joel and Mary "specifically informed Defendants Butowsky and Fox's Zimmerman that they were upset about the false statements about their son"). More egregious than in *Holloway*, the defendants in this case expressly ***targeted*** Joel and Mary Rich as part of the behind-the-scenes scheme to push precisely the false statements about Seth they knew caused the parents immense distress, and expressly ***referenced*** Joel and Mary Rich in the article. *See, e.g.*, *id.* ¶ 25 (Butowsky sought out Joel and Mary to further the Defendants' conspiracy); ¶ 29 ("Butowsky and Zimmerman, purportedly acting independent of each other, pursued Joel and Mary to try to gain their trust."); ¶ 88 ("The Zimmerman/Fox Article further stated that '[t]he revelation is consistent with the findings of Rod Wheeler… whose private investigation firm was ***hired by Rich's family*** to probe the case." (emphasis added)). For these reasons it is unsurprising

---

[1] Connecticut, like New York follows the Restatement, requiring that "the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, Outrageous!" *Church of Scientology of California v. Siegelman*, 94 F.R.D. 735, 740 (S.D.N.Y. 1982) (quoting Restatement (Second), Torts § 46, comment (d), p. 73 (1965)); *Carrol v. Allstate Ins. Co.*, 262 Conn. 433, 443, 815 A.2d 119, 126 (2003) (same).

June 29, 2018
Page 5

that defendants' *conduct* has been recognized by news outlets, Fox advertisers, Butowsky's clients, and the general public as extreme and outrageous. *See* Compl. ¶ 5 ("Defendants' actions have precipitated broad outrage, regardless of political affiliation, including from internal Fox personnel and Fox advertisers."); *id.* ¶ 118 ("[the publication] *GQ* reported that... Fox News 'is responsible for the beginning, middle, and end of this entire cruelly exploitative debacle.").

The First Department Court of Appeals has held that allegations far less severe than those at issue here are sufficient at the motion to dismiss stage. *164 Mulberry Street Corp. v. Columbia University*, 4 A.D.3d 49,56-57 (1st Dep't 2004) (dismissing libel claims but finding that falsely reporting food poisoning to multiple restaurants "indicates an adequate factual basis for potential findings that the conduct was sufficiently outrageous [even though] Flynn might not have intended harassment, he intended to elicit a response and in doing so may have recklessly disregarded the potential consequences of that conduct."). Against that background, Plaintiffs must be permitted to test the allegations in the Complaint through discovery.

Finally, Fox's assertion that the First Amendment bars claims where the harm arises from speech falls flat in light of cases like *Holloway*. Fox's principal authority, *Snyder v. Phelps*, 562 U.S. 443 (2011), is nothing like this case. It was expressly based on "honestly believed" speech (not fake news) where there was no offensive conduct surrounding the speech, such as the campaign against the plaintiffs in this case. *Id.* at 455-456. Justice Breyer confirmed in his *Snyder* concurrence that where harm arises from speech, but is facilitated by tortious conduct, *Snyder*'s First Amendment bar is not implicated. *Id*. at 461-62 (noting state is not "powerless to provide private individuals with necessary protection," offering hypothetical where "A (in order to draw attention to his views on a public matter) might launch a ***verbal assault upon B, a private person...while knowing that the revelation will cause B severe emotional harm***") (emphasis added).[2]

## III.    Concerted Action Claims

At the hearing, the Court questioned whether the concerted action claims rise and fall with individual liability for IIED. The answer is no. An element of conspiracy is the existence of a "cognizable tort." *McSpedon v. Levine*, 158 A.D.3d 618, 621 (N.Y. App. Div. 2018); MTD Opp. at 27. But the entire purpose of conspiracy is to permit for liability when each individual has taken an "overt action in furtherance of the agreement," *id.*, but not completed the tort on its own.

---

[2] Further, in this case, plaintiffs *do* allege harm completely independent of the publication. For example: "Joel and Mary have been irreparably harmed because whatever opportunity that existed to investigate and find closure with regard to their son's murder was taken away from them." Compl. ¶ 124.

June 29, 2018
Page 6


Plaintiffs do not, for purposes of this motion, dispute that each defendant must have the requisite intent for intentional infliction claims.  That is alleged in the Complaint (¶¶ 137, 158) and, Fox Defendants do not dispute the intent element of IIED in their motion. But each defendant is not required to commit acts which, independently, are extreme and outrageous. *Cf. Dooley v. Metro. Jewish Health Sys.,* No. 02-CV-4640(JG), 2003 WL 22171876, at *11 (E.D.N.Y. July 30, 2003) ("Dooley's conspiracy claim … if proved, can subject a defendant to liability for an alleged fraudulent inducement even if the defendant did not specifically make any misrepresentations to Dooley, so long as he or she engaged in common action to facilitate the fraud.").

Aiding and abetting likewise does not require that each defendant have undertaken conduct that is, independently, extreme and outrageous. *See Hudson v. Delta Kew Holding Corp.*, 43 Misc.3d 1223(A), 2014 WL 1924324, at *4 (N.Y. Sup. Ct. 2014); MTD Opp. at 26-27. It is enough for the Court to find that a party has provided "substantial assistance" to the party whose conduct was extreme and outrageous.[3] *See id.*

Respectfully,

Arun Subramanian

Enclosure:

Cc: Opposing counsel

---

[3] In addition to failing on the merits, Defendants did not address this argument in their opening briefs and, therefore, it is waived.