## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| JOEL RICH AND MARY RICH,<br><br>        Plaintiffs,<br><br>     v.<br><br>FOX NEWS NETWORK, LLC, MALIA<br>ZIMMERMAN, AND ED BUTOWSKY,<br><br>        Defendants. | Civil Action No. 1:18-cv-02223 (GBD) |

## MEMORANDUM IN SUPPORT OF THE MOTION OF
## FOX NEWS NETWORK, LLC AND MALIA ZIMMERMAN TO DISMISS
## THE AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM

DECHERT LLP
David H. Stern
U.S. Bank Tower
633 West 5th Street
Los Angeles, CA 90071
(213) 808-5700

Nicolle Lipper Jacoby
1095 Avenue of the Americas
New York, NY 10036

*Attorneys for Malia Zimmerman*

January 31, 2020

WILLIAMS & CONNOLLY LLP
Kevin T. Baine
Joseph M. Terry
Stephen J. Fuzesi
Katherine Moran Meeks
Katherine A. Petti
725 Twelfth Street, N.W.
Washington, D.C. 20005
(202) 434-5000

650 Fifth Avenue
Suite 1500
New York, NY 10019

*Attorneys for Fox News Network, LLC*

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ........................................................................................................................1

BACKGROUND ........................................................................................................................2

    A.    Factual Background ........................................................................................2

    B.    Procedural History ........................................................................................5

ARGUMENT ..............................................................................................................................6

I.    PLAINTIFFS FAIL TO STATE A CLAIM FOR NEGLIGENT SUPERVISION. ...........6

    A.    Fox News Neither Knew Nor Should Have Known that Wheeler or
          Zimmerman Would Engage in a "Campaign of Emotional Torture." ..................7

          1.    Wheeler's 2007 Statements Do Not Demonstrate Any Propensity to
              Intentionally Inflict Emotional Distress.......................................................8

          2.    Neither Zimmerman's 2016 Article Nor a 20-Year-Old Complaint
              Against Her Previous Employer Demonstrates a Tortious Propensity
              to Engage in a "Malicious Campaign of Harassment." ............................10

    B.    Wheeler Did Not Engage in Any Tortious Acts on Fox News's Premises
          or Using Fox News's Chattels. ............................................................13

    C.    Plaintiffs Did Not Suffer the Requisite "Significant Physical Injury." .................14

    D.    Dismissing the Negligent Supervision Claim Would Confine the Scope of
          Discovery to Issues at the Core of the Second Circuit's Opinion.........................14

II.    FOX NEWS CANNOT BE HELD LIABLE FOR THE CONDUCT OF
      WHEELER OR BUTOWSKY. ............................................................................16

    A.    Fox News Is Not Vicariously Liable for Wheeler's Conduct.............................16

    B.    The Claim for Conspiracy to Inflict Emotional Distress Must Be
          Dismissed ..............................................................................................19

    C.    Plaintiffs Have Failed to State a Claim for Aiding and Abetting the
          Intentional Infliction of Emotional Distress. .........................................22

CONCLUSION.........................................................................................................................23

i

## TABLE OF AUTHORITIES

*Aetna Cas. & Sur. Co. v. Aniero Concrete Co.*, 404 F.3d 566 (2d Cir. 2005)........................19, 20

*Ahluwalia v. St. George's Univ., LLC*,
     63 F. Supp. 3d 251 (E.D.N.Y. 2014) ...................................................................................14

*Am. Baptist Churches of Metro. N.Y. v. Galloway*,
     710 N.Y.S.2d 12 (App. Div. 2000) .....................................................................................19

*Arlinghaus v. Ritenour*, 622 F.2d 629 (2d Cir. 1980) ....................................................................20

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................................................14

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .......................................................................23

*Bigio v. Coca-Cola Co.*, 675 F.3d 163 (2d Cir. 2012) .................................................................22

*Bouchard v. N.Y. Archdiocese*, 719 F. Supp. 2d 255 (S.D.N.Y. 2010) .......................................13

*Brown v. Bronx Cross Cty. Med. Grp.*, 834 F. Supp. 105 (S.D.N.Y. 1993)...........................14, 15

*Bruchas v. Preventive Care, Inc.*, 553 N.W.2d 440 (Minn. Ct. App. 1996)..................................14

*Chaiken v. VV Publ'g Corp.*, 119 F.3d 1018 (2d Cir. 1997) .......................................................17

*Chaiken v. VV Publ'g Corp.*, 907 F. Supp. 689 (S.D.N.Y. 1995) ................................................18

*Chainani by Chainani v. Bd. of Educ. of City of N.Y.*,
     663 N.E.2d 283 (N.Y. 1995)...............................................................................................17

*Doe v. Alsaud*, 12 F. Supp. 3d 674 (S.D.N.Y. 2014) .......................................................... *passim*

*Dowd v. Calabrese*, 589 F. Supp. 1206 (D.D.C. 1984) ...............................................................21

*Ehrens v. Lutheran Church*, 385 F.3d 232 (2d Cir. 2004) .......................................................6, 7

*Ford v. Gildin*, 613 N.Y.S.2d 139 (App. Div. 1994) ...............................................................8, 13

*Fried v. LVI Servs., Inc.*, No. 10-cv-9308,
     2011 WL 2119748 (S.D.N.Y. May 23, 2011) .....................................................................23

*Green v. City of Mount Vernon*, 96 F. Supp. 3d 263 (S.D.N.Y. 2015)............................................7

*Gym Door Repairs, Inc. v. Young Equip. Sales, Inc.*,
     206 F. Supp. 3d 869 (S.D.N.Y. 2016).................................................................................22

*Haskin v. R.J. Reynolds Tobacco Co.*, 995 F. Supp. 1437 (M.D. Fla. 1998) ...............................20

*Ho Myung Moolsan Co. v. Manitou Mineral Water, Inc.*,
    665 F. Supp. 2d 239 (S.D.N.Y. 2009) ............................................................................20

*In re Bayou Hedge Funds Inv. Litig.*, 472 F. Supp. 2d 528 (S.D.N.Y. 2007) ...............................22

*In re Terrorist Attacks on Sept. 11, 2001*, 349 F. Supp. 2d 765 (S.D.N.Y. 2005) ........................22

*Jernigan v. Alderwoods Grp., Inc.*, 489 F. Supp. 2d 1180 (D. Or. 2007) ......................................14

*Kaupp v. Church*, No. 10-cv-7559, 2011 WL 4357492 (S.D.N.Y. Sept. 19, 2011) ............7, 14, 15

*Kirch v. Liberty Media Corp.*, 449 F.3d 388 (2d Cir. 2006) ...........................................................19

*Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496 (1991) .........................................................12

*Naughright v. Weiss*, 826 F. Supp. 2d 676 (S.D.N.Y. 2011) ....................................................19, 20

*Nelson v. Globe Int'l, Inc.*, 626 F. Supp. 969 (S.D.N.Y. 1986) .....................................................18

*Nouel v. 325 Wadsworth Realty LLC*, 977 N.Y.S.2d 217 (App. Div. 2013) ........................7, 8, 13

*PMC, Inc. v. Atomergic Chemetals Corp.*, 844 F. Supp. 177 (S.D.N.Y. 1994) .............................17

*Rams v. Def Jam Recordings, Inc.*, 202 F. Supp. 3d 376 (S.D.N.Y. 2016) ....................................11

*Ray Legal Consulting Grp. v. DiJoseph*, 37 F. Supp. 3d 704 (S.D.N.Y. 2014) ............................20

*Rich v. Fox News Network, LLC*, 939 F.3d 112 (2d Cir. 2019) ............................................ *passim*

*Richardson v. City of New York*, No. 04-cv-5314,
    2006 WL 3771115 (S.D.N.Y. Dec. 21, 2006) ...............................................................13

*Salmon v. Blesser*, 802 F.3d 249 (2d Cir. 2015) ............................................................................16

*Shor v. Touch-N-Go Farms, Inc.*, 933 N.Y.S.2d 686 (App. Div. 2011) .........................................13

*Singh v. NYCTL 2009-A Trust*, No. 14 Civ. 2558,
    2016 WL 3962009 (S.D.N.Y. July 10, 2016) ................................................................20

*Taylor v. Point at Saranac Lake, Inc.*, 23 N.Y.S.3d 682 (App. Div. 2016) ..............................8, 12

*Taylor v. United Parcel Serv., Inc.*, 899 N.Y.S.2d 223 (App. Div. 2010) .......................................7

*Tchatat v. City of New York*, No. 14-cv-2385,
    2015 WL 6159320 (S.D.N.Y. Oct. 20, 2015) .................................................................7

*Triplex Commc'ns, Inc. v. Riley*, 900 S.W.2d 716 (Tex. 1995) .....................................................20

*Turley v. ISG Lackawanna, Inc.*, 774 F.3d 140 (2d Cir. 2014) ................................................16, 17

*U.S. Small Bus. Admin. v. Feinsod*, 347 F. Supp. 3d 147 (E.D.N.Y. 2018) ...................................19

*World Wrestling Fed. Entm't, Inc. v. Bozell*, 142 F. Supp. 2d 514 (S.D.N.Y. 2001) ....................21

*Yeboah v. Snapple, Inc.*, 729 N.Y.S.2d 32 (App. Div. 2001) ...........................................................7

*Zeng v. Elec. Data Sys. Corp.*, No. 07-cv-310, 2007 WL 9618247
    (E.D. Va. June 18, 2007) ............................................................................................................14

*Zucker v. Katz*, 708 F. Supp. 525 (S.D.N.Y. 1989) .......................................................................19

## CONSTITUTION, STATUTES, AND RULES

U.S. Const., amend. I ..................................................................................................................20, 21

N.Y. Civ. Rights Law § 79-h ..............................................................................................................2

Fed. R. Civ. P. 12 ..............................................................................................................................15

## OTHER AUTHORITIES

20 N.Y. Jur. 2d Conspiracy..............................................................................................................20

# INTRODUCTION

This case returns to the District Court following the opinion and order of the U.S. Court of Appeals for the Second Circuit that the complaint filed by plaintiffs Joel and Mary Rich ("Plaintiffs") stated a claim for intentional infliction of emotional distress and tortious interference with contract. *See Rich v. Fox News Network, LLC*, 939 F.3d 112, 121 (2d Cir. 2019). The Court of Appeals did not allow the entire case to proceed, however. It remanded with instructions that this Court grant Plaintiffs leave to amend their complaint to address the defects in their negligent supervision claim against defendant Fox News Network, LLC, and to clarify whether they are also asserting that Fox News is vicariously liable for the conduct of its purported agents or employees. *Id.* at 130. The Court of Appeals also left it to this Court to test the sufficiency of the remaining claims—for conspiracy and aiding and abetting the intentional infliction of emotional distress—in the first instance. *Id.* at 126 n.10.

For the reasons elaborated below, each of these claims fails on multiple, independently sufficient grounds. The negligent supervision claim against Fox News must be dismissed because Plaintiffs fail to allege that Fox News was on notice that its reporter, Malia Zimmerman, or its contractor, Rod Wheeler, would engage in the tortious conduct alleged here: a "campaign of emotional torture" involving outrageous activity directed at private figures in furtherance of a deliberately falsified news story. *See Rich*, 939 F.3d at 123. To the contrary, they allege simply that these individuals made certain erroneous statements in the course of previous reporting or commentary on matters of public concern—errors that, in all but one case, happened a decade or more in the past. As to the claims for vicarious liability, conspiracy, and aiding and abetting, Plaintiffs fail to plead one or more required elements or have asserted a theory of liability inconsistent with the Court of Appeals' opinion in this case.

1

Dismissing these meritless claims would bring the practical benefit of narrowing and focusing the scope of discovery to the core of the case, as articulated in the Second Circuit's opinion: the purported scheme by Defendants to plant Wheeler as a source inside Plaintiffs' family for the purpose of quoting him in an article that falsely accused their son, Seth Rich, of communicating with WikiLeaks. *See Rich*, 939 F.3d at 123. Since this case was remanded by the Second Circuit, Plaintiffs have attempted to use the secondary liability claims at issue on this motion as justification for wide-ranging discovery into the contributions that Wheeler and defendant Ed Butowsky have made in prior years to *other* news reporting and commentary not at issue in this case. That discovery would intrude into privileged newsgathering activity, *see* N.Y. Civ. Rights Law § 79-h; multiply the burden and expense of this litigation; and distract from the central issues in this case. For these reasons and others highlighted below, the Court should dismiss the claims for negligent supervision, vicarious liability, conspiracy, and aiding and abetting the intentional infliction of emotional distress.

## BACKGROUND

### A.    Factual Background

The facts alleged in this case have been described at length in the prior briefing in this Court and in the opinion of the Second Circuit, and defendants Fox News and Zimmerman will only summarize them here. Plaintiffs are the parents of Seth Rich, an employee of the Democratic National Committee ("DNC") who was shot and killed on July 10, 2016, near his home in Washington, D.C. Am. Compl. ¶¶ 2, 9, 15–16. Less than two weeks after Seth Rich's murder, the website WikiLeaks published 44,000 internal DNC emails. *Id.* ¶ 19. Because the leak happened close in time to Rich's death, rumors began circulating online that he was the source of the documents. *Id.* ¶ 22. Julian Assange, the founder of WikiLeaks, seemed to validate those rumors when he told a Dutch television reporter that "our sources take risks" and would be "concerned"

to hear about Seth Rich's death.  Exs. 1, 2.  WikiLeaks also offered a $20,000 reward for information leading to the conviction of Rich's murderer.  *Id.*

On May 16, 2017, Fox News published an online article by reporter Malia Zimmerman that quoted an unnamed federal investigator who had reviewed a forensic report of Rich's computer and claimed to have "seen and read the emails between Seth Rich and WikiLeaks."  Ex. 1.  The article stated that the federal investigator's claims were "consistent with the findings of Rod Wheeler, a former DC homicide detective and Fox News contributor whose private investigation firm was hired by Rich's family to probe the case."  *Id.*  The article quoted Wheeler stating: "My investigation up to this point shows there was some degree of email exchange between Seth Rich and WikiLeaks," and that "the answers to who murdered Seth Rich sits [sic] on his computer on a shelf at the DC police or FBI headquarters."  *Id.*

Plaintiffs assert that this publication was the product of a scheme by defendants Zimmerman and Ed Butowsky, a Texas businessman who has appeared as an unpaid guest on Fox News and Fox Business programs, to have Wheeler infiltrate the Rich family so that he could feed Zimmerman quotes or information for her "sham" article about Seth Rich.  Am. Compl. ¶¶ 3, 12, 36, 39.  They allege that Butowsky, previously a stranger to them, contacted them months after their son's death and offered to hire and pay for Wheeler to investigate the murder on the family's behalf.  *Id.* ¶¶ 25, 41.  Plaintiffs allege that they negotiated a contract with Wheeler that barred him from sharing information about his investigation with third parties without their consent, *id.* ¶ 57; Ex. 4, and that Wheeler then breached that contract by disclosing information to multiple third

parties—including Zimmerman; a reporter for a local D.C. news station; and White House press secretary Sean Spicer.[1]  Am. Compl. ¶¶ 63, 75.

Plaintiffs allege that Zimmerman and Fox News "intentionally implicated" them in the defamation of their son by identifying Wheeler in the article as an investigator hired by the Rich family.  *Id.* ¶ 136(F).  Within hours after the story was published, however, Fox News updated its report to make clear that Wheeler was "not authorized to speak for the family," and that the Riches rejected the allegations about Seth as "unsubstantiated."  *Id.* ¶ 90; Ex. 2.  The article also quoted Brad Bauman, the Rich family's spokesperson, saying:  "Even if tomorrow, an email was found, it is not a high enough bar of evidence to prove any interactions as emails can be altered and we've seen that those interested in pushing conspiracies will stop at nothing to do so."  Ex. 2.  Fox News updated the article *yet again* later that day to further underscore that the Riches disavowed Wheeler's conclusions.  Ex. 3.  Fox News rewrote the top of the story to state in the very first sentence:  "The family of the Democratic National Committee staffer who was gunned down on July 10 . . . blasted reports that he was a source of emails leaked to WikiLeaks."  *Id.*  Fox News also changed the headline to sound the same theme:  "Family of slain DNC staffer Seth Rich blasts detective over report of WikiLeaks link."  *Id.*

Two days after the article was published, plaintiff Joel Rich wrote to Zimmerman seeking a retraction.  Am. Compl. ¶ 98.  Acceding to the family's request, Fox News issued the retraction on May 23, explaining:  "The article was not initially subject to the high degree of editorial scrutiny we require for all our reporting."  *Id.* ¶¶ 106–07.  Fox also removed the article from its website.  *Id.* ¶ 107.

---

[1] Although the local news station with which Wheeler communicated is a "Fox affiliate," Am. Compl. ¶ 77, that station, WTTG, is neither owned nor operated by defendant Fox News Network, LLC, nor do Plaintiffs so allege.

### B.  Procedural History

On March 13, 2018, nearly a year after Fox News retracted the article, Plaintiffs filed a complaint against Fox News, Zimmerman, and Butowsky asserting claims for intentional infliction of emotional distress, conspiracy to inflict emotional distress, aiding and abetting the intentional infliction of emotional distress, and tortious interference with their contract with Wheeler.  They also brought a claim against Fox News for the negligent supervision of Zimmerman, who is alleged to be a Fox News employee, and Wheeler, who is alleged to be a Fox News contributor.  Am. Compl. ¶¶ 11, 40.

This Court dismissed all counts for failure to state a claim.  Dkt. No. 69.  As relevant here, this Court rejected the intentional infliction claim on the ground that it was a forbidden attempt to plead around the longstanding constitutional and common law rule that family members have no claim for the defamation of a relative, including a deceased relative.  *Id.* at 14–15.  It also dismissed the conspiracy and aiding and abetting counts, holding, correctly, that New York does not recognize these as freestanding tort claims, and they could not survive dismissal of the underlying intentional infliction claim.  *Id.* at 17.  Additionally, the Court dismissed the negligent supervision claim, concluding that Plaintiffs had failed to plead facts "plausibly showing that Fox News knew or had reason to known of Zimmerman and Wheeler's alleged 'propensity' to commit an IIED." *Id.* at 19.  It also held that Plaintiffs had failed sufficiently to allege that Zimmerman and Wheeler had engaged in tortious conduct on, or using, Fox's property.  *Id.*

The Second Circuit vacated the judgment and remanded the case for further proceedings. *See Rich v. Fox News Network, LLC*, 939 F.3d 112, 130 (2d Cir. 2019).  As to the intentional infliction claim, the Court of Appeals held that, although Plaintiffs cannot recover for the defamation of Seth Rich, they have a cause of action for "speech and conduct *specifically targeted* at Joel and Mary"—that is, for the supposed scheme to "plant[]" Wheeler as source inside the

family for the purpose of publishing a story they knew to be false.  *Rich*, 939 F.3d at 118, 125 (emphasis added).  As to the negligent supervision claim, the Court of Appeals held that it could be maintained only if Zimmerman and Wheeler were "*not . . .* acting within the scope of [their] employment; for in that situation the employer would only be liable vicariously under the theory of *respondeat superior*."  *Id.* at 129–30 (emphasis added).  Concluding that the complaint was "not lucid" on whether Plaintiffs were asserting a claim of negligent supervision or vicarious liability, the court remanded with instructions that Plaintiffs be afforded leave to amend.  *Id.* at 130.  Finally, the Court of Appeals declined to address the conspiracy and aiding and abetting claims, remanding for this Court to evaluate the sufficiency of those claims in the first instance.  *Id.* at 126 n.10.

Plaintiffs filed a motion to amend their complaint on January 3, 2020, to which the Fox Defendants consented with the understanding that they would then file a motion to dismiss in part. Dkt. Nos. 92–94.  The Court granted Plaintiffs' motion to amend and filed the amended complaint on January 21, 2020.  Dkt. Nos. 97–99.  This motion to dismiss followed.

## ARGUMENT

## I.    PLAINTIFFS FAIL TO STATE A CLAIM FOR NEGLIGENT SUPERVISION.

Plaintiffs assert a claim against Fox News for negligent supervision based on the alleged tortious conduct of Malia Zimmerman and Rod Wheeler.  For this claim to survive a motion to dismiss, Plaintiffs must plead facts demonstrating "that the employer knew or should have known of the employee's propensity for the conduct which caused the injury prior to the injury's occurrence."  *Rich v. Fox News Network, LLC*, 939 F.3d 112, 129 (2d Cir. 2019) (citing *Ehrens v. Lutheran Church*, 385 F.3d 232, 235 (2d Cir. 2004) (affirming dismissal)); *Doe v. Alsaud*, 12 F. Supp. 3d 674, 680 (S.D.N.Y. 2014) (dismissing claim).  They must also plead, as a separate and independent element, that the employee "committed [the tort] on the employer's premises or with

the employer's chattels." *Rich*, 939 F.3d at 129; *see also Ehrens*, 385 F.3d at 236.  Finally, Plaintiffs must allege that they suffered a significant physical injury as a result of Zimmerman and Wheeler's conduct.  The negligent supervision claim must be dismissed because Plaintiffs have failed to satisfy any of these requirements.

### A.    Fox News Neither Knew Nor Should Have Known that Wheeler or Zimmerman Would Engage in a "Campaign of Emotional Torture."

To satisfy the knowledge element of their negligent supervision claim, Plaintiffs must make "specific allegations of the employee's past wrongdoing to provide a basis from which to infer the employer's knowledge" of its employee's tortious propensity.  *Alsaud*, 12 F. Supp. 3d at 682; *see also Green v. City of Mount Vernon*, 96 F. Supp. 3d 263, 297 (S.D.N.Y. 2015).  It is not enough to allege that the employee engaged in prior tortious conduct.  "The prior misconduct . . . must be *of the same kind that caused the injury*; general, unrelated or lesser allegations of prior wrongdoing are insufficient." *Alsaud*, 12 F. Supp. 3d at 681 (emphasis added).  In other words, Plaintiffs must allege that the employer "knew or should have known of its employee's propensity to engage in *the conduct that caused the third person's injuries*." *Kaupp v. Church*, No. 10-cv-7559, 2011 WL 4357492, at *2 (S.D.N.Y. Sept. 19, 2011) (emphasis added); *see also, e.g.*, *Tchatat v. City of New York*, No. 14-cv-2385, 2015 WL 6159320, at *3 (S.D.N.Y. Oct. 20, 2015) (holding that "a prior arrest for unemployment benefits fraud" was "insufficient to allege that [the employer] should have known about a propensity for violence"); *Nouel v. 325 Wadsworth Realty LLC*, 977 N.Y.S.2d 217, 218 (App. Div. 2013) (holding that previous termination "for insubordination based upon [employee's] reckless driving . . . does not constitute notice of [a] tendency for sexual assault"); *Taylor v. United Parcel Serv., Inc.*, 899 N.Y.S.2d 223, 224 (App. Div. 2010) (holding that employee's previous "inappropriate flirtation" did not alert the employer to his propensity to sexually assault a customer); *Yeboah v. Snapple, Inc.*, 729 N.Y.S.2d 32, 33 (App. Div. 2001)

(holding that a prior felony conviction and misdemeanor drug possession charge did not alert employer to employee's propensity to commit assault).

What is more, New York courts will not impute knowledge of "past wrongdoing" to an employer if it occurred long before the tortious acts alleged.  *See, e.g.*, *Taylor v. Point at Saranac Lake, Inc.*, 23 N.Y.S.3d 682, 685 (App. Div. 2016) (one snowmobile accident occurring 11 years before snowmobile accident that killed plaintiff's husband insufficient to put employer on notice); *Ford v. Gildin*, 613 N.Y.S.2d 139, 139–40 (App. Div. 1994) (no basis to infer knowledge where rental building employee sexually abused a tenant's daughter 27 years after a prior manslaughter conviction and 18 years after being hired).  And employers are under "no duty to conduct a background check" of a prospective employee, *Alsaud*, 12 F. Supp. 3d at 681, including whether "an employee has been convicted of crimes in the past," *Nouel*, 977 N.Y.S.2d at 218.

Plaintiffs cite to three alleged instances of Wheeler and Zimmerman's supposed past wrongdoing in an attempt to show that Fox News "knew or should have known" of their "tortious propensities."  Am. Compl. ¶¶ 200, 204.  But those allegations do not satisfy the knowledge element because they bear no resemblance to the tortious conduct asserted here:  supposedly outrageous activity directed at private figures in the service of a deliberately falsified news report.  *See Rich*, 939 F.3d at 123 (describing such conduct as a "campaign of emotional torture").  Indeed, the prior conduct to which Plaintiffs point is not even tortious—and much of it occurred so long ago as to be irrelevant in any event.

### 1.    Wheeler's 2007 Statements Do Not Demonstrate Any Propensity to Intentionally Inflict Emotional Distress.

Plaintiffs allege that Fox News "knew or should have known that Wheeler had a history of overstating and/or misrepresenting facts in news stories."  Am. Compl. ¶ 33.  Specifically, they allege that, a decade before the publications at issue, Wheeler appeared on a Fox News program

8

hosted by Bill O'Reilly and claimed that "'all over the country' hundreds of gangs of lesbians were carrying pink pistols and 'recruiting kids as young as 10 years old,' that such gangs numbered 'well over' 150 in the Washington, D.C., area alone, and that 'some of the kids have actually reported that they were forced into, you know, performing sex acts.'" *Id.* ¶¶ 201, 203.  As alleged in the amended complaint, Wheeler then issued a clarification and apology that "he had not meant many of the things he had stated on Fox News." *Id.* ¶ 202.

These statements do not "provide a basis from which to infer" Fox News's knowledge of Wheeler's propensity to engage in the tortious conduct alleged here. *See Alsaud*, 12 F. Supp. 3d at 682.  As Plaintiffs have insisted, the tort claim at issue here comprises more than the publication of allegedly false or overstated facts.[2]  Indeed, Plaintiffs specifically distinguish the claim at issue here from a claim of defamation.  Instead, they allege that Wheeler participated in a course of conduct amounting to a "malicious campaign of harassment" that was specifically targeted at them—conduct that supposedly included infiltrating the Rich family so that he could feed quotes to Zimmerman for her "sham" article about Seth Rich.  *See Rich*, 939 F.3d at 118; Am. Compl. ¶ 3.  Plaintiffs have failed to allege that Wheeler engaged in any prior conduct of this kind.  His farfetched statements concerning unidentified lesbian gangs hardly amount to a "malicious campaign of harassment" specifically targeted at any individual.  *See Alsaud*, 12 F. Supp. 3d at 681 (requiring the "prior misconduct" to be "of the same kind that caused the injury" and noting that "general, unrelated or lesser allegations of prior wrongdoing are insufficient").

---

[2] *See, e.g.*, Brief of Appellants Joel and Mary Rich, Case No. 18-cv-2321 (2d Cir.), at 32 ("Importantly, Joel and Mary do not rest their claims on a single false statement, or even a series of false statements—they allege that Defendants made false statements *and* took overt actions in furtherance of a 'campaign' to exploit the Riches' investigative resources and position as the family to amplify a false narrative about their murdered son.").

**2. Neither Zimmerman's 2016 Article Nor a 20-Year-Old Complaint Against Her Previous Employer Demonstrates a Tortious Propensity to Engage in a "Malicious Campaign of Harassment."**

Plaintiffs next allege that Fox News "knew or should have known" that Zimmerman "was an irresponsible journalist," Am. Compl. ¶ 28, based on two prior events. But even accepting as true for purposes of this motion that Zimmerman engaged in two isolated instances of "irresponsible" journalism over a long career, these allegations cannot support a claim for negligent supervision. Her supposedly negligent conduct on these two occasions—one of which long predated her employment with Fox News—would not have alerted Fox that she had a propensity to engage in the deliberate fabrications and malicious conduct that Plaintiffs allege here.

**a. 2016 Fox News Article Concerning Florida Imam**

Plaintiffs allege that, in 2016, Zimmerman "was criticized" for a story published by Fox News "citing anonymous officials suggesting that Omar Mateen, the shooter at the Orlando nightclub shooting, had been radicalized by his connection to a local imam, Marcus Dwayne Robertson, and that Robertson had been 'rounded up' along with several of his associates, in connection to the attack." Am. Compl. ¶ 197. They allege "[o]n information and belief" that the story was "not accurate." *Id.* ¶ 198. But the allegations that Zimmerman published an erroneous report do not come close to showing a propensity for engaging in the tortious conduct alleged here. Plaintiffs do not allege that this purported error was anything other than a good-faith mistake. Absent some allegation that Zimmerman's reporting on Robertson involved the type of deliberate falsification and supposedly outrageous conduct alleged in this case, this prior incident is irrelevant to the negligent supervision claim. It is exactly the type of "general, unrelated or lesser allegation[] of prior wrongdoing" that does not suffice to state a claim for negligent supervision. *See Alsaud*, 12 F. Supp. 3d at 681.

10

**b.**   **1999 Administrative Complaint Against Zimmerman's Former Employer**

Plaintiffs also allege that, in 1999, the communications director for the governor of Hawaii filed a complaint with an entity called the Honolulu Community-Media Council based on Zimmerman's purported "recklessly inaccurate journalism."[3]  Am. Compl. ¶¶ 28, 193; *see also* Ex. 5.  In fact, the complaint was lodged against Zimmerman's employer at the time, Pacific Business News, and it concerned several news and opinion pieces, only some of which were written by Zimmerman.  Ex. 5, at 1–3.  What is more, the accusations that *were* targeted at Zimmerman bear little resemblance to the tortious conduct at issue in this case.  The complaint primarily alleged that Zimmerman wrote an article concerning a draft report of a state tourism task force that was not ready for public release.  Separately, it asserted that Zimmerman misquoted a state senator when she reported he had suffered retribution at the hands of the governor and other state senators.  In a letter attached to the complaint, the senator clarified that "the retribution issue" referred not to the governor, but only to "what has occurred in the State Senate," and attributed the error to a simple "misunderstanding."  Ex. 5, at 7.  At worst, these incidents involved good-faith errors of the type even the most well-intentioned reporter could make; at best, they are examples of hard-hitting and perfectly legitimate news reporting that state officials wish to suppress from public view.  Either way, they are a far cry from the course of conduct involving deliberate falsification and "emotional torture" targeted at private individuals that is alleged here.

---

[3] The Honolulu Community-Media Council is "an organization that mediates disputes about news coverage."  Am. Compl. ¶ 193.  A copy of the complaint filed by the governor's communications director is attached here as Exhibit 5.  It is incorporated by reference into the amended complaint and may be considered on a motion to dismiss.  *See Rams v. Def Jam Recordings, Inc.*, 202 F. Supp. 3d 376, 382–83 (S.D.N.Y. 2016) (Daniels, J.).

11

Plaintiffs cite to the section of the Hawaii complaint in which the governor's public relations chief accused Pacific Business News of "ignor[ing] journalistic ethics" and "knowingly reporting inaccurate, unbalanced and unsubstantiated stories."  Ex. 5; *see also* Am. Compl. ¶ 194. Even assuming that these charges referred to Zimmerman at all, they look nothing like the conduct alleged here.  The Second Circuit did not allow the intentional infliction claim to proceed on the ground that Zimmerman violated journalism standards, made errors, or published a one-sided news account about public officials.  It recognized a claim based on supposedly outrageous conduct directed at private figures in the service of a deliberately falsified article.  *See Rich*, 939 F.3d at 123.  General—not to mention unproven—allegations about the fairness of decades-old news reporting would not have placed Fox News on notice that Zimmerman would engage in the conduct the Court of Appeals recognized as tortious.[4]  *See* Am. Compl. ¶ 196 (alleging that the Hawaii complaint was withdrawn by the governor's office).

Indeed, even if the Hawaii complaint alleged conduct similar to the tortious conduct alleged here, the fact that it was lodged nearly two decades before Zimmerman's reporting on Seth Rich forecloses the inference that Fox News was on notice of Zimmerman's supposed propensity to intentionally inflict emotional distress.  *See, e.g.*, *Taylor*, 23 N.Y.S.3d at 685 (past incident too remote to confer knowledge where 11 years elapsed between past incident and tortious conduct);

---

[4] Publishing an inaccurate or one-sided news account concerning a public official *is not even a tort*.  Before a governor or other public official can state a claim for defamation, he must allege that the reporting was *substantially* false; allegations of minor inaccuracies, lack of balance, or lapses in journalism standards do not suffice.  *See Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 516–17 (1991).  And it is clear from the face of the Hawaii complaint that Zimmerman's reporting was not *substantially* false.  The complaint accused her employer of "knowingly presenting false government documents," when in fact the document at issue was simply an unpublished draft subject to further comment and revision.

*Ford*, 613 N.Y.S.2d at 141–42 (same where 27 years elapsed between past incident and tortious conduct).

Moreover, Plaintiffs do not allege that Fox News even knew about the two-decade-old Hawaii complaint, either before or after it hired Zimmerman.  Nor do Plaintiffs allege that Fox News was aware of any facts that would have triggered a duty to investigate and uncover the complaint.  *See Richardson v. City of New York*, No. 04-cv-5314, 2006 WL 3771115, at *13 (S.D.N.Y. Dec. 21, 2006) (requiring an employer to investigate a prospective employee only upon "knowledge of facts that would lead a reasonably prudent person to investigate").  Absent such facts, Fox News had no freestanding duty to adopt any "specific procedures" before hiring Zimmerman, "to conduct a background check," or even to "inquire as to whether [she had] been convicted of crimes in the past." *Shor v. Touch-N-Go Farms, Inc.*, 933 N.Y.S.2d 686, 688 (App. Div. 2011); *see also Bouchard v. N.Y. Archdiocese*, 719 F. Supp. 2d 255, 262 (S.D.N.Y. 2010); *Alsaud*, 12 F. Supp. 3d at 681; *Nouel*, 977 N.Y.S.2d at 218 (dismissing negligent supervision claim where employee sexually abused a child after being hired to work at a residential building in part because the employer had no duty to uncover employee's past crimes and status as registered sex offender).  As such, the complaint cannot serve as the basis for a negligent supervision claim.

In sum, a 20-year-old *complaint* that alleged an error based on a "misunderstanding," and that was not even known to Fox News, can hardly alert Fox News of Zimmerman's propensity to engage in the alleged "campaign of emotional torture" that is the basis of the amended complaint in this case.  *See Rich*, 939 F.3d at 123.

## B. Wheeler Did Not Engage in Any Tortious Acts on Fox News's Premises or Using Fox News's Chattels.

To state a claim against an employer for negligent supervision, a plaintiff must plead that the employee or contractor "committed [the tort] on the employer's premises or with the

employer's chattels."   *Rich*, 939 F.3d at 129; s*ee also Kaupp*, 2011 WL 4357492, at *3 (distinguishing use of "personal email and telephone" from professional email and telephone).

Plaintiffs fail to state a claim for the negligent supervision of Wheeler because they do not allege facts showing that he engaged in any tortious act on Fox News's premises or using any of Fox News's chattels.   Implicitly acknowledging this element of the claim, Plaintiffs allege in conclusory terms that "Wheeler engaged in tortious conduct against Joel and Mary on Fox News's premises and/or using property of Fox News."   Am. Compl. ¶ 205.   But such a "formulaic recitation of the elements" of the cause of action—"devoid of further factual enhancement"—is plainly insufficient to state a claim.   *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).   That is particularly true in this case, where Plaintiffs allege that Butowsky—not Fox News—paid for Wheeler's services.   Am. Compl. ¶¶ 49, 54, 58.

## C.   Plaintiffs Did Not Suffer the Requisite "Significant Physical Injury."

Finally, the Court should dismiss the negligent supervision claim because Plaintiffs have failed to allege, as they must, that "defendants assaulted [them] or caused [them] personal injury." *Brown v. Bronx Cross Cty. Med. Grp*., 834 F. Supp. 105, 110 (S.D.N.Y. 1993).   "Thus, regardless of what facts are ultimately proven by plaintiff[s], [they can]not, as a matter of law, establish a claim for negligent hiring and retention of an employee under New York law."   *Id.*; *see also Ahluwalia v. St. George's Univ., LLC*, 63 F. Supp. 3d 251, 264 (E.D.N.Y. 2014) (dismissing claim for failure to plead significant physical injury); *Kaupp*, 2011 WL 4357492, at *3.[5]

---

[5] The requirement that plaintiff plead he suffered a physical injury comports with the law of other states.   *See Zeng v. Elec. Data Sys. Corp.*, No. 07-cv-310, 2007 WL 9618247, at *2 (E.D. Va. June 18, 2007); *Jernigan v. Alderwoods Grp., Inc.*, 489 F. Supp. 2d 1180, 1204 (D. Or. 2007); *Bruchas v. Preventive Care, Inc.*, 553 N.W.2d 440, 443 (Minn. Ct. App. 1996).

Courts in the Southern District have not hesitated to dismiss negligent supervision claims at the outset of a case even when the emotional injury plaintiff claims to have suffered is severe. *See Kaupp*, 2011 WL 4357492; *see also Brown*, 834 F. Supp. at 107, 110 (dismissing negligent supervision claim for failing to allege personal injury, even though plaintiff had alleged "severe emotional distress" so as to sustain her intentional infliction claim).  In *Kaupp*, the plaintiff alleged that defendant's employee intentionally inflicted emotional distress by stalking, threatening, and harassing her.  *See* 2011 WL 4357492, at *1.  The employee not only called plaintiff hundreds of times in one morning; he also harassed her young son, family members, babysitters, and coworkers.  *Id.*  Despite the severity of the emotional injury claimed by the plaintiff, the court dismissed the negligent supervision claim against the employer on a Rule 12(b)(6) motion, holding that "[i]n this case, [plaintiff] has not alleged physical injury, and therefore cannot establish a claim for negligent retention."  *Id.* at *3.  Notably, the plaintiff in *Kaupp* alleged that her emotional injury manifested in the form of physical and psychological symptoms, including vomiting and sleeplessness.  *Id.* at *1.  But the court found those physical symptoms legally insufficient to demonstrate the required physical injury.  So too here, the Court should dismiss the negligent supervision claim because Plaintiffs have failed to plead not only "significant physical injury," *id.* at *3, but any physical injury whatsoever.

### D.   Dismissing the Negligent Supervision Claim Would Confine the Scope of Discovery to Issues at the Core of the Second Circuit's Opinion.

Dismissing the meritless negligent supervision claim at this juncture would bring the additional, practical benefit of narrowing the scope of discovery.  Plaintiffs are attempting to use the negligent supervision claim as a hook to obtain wide-ranging discovery into Wheeler's entire history with Fox News:  they have served a request for *all* documents and communications concerning Wheeler in the possession of *anyone* at Fox with no date limitation. Ex. 6, at 10.  This

15

expansive request is little more than a fishing expedition, and the amended complaint only highlights that Plaintiffs have not asserted any claim that would justify the costly and intrusive discovery Plaintiffs seek here.

## II.    FOX NEWS CANNOT BE HELD LIABLE FOR THE CONDUCT OF WHEELER OR BUTOWSKY.

The Second Circuit held that Plaintiffs had stated a claim for intentional infliction of emotional distress against Fox News and Zimmerman.  Not content to limit their damages against these defendants to the conduct in which they actually engaged, Plaintiffs additionally seek to hold Fox News liable for the actions of Wheeler and Butowsky.  They claim that Fox News is vicariously liable for Wheeler's conduct because he was Fox's agent or employee—or, in the alternative, that Fox News and Zimmerman conspired with or aided and abetted the tortious conduct of both Wheeler and Butowsky.  None of these theories has merit.

### A.    Fox News Is Not Vicariously Liable for Wheeler's Conduct.

Plaintiffs cannot hold Fox News vicariously liable for Wheeler's alleged intentional infliction of emotional distress for two independently sufficient reasons.

1.    Plaintiffs cannot maintain an intentional infliction claim against Wheeler in the first instance, because they have a ready alternative claim against him for breach of contract.  As the Second Circuit recognized here, intentional infliction is a claim of "last resort" that is available only where the plaintiff would have no other remedy for the conduct at issue.  *See Rich*, 939 F.3d at 122 (quoting *Salmon v. Blesser*, 802 F.3d 249, 256 (2d Cir. 2015)); *Turley v. ISG Lackawanna, Inc.*, 774 F.3d 140, 158 (2d Cir. 2014).  But Plaintiffs have alleged that Wheeler violated the confidentiality clause in his contract with their family.  *See* Am. Compl. ¶¶ 174–75.  Thus, by their own lights, they would have a claim against him sounding in breach of contract.  Indeed, Wheeler's contract provides that Plaintiffs have the right to "take actions against Capitol Investigations and/or

16

its agents or employees *for representations made to the media* in violation of this agreement."  Ex. 4 (emphasis added).  That Plaintiffs have chosen not to bring such a claim against Wheeler does not give them the right to hold Fox News liable for his alleged breach under an intentional infliction theory.  "The tort of IIED simply has no application when the actor intends to invade some other legally protected interest, even if emotional distress results."  *Turley*, 774 F.3d at 159 n.18.

The vicarious liability claim against Fox News is nothing more than an attempted end-run around the rules that govern when a principal may be liable for a breach of contract by its agent or employee.  Ordinarily, "to bind a principal to a contract, an agent must have real or apparent authority to do so."  *PMC, Inc. v. Atomergic Chemetals Corp.*, 844 F. Supp. 177, 182 (S.D.N.Y. 1994).  Plaintiffs have not alleged that Wheeler entered into the contract with the Riches under the actual or apparent authority of Fox News—any such claim would make no sense.  Yet Plaintiffs attempt to reach the same result by claiming that Fox News is vicariously liable for what is in essence a breach of contract by its purported agent or employee.

2.    The vicarious liability count cannot be sustained for the additional reason that Wheeler is only an independent contractor, not an employee of Fox News.  "Ordinarily, a principal is not liable for the acts of independent contractors in that, unlike the master-servant relationship, principals cannot control the manner in which the independent contractors' work is performed."  *Chainani by Chainani v. Bd. of Educ. of City of N.Y.*, 663 N.E.2d 283, 287 (N.Y. 1995).  Under New York law, the touchstone of a principal-agent relationship is "the existence of the right of control over the agent in respect of the manner in which his work is to be done."  *Chaiken v. VV Publ'g Corp.*, 119 F.3d 1018, 1033 (2d Cir. 1997).  Unlike an agent or employee, an independent contractor "agrees to achieve a certain result but is not subject to the orders of the employer as to the means which are to be used."  *Id.*

17

In this case, Plaintiffs' own allegations establish that Fox News neither controlled nor directed Wheeler's actions in connection with the reporting about Seth Rich and WikiLeaks.  To the contrary, the amended complaint alleges that Wheeler leaked Zimmerman's findings to WTTG, the local affiliate, the day before Fox News published its own story, thus short-circuiting "an exclusive" into which the network had "invested a lot of time and money."  Am. Compl. ¶ 85.  According to Plaintiffs, Wheeler asked producers at Fox News for permission to talk to the reporter at WTTG—and then proceeded to give the interview even after Fox News denied such permission.  *Id.* ¶ 75–76.  Upon learning that Wheeler had leaked the story, Zimmerman allegedly texted him: "New York won't be happy."  *Id.* ¶ 84.  Far from establishing that Fox News exercised control over Wheeler, the amended complaint refutes any such suggestion.

The fact that Wheeler's contributor agreement with Fox News provides for only a per-appearance fee, and not a salary or other benefits, further undercuts Plaintiffs' claim that he should be treated as Fox's employee.  Ex. 7.  Courts in the Southern District have expressly declined to hold publishers liable for the acts of freelance journalists who were paid under similar arrangements.  *See Chaiken v. VV Publ'g Corp.*, 907 F. Supp. 689, 699 (S.D.N.Y. 1995), *aff'd*, 119 F.3d 1018 (2d Cir. 1997) (finding that "terms and conditions" of reporter's employment, including the fee structure and the absence of a salary, fringe benefits, and an office, provided "compelling evidence of his independent status"); *Nelson v. Globe Int'l, Inc.*, 626 F. Supp. 969, 978 (S.D.N.Y. 1986) (concluding that author of allegedly defamatory article was an independent contractor where, among other things, he was paid a flat fee and did not receive a salary or fringe benefits).  In this case, moreover, the only remuneration Wheeler allegedly received in connection with the reporting on Seth Rich was the payment from Butowsky.  Am. Compl. ¶ 58.

**B.      The Claim for Conspiracy to Inflict Emotional Distress Must Be Dismissed.**

The claim for conspiracy to commit intentional infliction of emotional distress has two

fatal flaws, either of which provides an independent basis for dismissal.

1.      "New York does not recognize an independent tort of conspiracy.'" *Kirch v.*

*Liberty Media Corp.*, 449 F.3d 388, 401 (2d Cir. 2006).  "Although not itself a substantive tort,

conspiracy may be alleged to tie a defendant to an actionable tort." *Zucker v. Katz*, 708 F. Supp.

525, 536 (S.D.N.Y. 1989).  But "the proposition that conspiracy may be alleged 'to connect a

defendant to an otherwise actionable tort,' does not allow a plaintiff to reallege a tort asserted

elsewhere in the complaint in the guise of a separate conspiracy claim." *Aetna Cas. & Sur. Co. v.*

*Aniero Concrete Co.*, 404 F.3d 566, 591 (2d Cir. 2005) (internal citation omitted).  Thus, "a cause

of action for civil conspiracy that offers no new allegations beyond those alleged in support of

other tort claims alleged elsewhere must be dismissed as duplicative." *U.S. Small Bus. Admin. v.*

*Feinsod*, 347 F. Supp. 3d 147, 168 (E.D.N.Y. 2018); *see also Am. Baptist Churches of Metro. N.Y.*

*v. Galloway*, 710 N.Y.S.2d 12, 18 (App. Div. 2000) (dismissing civil conspiracy claim as

"redundant" where plaintiff's "other claims have already pleaded these torts and defendants'

alleged collusion to commit them").  "Additionally, where a plaintiff alleges that all defendants

are primarily liable for the underlying torts, then separate claims of conspiracy to commit said tort

are redundant and must be dismissed as a matter of law." *Naughright v. Weiss*, 826 F. Supp. 2d

676, 692 (S.D.N.Y. 2011).

That is the case here.  The conspiracy claim is entirely redundant of the intentional

infliction claim, which itself rests on a collective action theory.  The very conduct that Plaintiffs

allege to be outrageous involves convincing the family that Zimmerman, Butowsky, and Wheeler

were "purportedly acting independent [sic] of each other," Am. Compl. ¶ 29, when they in fact

were collaborating behind the scenes to concoct a false story about Seth Rich, *id.* ¶ 136.  The

conspiracy claim adds nothing new:  each of the overt acts these individuals allegedly undertook in furtherance of the scheme already forms a part of the intentional infliction claim.  Because Plaintiffs make no allegations beyond what they offer in support of the underlying tort claim, their conspiracy claim must be dismissed as duplicative.  What is more, Plaintiffs assert that each defendant is "primarily liable" for intentional infliction of emotional distress.  *See Naughright*, 826 F. Supp. 2d at 692.  Thus, no conspiracy claim is needed to "connect" any defendant "to an otherwise actionable tort."  *See Aetna*, 404 F.3d at 591.

2.      The conspiracy claim also must be dismissed because Plaintiffs have failed to plead the required mental state.  To state a claim for conspiracy, Plaintiffs must plausibly allege not only "a corrupt agreement between two or more parties," but also "the parties' *intentional participation* in furtherance of a plan or purpose."  *Ho Myung Moolsan Co. v. Manitou Mineral Water, Inc.*, 665 F. Supp. 2d 239, 256 (S.D.N.Y. 2009) (emphasis added); *see also Arlinghaus v. Ritenour*, 622 F.2d 629, 640 (2d Cir. 1980) (similar); *Ray Legal Consulting Grp. v. DiJoseph*, 37 F. Supp. 3d 704, 722 (S.D.N.Y. 2014) (requiring plaintiff to allege "facts which support an inference that defendants knowingly agreed to cooperate in a fraudulent scheme, or shared a perfidious purpose").  Plaintiffs, in other words, must plausibly allege that defendants had a "specific intent" to commit the underlying tort.  *See Singh v. NYCTL 2009-A Trust*, No. 14 Civ. 2558, 2016 WL 3962009, at *10 (S.D.N.Y. July 10, 2016).[6]  "Malice and an intent both to participate in the alleged conspiracy and to injure the plaintiff are essential elements in an action for conspiracy."  20 N.Y. Jur. 2d Conspiracy, § 4.

---

[6] This requirement is consistent with the law of other states.  *See Haskin v. R.J. Reynolds Tobacco Co.*, 995 F. Supp. 1437, 1440 (M.D. Fla. 1998) (holding that there can be no "conspiracy to commit recklessness, which is simply a heightened form of negligence and short of an intentional act"); *Triplex Commc'ns, Inc. v. Riley*, 900 S.W.2d 716, 719 (Tex. 1995) ("civil conspiracy requires specific intent").

The requirement that Plaintiffs plead specific intent to commit the underlying tort is not only an established feature of New York law; it is also required by the First Amendment.  Proof of cooperation between a reporter and a source "who have a common purpose to produce a news story does not represent a sufficient basis for an actionable conspiracy," even where both parties knew or recklessly disregarded that the publication at issue was false.  *Dowd v. Calabrese*, 589 F. Supp. 1206, 1213 (D.D.C. 1984).

> Collaboration between individuals with an axe to grind and reporters eager for a story is not uncommon; rather, it is the way the news media frequently operate. . . . But such collaboration does not, without more, a conspiracy make, that is, an unlawful agreement which, if proved, gives rise to civil damages.

*Id.*  Before liability may be imposed "in this sensitive First Amendment area," plaintiff must present "specific evidence of *a joint purpose to defame*."  *Id.* at 1214 (emphasis added); *cf. World Wrestling Fed. Entm't, Inc. v. Bozell*, 142 F. Supp. 2d 514, 532–33 (S.D.N.Y. 2001) (sustaining conspiracy claim where plaintiff alleged defendants "committed specific overt acts in furtherance of *their efforts to defame*" (emphasis added)).

Plaintiffs make no plausible allegation that Fox News, Zimmerman, Butowsky, or Wheeler had a joint purpose to inflict emotional distress on Plaintiffs.  To the contrary, the amended complaint alleges that these parties collaborated on the Seth Rich story in pursuit of other ends: Fox News to improve its ratings, Am. Compl. ¶ 109, and Butowsky to promote the view that Russia was not responsible for the leak of the DNC emails, *id.* ¶ 82.  While Plaintiffs might have felt emotional distress *in response to* the newsgathering and publication, the amended complaint presents no basis to believe that inflicting such injury was the *purpose* of any of the defendants. To the contrary, the amended complaint forecloses any such inference:  Plaintiffs allege that they were merely "*collateral damage* in a political war to which they are *innocent bystanders*."  *Id.* ¶ 1 (emphasis added).  That allegation is sufficient to defeat their conspiracy claim.

21

C.     **Plaintiffs Have Failed to State a Claim for Aiding and Abetting the Intentional Infliction of Emotional Distress.**

Finally, Plaintiffs have failed to state an aiding and abetting claim against Fox News and Zimmerman for two independent reasons, as well.

1.     Plaintiffs have not identified any complete tort to which these defendants provided substantial assistance. *See Bigio v. Coca-Cola Co.*, 675 F.3d 163, 172 (2d Cir. 2012). To maintain an aiding and abetting claim, Plaintiffs must sufficiently allege that "an underlying tort" has been committed and that the defendant provided "substantial assistance to advance the underlying tort's commission." *Id.* (brackets omitted); *see also In re Bayou Hedge Funds Inv. Litig.*, 472 F. Supp. 2d 528, 532 (S.D.N.Y. 2007). By its very nature, this claim requires a "primary actor[]," *Gym Door Repairs, Inc. v. Young Equip. Sales, Inc.*, 206 F. Supp. 3d 869, 913 (S.D.N.Y. 2016), and one who merely encourages or assists. But even Plaintiffs acknowledge that the conduct ascribed to any individual defendant "alone might not be sufficiently outrageous" to satisfy New York's stringent standard for intentional infliction liability. *See Rich*, 939 F.3d at 122 (summarizing Plaintiffs' theory of the case). Plaintiffs assert instead that Zimmerman, Butowsky, and Wheeler participated in "a series of acts that, *taken together*, constitute extreme and outrageous conduct." *Id.* (emphasis added). Their mosaic theory of liability—which requires the discrete contributions of several individuals to arrive at an actionable tort in the first instance—is incompatible with an aiding and abetting cause of action.

2.     Plaintiffs also have failed to plead the required mental state. To be liable under an aiding and abetting theory, "the defendant must know the wrongful nature of the primary actor's conduct." *In re Terrorist Attacks on Sept. 11, 2001*, 349 F. Supp. 2d 765, 826 (S.D.N.Y. 2005). And "aiding and abetting liability requires that the aider and abettor share the intent or purpose of the principal actor, and there can be no partnership in an act where there is no community of

22

purpose." *Fried v. LVI Servs., Inc.*, No. 10-cv-9308, 2011 WL 2119748, at *7 (S.D.N.Y. May 23, 2011).  Plaintiffs do not come close to carrying this burden with respect to the aiding and abetting claim against Fox News.   Although they assert that Fox News "knew that Butowsky and Zimmerman were engaged in tortious conduct," Am. Compl. ¶ 147, they do not allege a single fact in support of that bare assertion.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556–57 (2007) (conspiracy case).  And although Plaintiffs allege that Fox News "was aware of its [own] role" in Zimmerman and Butowsky's tortious activity, they again make no allegation that Fox shared their purpose or intent.  *Id.* ¶ 148.  The aiding and abetting count must be dismissed.

## CONCLUSION

For the foregoing reasons, the Court should grant the motion of defendants Fox News Network, LLC and Malia Zimmerman to dismiss the negligent supervision, vicarious liability, conspiracy, and aiding and abetting claims.

Respectfully submitted,

/s/ *Joseph M. Terry*

Kevin T. Baine
Joseph M. Terry (*pro hac vice*)
Stephen J. Fuzesi
Katherine Moran Meeks (*pro hac vice*)
Katherine A. Petti (*pro hac vice*)

WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C. 20005
Tel: (202) 434-5000
Fax: (202) 434-5029

650 Fifth Avenue
Suite 1500
New York, NY 10019
kbaine@wc.com
jterry@wc.com

23

sfuzesi@wc.com
kmeeks@wc.com
kpetti@wc.com

*Attorneys for Fox News Network, LLC*

*With Consent*,

DECHERT LLP
David H. Stern (*pro hac vice*)
U.S. Bank Tower
633 West 5th Street
Los Angeles, CA 90071
(213) 808-5700

Nicolle Lipper Jacoby
1095 Avenue of the Americas
New York, NY 10036
david.stern@dechert.com
nicolle.jacoby@dechert.com

*Attorneys for Malia Zimmerman*

Dated:  January 31, 2020

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 31, 2020, I electronically filed the foregoing Memorandum in Support Fox News Network, LLC, and Malia Zimmerman's Motion to Dismiss the Amended Complaint for Failure to State a Claim with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record in this matter who are on the CM/ECF system.

/s/ *Joseph M. Terry*
Joseph M. Terry
