**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------- X

JOEL RICH and MARY RICH,                              :

                                        :   Civil Action No. 1:18-cv-02223

                   Plaintiffs,        :   (GBD)(SN)

                                          :   Redacted for Public Filing

                   v.                              :

                                          :

FOX NEWS NETWORK, LLC, MALIA             :
ZIMMERMAN in her individual and professional      :
capacities, and ED BUTOWSKY, in his individual     :
and professional capacities,                        :

                                          :

                   Defendants.        :

---------------------------------------------------------------- X

 

 

**PLAINTIFFS' OPPOSITION TO FOX NEWS NETWORK, LLC'S**
**AND MALIA ZIMMERMAN'S SECOND MOTION TO DISMISS**

## TABLE OF CONTENTS

INTRODUCTION ......................................................................................................... 1

BACKGROUND .......................................................................................................... 4

ARGUMENT ............................................................................................................... 7

I.     The Amended Complaint Properly Alleges Fox Negligently Supervised Zimmerman and Wheeler. ................................................................................ 7

        A.    Joel and Mary Properly Allege Fox Knew or Should Have Known of Wheeler's and Zimmerman's Tortious Propensities................................. 8

        B.    Joel and Mary Properly Allege that Wheeler Engaged in Tortious Acts on Fox's Premises or Using Fox's Chattels. ............................................. 11

        C.    Joel and Mary Properly Allege Damages for Negligent Supervision. ................... 12

II.    The Amended Complaint Properly Alleges Fox Is Vicariously Liable for Wheeler's Tortious Acts. ................................................................................................ 13

        A.    Fox Is Vicariously Liable for Wheeler's Tortious Acts Even if Joel and Mary Could Have Sued Wheeler for Breach of Contract. ................................... 14

        B.    The Amended Complaint Properly Pleads Fox's Control Over Wheeler. ............ 16

III.   The Amended Complaint Properly Alleges a Viable Conspiracy Claim. ....................... 18

        A.    Joel and Mary's Conspiracy Claim Is Not Redundant.......................................... 18

        B.    Joel and Mary Adequately Allege Defendants' *Mens Rea* for Conspiracy. ......... 20

IV.   Joel and Mary's Aiding and Abetting Claim Should Not Be Dismissed.......................... 23

CONCLUSION.............................................................................................................. 25

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Aetna Cas. & Sur. Co. v. Aniero Concrete Co.*,
    404 F.3d 566 (2d Cir. 2005) ................................................. 20

*Ahluwalia v. St. George's Univ., LLC*,
    63 F. Supp. 3d 251 (E.D.N.Y. 2014),
    *aff'd sub nom.*, 626 F. App'x 297 (2d Cir. 2015) ................................. 13

*Am. Baptist Churches of Metro. N.Y. v. Galloway*,
    710 N.Y.S.2d 12 (1st Dep't 2000) ............................................... 20

*Anna O. v. State*,
    No. 114085, 2011 WL 6957587 (N.Y. Ct. Cl. Oct. 19, 2011) ......................... 8, 9

*Arista Records, LLC v. Doe 3*,
    604 F.3d 110 (2d Cir. 2010) ................................................... 14

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ........................................................... 7

*Battalla v. State*,
    10 N.Y.2d 237 (N.Y. 1961) ..................................................... 12

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ........................................................... 7

*Bigio v. Coca-Cola Co.*,
    675 F.3d 163 (2d Cir. 2012) ................................................... 24

*Bliss v. Putnam Valley Cent. Sch. Dist.*,
    No. 06-cv-15509 (WWE), 2011 WL 1079944 (S.D.N.Y. Mar. 24, 2011) ................... 9

*Brown v. Bronx Cross County Med. Grp.*
    834 F. Supp. 105 (S.D.N.Y. 1993) ............................................ 12, 13

*Bruchas v. Preventive Care, Inc.*,
    553 N.W.2d 440 (Minn. Ct. App. 1996) .......................................... 12

*Childers v. New York & Presbyterian Hosp.*,
    36 F. Supp. 3d 292 (S.D.N.Y. 2014) ............................................ 11

*D'Amico v. Christie*,
    71 N.Y.2d 76 (1987) ........................................................... 11

*David v. Am. Home Assur. Co.*,
    No. 95 Civ. 10290 (LAP), 1997 WL 160367 (S.D.N.Y. Apr. 3, 1997) ................... 7

*Doe v. Alsaud*,
    12 F. Supp. 3d 674 (S.D.N.Y. 2014) ........................................... 8, 9

*Dowd v. Calabrese*,
    589 F. Supp. 1206 (D.D.C. 1984) ............................................... 22

*Fischer v. Maloney*,
    43 N.Y.2d 553 (N.Y. 1978) ................................................................. 15

*Ford v. Gildin*,
    613 N.Y.S.2d 139 (1st Dep't 1994) ..................................................... 8

*Fried v. LVI Services, Inc.*,
    No. 10 Civ. 9308, 2011 WL 2119748 (S.D.N.Y. May 23, 2011)........... 24

*Gray v. Schenectady City Sch. Dist.*,
    927 N.Y.S.2d 442 (3rd Dep't 2011) .................................................... 10

*Green v. City of Mount Vernon*,
    96 F. Supp. 3d 263 (S.D.N.Y. 2015) ............................................... 9, 22

*Gym Door Repairs, Inc. v. Young Equip. Sales, Inc.*,
    206 F. Supp. 3d 869 (S.D.N.Y. 2016) ........................................... 20, 24

*Ho Myung Moolsan Co. v. Manitou Mineral Water, Inc.*,
    665 F. Supp. 2d 239 (S.D.N.Y. 2009) ..................................... 20, 21, 22

*Howell v. N.Y. Post Co., Inc.*,
    612 N.E.2d 699 (N.Y. 1993)............................................................... 14

*Hwang v. Grace Rd. Church (in New York)*,
    No. 14-CV-7187, 2016 WL 1060247 (E.D.N.Y. Mar. 14, 2016).......... 9, 10

*In re Elec. Books Antitrust Litig.*,
    859 F. Supp. 2d 671 (S.D.N.Y. 2012) ................................................. 21

*Kaupp v. Church*,
    No. 10 Civ. 7559 (JFK), 2011 WL 4357492 (S.D.N.Y. Sept. 19, 2011) ............ 13

*Kleeman v. Rheingold*,
    614 N.E.2d 712 (N.Y. 1993)............................................................... 17

*Leeds v. D.B.D. Servs., Inc.*,
    766 N.Y.S.2d 180 (1st Dep't 2003)..................................................... 17

*LeFebvre v. New York Life Ins. and Annuity Corp.*,
    625 NY.S.2d 695 (3rd Dep't 1995) ..................................................... 21

*Levin v. Kitsis*,
    920 N.Y.S.2d 131 (2nd Dep't 2011)..................................................... 20

*Litras v. Litras*,
    681 N.Y.S.2d 545 (2nd Dep't 1998)............................................... 18, 20

*Morris v. State*,
    No. 100694-A, 2012 WL 966945 (N.Y. Ct. Cl. Mar. 6, 2012) ............. 9

*Nadelson v. Zakharchenko*,
    No. 501571/2012, 2014 WL 4926334 (N.Y. Sup. Ct., Oct. 2, 2014)............ 19, 20

*New York Dist. Council of Carpenters Pension Fund v. Forde*,
    939 F. Supp. 2d 268 (S.D.N.Y. 2013) ................................................. 11

*Nouel v. 325 Wadsworth Realty LLC*,
  977 N.Y.S.2d 217 (1st Dep't 2013)............................................................ 10

*Patterson v. State*,
  No. 121681, 2014 WL 4548437 (N.Y. Ct. Cl. Aug. 29, 2014) ............................ 9

*Phillips v. Uber Techs., Inc.*,
  No. 16 Civ. 295 (DAB), 2017 WL 2782036 (S.D.N.Y. June 14, 2017) ............................ 18

*Pittman ex rel. Pittman v. Grayson*,
  149 F.3d 111 (2d Cir. 1998) ............................................................ 24

*Pratt v. Ocean Medical Care, P.C.*,
  653 N.Y.S.2d 608 (2nd Dep't 1997)............................................................ 12, 13

*Press v. Chem. Inv. Servs. Corp.*,
  166 F.3d 529 (2d Cir. 1999) ............................................................ 21

*Rich v. Fox News Network, LLC*,
  939 F.3d 112 (2d Cir. 2019) ............................................................ passim

*Salmon v. Blesser*,
  802 F.3d 249 (2d Cir. 2015) ............................................................ 14, 15

*Scheetz v. The Morning Call, Inc.*,
  747 F. Supp. 1515 (E.D. Pa. 1990)............................................................ 22

*Schmidt v. McKay*,
  555 F.2d 30 (2d Cir. 1977) ............................................................ 11

*Singh v. NYCTL 2009-A Trust*,
  No. 14 Civ. 2558, 2016 WL 3962009 (S.D.N.Y. July 10, 2016) ............................ 23

*Snyder v. Puente De Brooklyn Realty Corp.*,
  746 N.Y.S.2d 517 (3rd Dep't 2002) ............................................................ 19, 21

*Taylor v. Point at Saranac Lake, Inc.*,
  23 N.Y.S.3d 682 (3rd Dep't 2016) ............................................................ 8

*Taylor v. United Parcel Serv., Inc.*
  899 N.Y.S.2d 223 (1st Dep't 2010)............................................................ 10

*Turley v. ISG Lackawanna, Inc.*,
  774 F.3d 140 (2d Cir. 2014) ............................................................ 14, 15

*U.S. Small Business Admin. v. Feinsod*,
  347 F. Supp. 3d 147 (E.D.N.Y. 2018)............................................................ 20

*United States ex rel. Rubar v. Hayner Hoyt Corp.*,
  306 F. Supp. 3d 478 (N.D.N.Y. 2018)............................................................ 15

*United States v. Feola*,
  420 U.S. 671 (1975)............................................................ 21

*United States v. Green*,
  523 F.2d 229 (2d Cir. 1975) ............................................................ 22

iv

*United States v. Thomas,*
  887 F.2d 1341 (9th Cir. 1989) ................................................................................. 21

*Vione v. Tewell,*
  820 N.Y.S.2d 682 (Sup. Ct. 2006) ........................................................................ 10

*Young Bai Choi v. D & D Novelties, Inc.,*
  550 N.Y.S.2d 376 (2nd Dep't 1990) ...................................................................... 14

**Statutes**

18 U.S.C. § 371 .................................................................................................................. 21

18 U.S.C. § 1962(d) ........................................................................................................... 23

N.Y. GEN. CONSTR. LAW § 37-a ...................................................................................... 12

**Other Authorities**

20 N.Y. JUR. 2D CONSPIRACY, § 4.................................................................................... 22

## INTRODUCTION

Defendants' second motion to dismiss ignores, cherry picks, and misconstrues Joel and Mary's allegations, improperly draws inferences in Defendants' favor, and ignores the Second Circuit's ruling in *Rich v. Fox News Network, LLC*, 939 F.3d 112 (2d Cir. 2019) ("2d Cir. Op.").

Joel and Mary allege defendants Fox News Network, LLC ("Fox"), its reporter and undisputed agent Malia Zimmerman (collectively, the "Fox Defendants"), and Ed Butowsky engaged in a "campaign of emotional torture," 2d Cir. Op. at 123, to trick Joel and Mary into unwittingly assisting in "tak[ing] the conspiracy theory [about their murdered son Seth] from the fringe to the front pages," ¶ 24.[1] The Second Circuit had "no difficulty concluding that the complaint plausibly alleges" tortious conduct that, if proven, would render Fox, Zimmerman, and Butowsky liable and "states sufficiently plausible claims against Fox News as an entity to survive a motion to dismiss and warrant discovery into any additional involvement of Fox News in the alleged scheme." 2d Cir. Op. at 125, 122 n.5.

The Second Circuit invited "[a] simple amendment" to "clarify" whether Plaintiffs plead vicarious liability, negligent supervision, or both. *Id.* at 130. On remand, Plaintiffs amended to clarify their pursuit of both claims. The Fox Defendants now attack each cause of action anew, despite the Second Circuit's explicit acknowledgment that Plaintiffs may "alleg[e] both, leaving it up to the jury to decide the scope of employment question" because "either theory of liability . . . appears to be one that the complaint, if amended, ***could readily allege***." *Id.* (emphasis added).

For negligent supervision, Joel and Mary allege Fox knew or should have known both of Zimmerman's propensity to report in a reckless or irresponsible way, ¶¶ 28, 193–200, and

---

[1] Citations to "¶ __" are to the allegations in the Amended Complaint (Dkt. No. 99). Citations to "Fox Mem." are to the Memorandum in Support of Fox and Zimmerman's Motion to Dismiss for Failure to State a Claim (Dkt. No. 103). Exhibits referenced are attached to the Declaration of Eli J. Kay-Oliphant, filed herewith.

1

Wheeler's propensity to propagate falsities on the air, ¶¶ 33, 201–04, the very underlying conduct alleged here. The Fox Defendants also ignore Joel and Mary's allegations that Fox knew or should have known what Zimmerman and Wheeler were doing for many months—*during and throughout their several tortious acts*. ¶¶ 147, 168, 200, 204.

Defendants' efforts to dismiss the Riches' vicarious liability, conspiracy, and aiding and abetting claims are also baseless. The Amended Complaint's allegations more than suffice.

The Second Circuit held that "vicarious liability . . . appears to be one that the complaint, if amended [to add 'that Zimmerman (and Wheeler) were acting within the scope of their employment'], could readily allege." 2d Cir. Op. at 130. Joel and Mary's Amended Complaint alleges exactly that, ¶ 179, and much more regarding Fox's employment and control of Wheeler. *See* ¶¶ 40, 44, 59, 77, 85, 136(D), 138–140, 142, 144, 184–87.

The Fox Defendants' attempt to dismiss the conspiracy claim fails. Their assertion that the conspiracy claim is "redundant" makes no sense, as the Amended Complaint plainly alleges two separate counts: one for the underlying tort of intentional infliction of emotional distress (¶¶ 135–144), and one for conspiracy to commit that tort, alleging the requisite agreements between and acts of the parties to commit the tort (¶¶ 167–171). As to the "the required mental state" for conspiracy, the Amended Complaint alleges "Defendants *each* intended to cause, or at the very least disregarded the high probability their acts would cause, severe emotional distress to Joel and Mary." ¶ 137 (emphasis added); *see also* ¶ 158 (conspiracy). This is legally and factually sufficient standing alone, not to mention in combination with the Amended Complaint's other allegations. *See*, *e.g.*, 2d Cir. Op. at 122 ("the Riches allege that Appellees knew of their susceptibility to emotional distress, and . . . chose to proceed with their plan in spite of that knowledge").

The Fox Defendants' assertion that Fox did not aid and abet the other Defendants and Wheeler simply ignores Joel and Mary's allegations. *See*, *e.g.*, ¶ 146 (Fox provided Butowsky "the means, platform, and network through which to develop a sham story . . ."); ¶ 148 (Fox "provid[ed] resources and direction to Zimmerman to develop a sham story," and "provid[ed] direction to Wheeler as he assisted Butowsky and Zimmerman . . . ."); *see also* ¶¶ 68, 85, 92, 101, 104, 108, 136, 138. As one commentator concluded, Fox "is responsible for the beginning, middle, and end of this entire cruelly exploitative debacle." ¶ 118. The Court should not allow Fox to distance itself from the other Defendants' tortious conduct—particularly after the Second Circuit instructed that Joel and Mary alleged enough to discover the full scope of Fox's role.

Evidence in Fox's possession will be relevant to the issues raised in the instant motion—from Fox's vicarious liability for Wheeler's conduct to Fox's significant role and aid and assistance to the other Defendants. The Fox Defendants make clear their real objective is to limit the scope of discovery to avoid Fox having to produce damning documents showing its misconduct and top-to-bottom involvement in the tortious conduct. That is not a proper basis on which to grant the motion, and the fact-intensive arguments the Fox Defendants make are inappropriate at the pleading stage. Because these quintessentially fact-based claims inevitably require evidence in *Defendants' exclusive possession*, the law permits discovery. *See* 2d Cir. Op. at 122 n.5 (holding that Joel and Mary may conduct "discovery into any additional involvement of Fox News in the alleged scheme").

## BACKGROUND

The Amended Complaint's allegations are taken as true and all inferences drawn in the Riches' favor. 2d Cir. Op. at 128. The Fox Defendants impliedly assume otherwise, and largely ignore Joel and Mary's allegations. Below follow some of the key additional facts.[2]

Just months after Joel and Mary Rich buried their son, Fox, Zimmerman, and Butowsky saw the Riches' "personal tragedy as an opportunity," and "sought to take the conspiracy theory from the fringe to the front pages and screens of the main-stream media." ¶ 24. To "publish a knowingly false article accusing Seth of leaking the DNC emails, Butowsky and Zimmerman needed . . . . to fabricate" "a reliable source." 2d Cir. Op. at 123. So Defendants "induced Joel and Mary . . . to hire Rod Wheeler, a purportedly independent investigator" who was really a Fox contributor. ¶ 3. Butowsky instructed Wheeler to hide his Fox affiliation and Defendants' scheme from the Riches. ¶ 42. With the knowledge and encouragement of Defendants, Wheeler signed a contract with the Riches that contained a confidentiality agreement that Defendants intended to, and did, induce Wheeler to violate repeatedly, ¶¶ 51, 54–56, 136.

The Defendants "worked with Wheeler to pursue and develop a fiction that Seth had leaked thousands of DNC emails to WikiLeaks," ¶ 3, and "intentionally made it appear that Joel and Mary were involved in and confirmed the substance of this smear campaign," ¶ 4. The Defendants needed Wheeler to plausibly corroborate the sham story, so they worked closely together to develop the tale and provided Wheeler with Fox's resources to do so. ¶¶ 39, 59, 68, 85, 136. "Butowsky and Zimmerman told Wheeler that an anonymous FBI investigator had seen emails between Seth and WikiLeaks. Wheeler then regurgitated that unsubstantiated information back to

---

[2] The Amended Complaint includes additional allegations and context, as does the Background section from Plaintiffs' Consolidated Opposition to Defendants' Original Motions to Dismiss (Dkt. No. 56) at 4–9.

Zimmerman, giving her a named source (himself) for her Fox News article." 2d Cir. Op. at 123. Zimmerman and Butowsky knew they had no FBI source and that Wheeler could not corroborate one. *See* Exhibit 1 (February 28, 2018, Transcript, *Wheeler v. Twenty-First Century Fox, Inc., et al.*, No. 17-cv-5807 (S.D.N.Y.) (GBD)) at 75:16–18 (Wheeler's former counsel confirming in open court that "[t]he source that's at issue here, as Butowsky and Zimmerman at Fox knew and know, is a source that -- is Butowsky"); *see also* Dkt. 57-4.[3]

Zimmerman and Butowsky directed Wheeler and orchestrated his role in the scheme, and Zimmerman told Wheeler her "bosses" at Fox made key decisions. ¶¶ 74, 92. They all acted with the approval and at the direction of Fox higher-ups. *See, e.g.,* ¶ 59.[4] Just weeks after Defendants tricked the Riches into engaging Wheeler, Butowsky organized a call with Wheeler, Zimmerman, and another Fox employee, Adam Housley, because "[w]e are on the 1 yard line and we need to take it over the goal line and in order to do that we all need to be on a video conference . . . ." *See* Exhibit 5 (March 29, 2017 Email from Butowsky to Wheeler, Zimmerman, and Housley).

Zimmerman and Butowsky together wrote, and Fox published worldwide, the baseless, harmful Fox Article citing "Rod Wheeler, a . . . **Fox News contributor** . . . whose private investigation firm **was hired by Rich's family** to probe the case," as its sole named source for the proposition that Seth Rich (rather than Russia) was responsible for the DNC email hack. ¶ 88.

---

[3] Joel and Mary have now learned that ████████████████████████████████████
████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████

[4] The modest discovery to date already reveals that Fox employee Adam Housley was also intimately involved in the scheme. *See e.g.,* ████████████████████████████████████
████████████████████████████████████████████████████████████████████████

Defendants made the grieving Rich family a mouthpiece for their own deceased son's guilt, ¶ 136, "thus lending credibility to his [Wheeler's] statements." 2d Cir. Op. at 123.

One day after publication, Wheeler admitted his so-called "information" was merely a regurgitation of what Butowsky and Zimmerman had told him, ¶ 93, and the FBI made clear it had neither investigated Seth Rich's homicide nor received Seth's laptop, ¶ 97. The Riches asked that Fox retract the story because "untruthful rumors . . . continue to haunt our family . . . caus[ing] us great pain," ¶ 98; Zimmerman forwarded the Riches' plea to her editors, ¶ 99.

Far from "[a]cceding to the family's request" as Fox asserts to this Court, Fox Mem. at 4, Fox duplicitously wrote an email for Zimmerman to send to Joel Rich stating that "much of our information came from a private investigator, Rod Wheeler, who we understand was working on behalf of the Rich family." ¶¶ 99–100. Rather than retract, Fox *amplified* and repeated the harmful fiction. Fox's Sean Hannity repeatedly asserted on Fox television that Seth passed on DNC emails to WikiLeaks. ¶ 104. Other Fox employees and agents similarly continued to pump the false narrative connecting Seth to WikiLeaks. *Id.* Even after Fox retracted the written article, Defendants' harmful acts continued,[5] as Fox and Butowsky continued to propagate the fiction, using Wheeler as a mouthpiece associated with the Riches. ¶ 108. Contrary to Fox's misleading assertion to this Court that it "removed the article from its website," Fox. Mem. at 4, Fox actually "left the content up on its website for over two years" and removed it, as the Second Circuit confirmed, only after that Court's September 2019 opinion. ¶ 108; *see also* 2d Cir. Op. at 120 (citing video of Wheeler appearing on Fox, referencing his role as the Riches' own investigator, and restating the harmful, made-up story).

---

[5] Joel and Mary recently learned yet another example of how Butowsky's outrageous conduct continued, *see* ¶¶ 111–17, as he and Zimmerman met with others in September 2017 in Texas, and discussed targeting the Riches, *including by setting up surveillance of them at their Nebraska home.* Exhibit 6 (Schoenburger Deposition in *Rich v. Butowsky, et al.*, 18-cv-681-RJL (D.D.C.)) at 123:21–124:12, 85:10–16, 111:1–112:2.

**ARGUMENT**

To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility "is not akin to a 'probability requirement[.]'" *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). A motion to dismiss should be denied where resolution of the contested issue "would be premature, in light of the parties' inability to explore . . . factual connections . . . in the absence of discovery." *David v. Am. Home Assur. Co.*, No. 95 Civ. 10290 (LAP), 1997 WL 160367, at *3 (S.D.N.Y. Apr. 3, 1997).

I.  **THE AMENDED COMPLAINT PROPERLY ALLEGES FOX NEGLIGENTLY SUPERVISED ZIMMERMAN AND WHEELER.**

This Court dismissed the negligent supervision claim against Fox because it held that Joel and Mary did not allege "specific facts plausibly showing that Fox News knew or had reason to know of Zimmerman and Wheeler's alleged 'propensity' to commit an IIED" or "facts showing that Zimmerman and Wheeler committed tortious conduct on, or using, Fox News property." 2d Cir. Op. at 121 (citations omitted). The Second Circuit vacated and remanded because Joel and Mary's allegations were "capable of supporting claims of negligent supervision," *id.* at 117; the Second Circuit advised Plaintiffs to make "[a] simple amendment [that] would clarify" *one point*: whether Plaintiffs alleged vicarious liability, negligent supervision, or both. *Id.* at 130.

The Second Circuit expressly told Plaintiffs what to add: "whether the complaint alleges liability on the part of Fox News for conduct by Zimmerman (and Wheeler) that was *within* or *outside* the scope of their employment." *Id.* at 129–130 (emphasis in original). Plaintiffs did exactly that, adding allegations that Fox is vicariously liable for Zimmerman's and Wheeler's acts

7

done within the scope of their employment, ¶ 178, and for negligent supervision for the torts committed on Defendants' property or using their chattels, where Fox News knew or should have known of Zimmerman and Wheeler's propensity for such conduct, ¶¶ 200, 204–10.

### A.  Joel and Mary Properly Allege Fox Knew or Should Have Known of Wheeler's and Zimmerman's Tortious Propensities.

Joel and Mary allege Fox knew or should have known that Zimmerman and Wheeler previously manufactured and egregiously misrepresented facts in prior news stories—the very same kind of conduct that caused the Riches' injuries here. ¶¶ 28, 33, 208–09. These allegations as to Zimmerman's and Wheeler's propensity suffice. *See Anna O. v. State*, No. 114085, 2011 WL 6957587, at *7 (N.Y. Ct. Cl. Oct. 19, 2011).

As for Zimmerman, the Fox Defendants assert that specific allegations concerning her previous "knowingly report[ing] inaccurate . . . and unsubstantiated stories," her termination for "ignor[ing] journalistic ethics," and the industry complaint filed against her with the Honolulu Community-Media Council (a volunteer organization that mediates news coverage disputes), ¶¶ 193–200, do not sufficiently allege propensity for her tortious acts here.[6] But purposefully and falsely reporting fiction as fact, and quoting anonymous officials in support, is conduct *exactly* "of the same kind that caused the injury" at issue here. *See Doe v. Alsaud*, 12 F. Supp. 3d 674, 681 (S.D.N.Y. 2014). An employer need not have notice of its employee's propensity "to behave in

---

[6] The Fox Defendants assert there is no allegation that Fox knew about the media complaint filed against Zimmerman for reporting false facts. In fact, Joel and Mary do so allege. ¶¶ 200, 208. And while the Fox Defendants assert that some of Zimmerman's and Wheeler's conduct happened too far in the past to put Fox on notice, Joel and Mary have directly alleged that Fox knew or should have known of their actions. ¶¶ 200, 204, 208–09. At best, Fox raises factual issues; both cases the Fox Defendants cite for the proposition that the prior conduct provided insufficient notice of propensity for tortious conduct were decided *at summary judgment. See* Fox Mem. at 12–13 (citing *Taylor v. Point at Saranac Lake, Inc.*, 23 N.Y.S.3d 682, 684 (3rd Dep't 2016); *Ford v. Gildin*, 613 N.Y.S.2d 139, 142 (1st Dep't 1994)). Finally, soon after Fox published Zimmerman's articles, public analysis of Zimmerman's professional history demonstrated that Joel and Mary's allegations of Zimmerman's propensity for precisely the brand of misconduct alleged in this case are well-founded. *See* Alex Shephard, *Meet the Reporter Driving Fox News's Biggest, Craziest Stories*, THE NEW REPUBLIC (Aug. 4, 2017), *available at* https://newrepublic.com/amp/article/144200/meet-reporter-driving-fox-newss-biggest-craziest-stories.

the exact manner in which he behaved" in order for liability to attach; rather the employer must have "notice of [the employee's] propensity for that 'sort of behavior.'" *Anna O.*, 2011 WL 6957587, at \*7 (citation omitted). And even if Zimmerman was unfairly fired due to an "unsubstantiated" report, Fox was on notice. *See Patterson v. State*, No. 121681, 2014 WL 4548437, at \*10–11 (N.Y. Ct. Cl. Aug. 29, 2014); *Morris v. State*, No. 100694-A, 2012 WL 966945, at \*5 (N.Y. Ct. Cl. Mar. 6, 2012) (collecting cases).

As for Wheeler, Joel and Mary allege he previously admitted to concocting falsehoods and stating them on air during a news report as facts. ¶¶ 201–04. Though the Fox Defendants assert this is insufficiently similar conduct, the Amended Complaint alleges Fox, Zimmerman, and Butowsky "needed a reliable source" to say something false, they "had to fabricate that source," and so they had Wheeler "regurgitate[] . . . unsubstantiated information back to Zimmerman" whose articles "emphasized Wheeler's connection to the Riches – thus lending credibility to his statements." 2d Cir. Op. at 123.

The authority the Fox Defendants invoke is inapposite. In *Green v. City of Mount Vernon*, 96 F. Supp. 3d 263, 297 (S.D.N.Y. 2015), the plaintiff alleged only a purely "conclusory assertion" that the employer was "guilty of negligently supervising their employees." In *Alsaud*, the plaintiff failed to allege "a single prior act or allegation of sexual misconduct . . . or . . . a fact suggesting that [the employer] knew or should have known of any such prior acts." 12 F. Supp. 3d at 680.[7] Unlike Joel and Mary's allegations about Zimmerman and Wheeler's prior acts, the Fox

---

[7] *Alsaud*'s language suggesting that "lesser allegations" are insufficient to put an employer on notice flies in the face of substantial contrary precedent. *See*, *e.g.*, *Bliss v. Putnam Valley Cent. Sch. Dist.*, No. 06-cv-15509 (WWE), 2011 WL 1079944, at \*10 (S.D.N.Y. Mar. 24, 2011) (denying summary judgment on negligent supervision where teacher had held a student in a way that made her uncomfortable prior to allegedly raping another student); *Hwang v. Grace Rd. Church (in New York)*, No. 14-CV-7187, 2016 WL 1060247, at \*1–2 (E.D.N.Y. Mar. 14, 2016) (forcibly preventing taking medications put employer on notice before plaintiff was forcibly restrained for two days); *Anna O.*, 2011 WL 6957587, at \*7 (prior acts need not be exactly the same, but must be the same "sort of behavior").

Defendants' other cases involve earlier conduct substantially different in kind, if not also in degree. In *Nouel v. 325 Wadsworth Realty LLC*, 977 N.Y.S.2d 217, 218 (1st Dep't 2013), the allegations of setting up a playroom in a basement and termination based on reckless driving were found insufficient to put the employer on notice of propensity for sexual assault. And, in *Taylor v. United Parcel Serv., Inc.*, "rudeness and inappropriate flirtation" was found insufficient to portend sexual assault. 899 N.Y.S.2d 223, 224 (1st Dep't 2010). These cases do not suggest that Joel and Mary's specific allegations—of Zimmerman's and Wheeler's prior propensity to misrepresent and misreport facts much like they did here—are insufficient.

Joel and Mary also allege that Fox knew what Zimmerman and Wheeler were doing *all along and throughout their several month scheme* at issue in this case. ¶¶ 59, 74, 92. Fox's Zimmerman (acting on behalf of Fox) and Adam Housley (another Fox employee) were kept up to date about the plan to recruit Wheeler, ██████████████████████████████████
████████████████████ *See supra* footnote 4. Fox's Zimmerman met with Butowsky and Wheeler on February 28, 2017, when they conspired and agreed to embed Wheeler as Joel and Mary's investigator. And, Fox, through Zimmerman and Housley at a minimum, knew about Wheeler's actions, because both Zimmerman and Housley were intimately involved. *See* ¶¶ 74, 85, 92, 101. These allegations of *ongoing tortious conduct* suffice to put Fox on notice even under Fox's unreasonable (and contrary to law) standard regarding identical prior conduct. *See, e.g.*, *Gray v. Schenectady City Sch. Dist.*, 927 N.Y.S.2d 442, 446 (3rd Dep't 2011) ("after defendant was informed of Raucci's conduct targeting plaintiffs, defendant failed to investigate or discipline"); *Vione v. Tewell*, 820 N.Y.S.2d 682, 687 (Sup. Ct. 2006) (employer allowed tortious acts to continue after notice they were ongoing); *Hwang*, 2016 WL 1060247, at *15, *1–2 (plaintiff

adequately pleaded defendants knew about members' propensities for tortious conduct from ongoing events spanning less than three weeks).

In any event, whether Fox "knew" or "should have known" is fact-intensive and concerns evidence within Fox's sole possession. It would, therefore, be inappropriate to dismiss Joel and Mary's claim short of discovery. *Cf. New York Dist. Council of Carpenters Pension Fund v. Forde*, 939 F. Supp. 2d 268, 286 (S.D.N.Y. 2013) (question of constructive knowledge so "fact-intensive, the Court of Appeals has held that it may be inappropriate to dispose of an action for this reason even on summary judgment") (citing *Schmidt v. McKay*, 555 F.2d 30, 37 (2d Cir. 1977)); *see also Childers v. New York & Presbyterian Hosp.*, 36 F. Supp. 3d 292, 308 (S.D.N.Y. 2014) (if "defendants are in control and possession of the facts which are decisive of [the] question," "discovery should be permitted" before dismissing the claim).

### B.   Joel and Mary Properly Allege that Wheeler Engaged in Tortious Acts on Fox's Premises or Using Fox's Chattels.

The Fox Defendants resurrect the argument that Joel and Mary failed to allege Wheeler engaged in tortious acts on Fox's premises or using Fox's chattels. They are simply wrong.

Joel and Mary properly allege Zimmerman committed tortious acts on Fox property and using Fox chattels. ¶ 206. Wheeler is also alleged to have acted tortiously on Fox premises and in a way that involved Fox's property, ¶¶ 68, 169, 205. *See D'Amico v. Christie*, 71 N.Y.2d 76, 88 (1987) (tortious acts must occur on "the employer's premises" or must "involve the employer's property"). For example, Zimmerman provided Wheeler with Fox research concerning the DC Metropolitan Police Detective investigating Seth's murder before Wheeler met with him in April

11

2017. ¶ 68.[8] Joel and Mary also allege that Wheeler tortiously connected Seth's murder to WikiLeaks on Fox television programs prepared at, paid for by, and telecast using Fox property. ¶ 169 (Wheeler "appear[ed] multiple times as a paid Fox News commentator and state[d] that the sham story in the [Fox Articles] was true"). Fox's website, another Fox property, broadcast Wheeler's statements at the time and continued to do so for over two years. *See* 2d Cir. Op. at 120. Joel and Mary allege more than enough to state their claim.

### C.   Joel and Mary Properly Allege Damages for Negligent Supervision.

Despite the Second Circuit's refusal to find Plaintiffs' damages allegations insufficient, the Fox Defendants now assert that a plaintiff must allege physical injury to adequately plead negligent supervision. That is wrong as a matter of law. Even if the Fox Defendants were correct, Joel and Mary allege physical harm.

New York law does not require physical injury to plead negligent supervision. *See*, *e.g.*, *Pratt v. Ocean Medical Care, P.C.*, 653 N.Y.S.2d 608 (2nd Dep't 1997) (sustaining claim in a case "where the principal claim is based on emotional rather than physical injuries").[9] The cases upon which the Fox Defendants rely do not say otherwise. *Brown v. Bronx Cross County Med. Grp.*, an employment case about purely verbal harassment, provides that to state a claim a plaintiff must show "assault *or professional incompetence* on the part of the negligently hired and retained employee *resulting in personal injury* to the plaintiff." 834 F. Supp. 105, 110 (S.D.N.Y. 1993) (emphasis added). The "personal injury," here, is a defined term under New York law that includes

---

[8] Wheeler also recently confirmed under oath that ███████████████████████████████████████████████████████████████████████████ *See* Exhibit 2 at 77:2-13.

[9] The Fox Defendants urge this Court to follow the law of other states, which require physical impact for any negligence claim. *See* Fox Mem. at 14 n.5 (citing, *inter alia*, *Bruchas v. Preventive Care, Inc.*, 553 N.W.2d 440, 443 (Minn. Ct. App. 1996) ("some form of physical injury is required to recover under a claim of negligent supervision")). None of the cases the Fox Defendants cite are persuasive because all are based on an inapplicable legal principle, the "impact rule." *See Battalla v. State*, 10 N.Y.2d 237, 239–40 (N.Y. 1961) (abandoning the "impact rule" in New York).

*non-physical injuries*. *See* N.Y. GEN. CONSTR. LAW § 37-a ("includes libel, slander and malicious prosecution; also an assault, battery, false imprisonment, or other actionable injury to the person"). The Amended Complaint thus properly alleges professional incompetence by Fox employees, causing personal, including both physical and non-physical, injuries.

*Kaupp v. Church*, No. 10 Civ. 7559 (JFK), 2011 WL 4357492, at *3 (S.D.N.Y. Sept. 19, 2011), likewise does not impose a physical injury pleading requirement. *Kaupp* relied upon the language from *Brown* regarding the requirement of either assault *or* personal injury. *Id.* (citing *Brown*, 834 F. Supp. at 105). *Kaupp* and *Ahluwalia v. St. George's Univ., LLC*, the other case the Fox Defendants cite for the purported physical-injury requirement, both note that "in almost every case" the plaintiff has alleged physical injury. *Kaupp*, 2011 WL 4357492, at *3; *Ahluwalia v. St. George's Univ., LLC*, 63 F. Supp. 3d 251, 264 (E.D.N.Y. 2014), *aff'd sub nom.*, 626 F. App'x 297 (2d Cir. 2015). But "almost every case" does not mean that every plaintiff has alleged or must allege physical injury. *See Pratt*, 653 N.Y.S2d at 608 (noting that a derivative claim for loss of consortium related to a negligent hiring cause of action can be "based on emotional rather than physical injuries"). There is no such pleading requirement.

In any event, Joel and Mary directly allege that Defendants' acts devastated Joel and Mary's physical as well as mental health, ¶ 133–34, and they seek damages for it. *See* Amended Complaint, Prayer for Relief (requesting relief for "any other physical . . . injuries"). Even if there is such a pleading requirement, and there is not, Joel and Mary have met it.

## II.   THE AMENDED COMPLAINT PROPERLY ALLEGES FOX IS VICARIOUSLY LIABLE FOR WHEELER'S TORTIOUS ACTS.

The Second Circuit already held that "[t]he Riches adequately allege that an employment relationship existed between Fox News . . . and Wheeler[.]" 2d Cir. Op. at 130. That is because Joel and Mary allege that Fox controlled and directed Wheeler in the scope of his employment as

a Fox contributor. *See*, *e.g.*, ¶¶ 40, 44, 136(D), 138, 144; *see also* ¶ 142 ("Fox News is vicariously liable for the conduct of its employee[] and/or agent[] . . . Wheeler because Fox authorized, directed, participated in, consented to, and/or ratified the conduct . . . .").[10]

### A.  Fox Is Vicariously Liable for Wheeler's Tortious Acts Even if Joel and Mary Could Have Sued Wheeler for Breach of Contract.

The Fox Defendants argue that Fox may as a matter of law avoid vicarious liability for Wheeler's tortious acts because Joel and Mary could have chosen to sue Wheeler for breach of contract. But the Fox Defendants' assertion that intentional infliction of emotional distress is available only where a plaintiff has no other remedy for the conduct at issue is not the law; indeed, there is no authority for the proposition. Their position also contradicts the Second Circuit's opinions here *and* in *Turley v. ISG Lackawanna, Inc.*, 774 F.3d 140, 160 (2d Cir. 2014).

In this very case, the Second Circuit observed that intentional infliction of emotional distress "is a tort that, by its terms, may ***overlap other areas of the law***," 2d Cir. Op. at 122 (emphasis added; quoting *Howell v. N.Y. Post Co., Inc.*, 612 N.E.2d 699, 702 (N.Y. 1993)). The tort "may be invoked . . . to provide relief in those circumstances where traditional theories of recovery do not." *Id.* (quoting *Salmon v. Blesser*, 802 F.3d 249, 256 (2d Cir. 2015)). Here, a theoretical breach-of-contract claim would not permit recovery of emotional distress and punitive damages. Such relief is, and should be, available against Fox both directly for its own actions and via vicarious liability for Wheeler's acts.

*Turley v. ISG Lackawanna, Inc.*, 774 F.3d 140, 160 (2d Cir. 2014), does not suggest otherwise. There, the Second Circuit observed that some New York courts have relied on *dictum*

---

[10] Still more facts about the relationship between Fox and its agents will be ascertained in discovery, as they are "peculiarly within the possession and control of the defendant." *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010). Whether specific conduct alleged "was within the scope of the servant's employment is so heavily dependent on factual considerations" that the question is "ordinarily one for the jury." *Young Bai Choi v. D & D Novelties, Inc.*, 550 N.Y.S.2d 376 (2nd Dep't 1990).

from *Fischer v. Maloney*, 43 N.Y.2d 553 (N.Y. 1978), to bar intentional infliction of emotional distress claims against a defendant when other potential *tort* claims could be brought *against the same defendant*. Cf. *Salmon*, 802 F.3d at 256 (dismissing because other *tort* claims were available against the same named defendant). No court has excluded intentional infliction of emotional distress tort claims, much less vicarious liability for the acts of third-party agents and employees, based on a potential *contract* claim against a *non-defendant third party*.

While *Turley* cited cases holding that intentional infliction of emotional distress was unavailable because other pleaded causes of action allowed for similar damages against the same defendant, it declined to decide (because defendant did not argue below) that a plaintiff was barred from maintaining a common-law "gap-filler" claim for intentional infliction of emotional distress alongside a statutory workplace discrimination claim arising out of the same conduct and alleging the same injury against the same defendant. 774 F.3d at 160. Because the *Turley* court concluded that an intentional infliction of emotional distress claim and the pleaded statutory claim, both against the same defendant, *could* coexist, *see id.*, it actually rejects Fox's position, here.

In *United States ex rel. Rubar v. Hayner Hoyt Corp.*, 306 F. Supp. 3d 478 (N.D.N.Y. 2018), the court upheld an intentional infliction of emotional distress claim alongside other tort claims. The *Rubar* intentional infliction claim, much like Plaintiffs' here, was based on accumulated actions that overlapped with, but were not entirely captured by, other tort claims. The court preserved the intentional infliction claim because it "does not fit squarely within his other claims, which do not take into account the full sequence of extreme and outrageous conduct or its byproducts." *Id.* at 485.

A claim for contract damages against Wheeler would not be coextensive with a tort claim for his tortious acts. Wheeler assuredly violated the contract's confidentiality provision. But, his

tortious acts, like those of Fox, Zimmerman, and Butowsky, involve much more than merely disclosing confidential information and includes the entirety of the Defendant's scheme to manipulate Joel and Mary. For example, Joel and Mary allege Wheeler furthered the scheme by misleading them about his relationship with Fox and Zimmerman.

Joel and Mary's vicarious liability claim is not an "end run" around a potential contract claim. Breach of contract and intentional infliction of emotional distress claims are different actions, with different elements, calling for different damages and remedies. Fox may be vicariously liable for Wheeler's tortious acts, including some that that might also have constituted contract breaches, and the law is and should not be otherwise.

**B.    The Amended Complaint Properly Pleads Fox's Control Over Wheeler.**

Joel and Mary allege Fox controlled and directed Wheeler's actions. *See supra* II; *see also*, *e.g.*, ¶¶ 40, 44, 136(D), 138, 142, 144. For example, Zimmerman threatened Wheeler that "[t]his could be really bad if the Fox News channel thinks you fed an exclusive we invested a lot of time and money into." ¶ 85. This allegation alone demonstrates that Fox exercised control over Wheeler because otherwise there would be nothing "bad" about Fox thinking Wheeler fed the exclusive to another channel. Wheeler also asked Fox's *permission* to provide a related interview to a local affiliate. ¶¶ 76–77.

The Fox Defendants' spin—that some of Joel and Mary's allegations "refute any suggestion" of vicarious liability—improperly asks that inferences be drawn in Fox's favor.[11] The Fox Defendants' position is also contrary to the law as expressly set forth by the Second Circuit in this case: "Under New York law, an employee's tortious acts fall within the scope of his

---

[11] The Fox Defendants make much of Wheeler speaking to the local reporter even after he was told by Fox to refrain. Fox Mem. at 18. But, Wheeler's failure to follow Fox's direction in this one instance and after he sought *permission* from Fox to do so *at best* creates questions of fact regarding the extent of Fox's control.

employment if 'done while the servant was doing his master's work, ***no matter how irregularly, or with what disregard of instructions***.'" 2d Cir. Op. at 130 (emphasis added; citation omitted).

The Fox Defendants argue that Wheeler is an independent contractor whose employment agreement with Fox does not provide a salary and benefits. But Wheeler was a *paid* contributor who, by written contract, agreed to provide on-air *and* "*off-air* assistance, ***as requested by Fox***." ¶ 33 (emphasis added).[12] The terms of Wheeler's contract with Fox entitled him to pay for the very appearance during which he stated false facts and furthered the Defendants' scheme. *See* ¶ 169.

The assertion that Wheeler was not paid for his tortious acts at best raises issues of fact. Even more, it is belied by Fox's own counsel's statements *to this Court*. *See* Exhibit 1 at 5:1–6 ("[Wheeler made] those statements on television for which he was paid . . . . [and] was compensated for appearing on Fox television").

Regardless, Joel and Mary allege Fox directed and controlled Wheeler's conduct, just as his contract contemplated. This allegation plausibly alleges vicarious liability over Wheeler even if he were considered an independent contractor.[13] *See*, *e.g.*, *Kleeman v. Rheingold*, 614 N.E.2d 712, 715 (N.Y. 1993) (independent contractors may be considered agents for the purposes of vicarious liability if the principal provides the requisite control and direction); *see also Leeds v. D.B.D. Servs., Inc.*, 766 N.Y.S.2d 180 (1st Dep't 2003) (denying summary judgment because fact questions remained over defendant's oversight and control of independent contractor's work); *cf. Phillips v. Uber Techs., Inc.*, No. 16 Civ. 295 (DAB), 2017 WL 2782036, at *4 (S.D.N.Y. June

---

[12] In the *Wheeler* litigation, Wheeler's former counsel stated during oral argument that Wheeler had been a Fox contributor for *ten years*. Exhibit 1 at 174:1–2.

[13] Fox itself argued Wheeler acted within the scope of his role as a Fox contributor pursuant to his agreement when Fox sought to arbitrate its disputes with him. *See* Exhibit 1 at 5:13–16 ("[Fox] did not go to [Wheeler] and say we'd like to employ you to do this investigation for us. But they did identify him in the article as a Fox News contributor."); *id.* at 6:11–15.

14, 2017) (employee versus independent contractor determination "is fact intensive, and is premature at the Motion to Dismiss, pre-answer stage"). The Second Circuit *already held* the Riches adequately allege an employment relationship over Wheeler. 2d Cir. Op. at 130. Fox cannot avoid discovery regarding "any additional involvement of Fox News in the alleged scheme," *id.* at 122 n.5, including its relationship with Wheeler.

## III.   THE AMENDED COMPLAINT PROPERLY ALLEGES A VIABLE CONSPIRACY CLAIM.

The Amended Complaint alleges that Fox, Zimmerman, Butowsky, and Wheeler agreed to deceive Joel and Mary, to acquire and use confidential information they improperly elicited, to develop the sham story, and to publish the Fox Articles that implicated Joel and Mary. ¶¶ 42, 136(B), 138, 158, 162, 164. Each Defendant did so with complete "disregard [for,] the high probability that their acts would cause, severe emotional distress to Joel and Mary." ¶ 158. Joel and Mary allege that each Defendant committed overt acts in furtherance of the scheme, many of which were independently tortious. *See*, *e.g.*, ¶¶ 42, 44, 136, 165, 167.

The Fox Defendants do not claim that Joel and Mary have failed to plead any *element* of conspiracy. The positions they do assert are meritless.

### A.   Joel and Mary's Conspiracy Claim Is Not Redundant.

The Second Circuit already held that Joel and Mary properly stated a claim for the underlying tort (intentional infliction) on which the conspiracy claim is premised. 2d Cir. Op. at 117. Under New York law, "a plaintiff may plead the existence of a conspiracy in order to connect the actions of the individual defendants with an actionable, underlying tort and establish that those actions were part of a common scheme." *Litras v. Litras*, 681 N.Y.S.2d 545, 546 (2nd Dep't 1998); *see also id.* (holding defendants jointly and severally liable where each "committed one of the underlying torts . . . and that all of the defendants conspired to commit such tortious acts as part of a scheme to destroy the plaintiffs' business").

18

Courts have recognized that a civil conspiracy claim can serve as a backstop in case a plaintiff is unable to establish every element of the underlying tort as to each tortfeasor: "Essentially the claim is pled as a failsafe to ensure that [each defendant is] accountable to plaintiffs for the torts alleged . . . either as the primary tortfeasor or as a conspirator to the underlying tort." *Nadelson v. Zakharchenko*, No. 501571/2012, 2014 WL 4926334, at *5 (N.Y. Sup. Ct., Oct. 2, 2014). It is hornbook law that a conspiracy plaintiff need not plead every element against every defendant. *Snyder v. Puente De Brooklyn Realty Corp.*, 746 N.Y.S.2d 517, 521 (3rd Dep't 2002).

Joel and Mary's count three for conspiracy is distinct from count one, which alleges intentional infliction of emotional distress committed by each Defendant. The conspiracy count adds separate allegations regarding the overall "agree[ment]," ¶ 158, and acts coordinated between Fox, Zimmerman, and Butowsky—together and with non-defendant Wheeler. Each of the Defendants, as alleged in count one, committed acts amounting to intentional infliction of emotional distress. But in the unlikely event that the Court or jury were to find one Defendant's involvement was insufficient to amount to intentional infliction of emotional distress, each Defendant (and Wheeler) still acted to further the common scheme. For example, Butowsky offered to pay Wheeler's fees, in furtherance of the conspirators' scheme and nefarious ends. ¶¶ 42, 58, 163. And Zimmerman sent Wheeler the aforementioned "research" to help prepare him to meet with the police detective investigating Seth's murder; doing so furthered the conspiracy by optimizing Wheeler's ability to acquire and taint information so the Defendants' could use it to advance their scheme. ¶ 68.

The Amended Complaint therefore pleads tortious activities by each individual defendant, *as well as* an agreement to conspire and actions taken in furtherance thereof. The conspiracy cause

of action is not redundant insofar as it adds a different theory of liability. As in *Litras* and *Nadelson*, the conspiracy claim here provides for liability against a given defendant even if they were found to have agreed to and furthered the scheme with acts that did not themselves rise to the level of intentional infliction of emotional distress. *See also Gym Door Repairs, Inc. v. Young Equip. Sales, Inc.*, 206 F. Supp. 3d 869, 915 (S.D.N.Y. 2016) (allowing plaintiff to plead both a tort as well as a conspiracy with others to commit it).

The cases the Fox Defendants cite for the proposition that "redundant" conspiracy claims must be dismissed are inapplicable. In *Aetna Cas. & Sur. Co. v. Aniero Concrete Co.*, 404 F.3d 566, 591 (2d Cir. 2005), the Second Circuit affirmed dismissal of a conspiracy claim where that claim "is already advanced by the allegations of conspiracy set forth elsewhere in its complaint." *Cf. U.S. Small Business Admin. v. Feinsod*, 347 F. Supp. 3d 147, 168 (E.D.N.Y. 2018) (dismissing conspiracy claim because it merely incorporated the "same allegations and the same torts asserted elsewhere" against the same defendants); *Am. Baptist Churches of Metro. N.Y. v. Galloway*, 710 N.Y.S.2d 12, 18 (1st Dep't 2000) (dismissing conspiracy claim because "other claims have already pleaded these torts and defendants' alleged collusion to commit them"). Here, Joel and Mary's conspiracy cause of action contains additional allegations, including the commission by the defendants of non-tortious acts, and provides the permissible "failsafe" against any of the Defendants escaping accountability. *Levin v. Kitsis*, 920 N.Y.S.2d 131, 133–34 (2nd Dept. 2011).

## B.   Joel and Mary Adequately Allege Defendants' *Mens Rea* for Conspiracy.

Conspiracy requires "the parties' intentional participation in furtherance of a plan or purpose." *Ho Myung Moolsan Co. v. Manitou Mineral Water, Inc.*, 665 F. Supp. 2d 239, 256 (S.D.N.Y. 2009). That different defendants may "have had different motivations for joining the conspiracy, [or were] involved in only a portion of it, does not undermine the existence of the

conspiracy itself or [the individual's] role as a participant." *In re Elec. Books Antitrust Litig.*, 859 F. Supp. 2d 671, 690 (S.D.N.Y. 2012).

Joel and Mary allege the requisite intent. *See* ¶ 158. Putting aside that "[w]hether a given intent existed is generally a question of fact, appropriate for resolution by the trier of fact," *Press v. Chem. Inv. Servs. Corp.*, 166 F.3d 529, 538 (2d Cir. 1999) (citation omitted), the Fox Defendants misstate the law. "[P]laintiff need not allege and prove that each defendant committed every element of" the underlying tort to plead conspiracy. *Snyder*, 746 N.Y.S.2d at 521. Plaintiffs must allege facts that "support an inference that defendants ***knowingly agreed to cooperate*** in a fraudulent scheme, or shared a perfidious purpose." *LeFebvre v. New York Life Ins. and Annuity Corp.*, 625 N.Y.S.2d 695, 696 (3rd Dep't 1995) (emphasis added). A plaintiff need not allege "specific intent to commit the underlying tort," but only the "intentional participation in the furtherance of a plan or purpose" *Ho Myung Moolsan*, 665 F. Supp. 2d at 256.

The Fox Defendants confuse the intent *to further the plan* (secondary liability) with the intent *to commit a tort* (primary liability). The United States Supreme Court rejected the Fox Defendants' position in *United States v. Feola* when it held that "a conspiracy to commit [an] offense is nothing more than an agreement to engage in the prohibited conduct," and there is no requirement of "a greater degree of intent for conspiratorial responsibility than for responsibility for the underlying substantive offense." 420 U.S. 671, 687–88 (1975) (applying the general criminal conspiracy statute, 18 U.S.C. § 371). Subsequent cases have upheld conspiracy convictions where the mental state for the object of the conspiracy was the same as the mental state *for the underlying substantive offense*. *See*, *e.g.*, *United States v. Thomas*, 887 F.2d 1341 (9th Cir. 1989) (upholding conspiracy conviction for taking elk with a hunting permit where defendant *should have known* the underlying act was illegal); *United States v. Green*, 523 F.2d 229 (2d Cir.

1975) (upholding conspiracy conviction for theft of goods in interstate commerce where defendants were unaware of interstate character of goods).[14] Accordingly, Joel and Mary need not allege that the Defendants had a new and different "specific" intent to conspire to commit the underlying intentional infliction of emotional distress tort; they need to allege the same *mens rea* required by the underlying tort itself. And they have plainly done so.

The Fox Defendants raise again their failed First Amendment defenses—already characterized as "smokescreens" by the Second Circuit (2d Cir. Op. at 126)—to try to shield themselves from the conspiracy claim. But *Dowd v. Calabrese*, 589 F. Supp. 1206 (D.D.C. 1984), the case on which the Fox Defendants rely, evaluated a conspiracy to *defame*, and its holding has been so limited. *See*, *e.g.*, *Scheetz v. The Morning Call, Inc.*, 747 F. Supp. 1515, 1520 n.6 (E.D. Pa. 1990) (noting that "the *Dowd* court relied in part on the very wide latitude given media defendants in defamation actions" and holding that outside of that context "the strict *Dowd* rule is unduly weighted toward the defendants"). Because Joel and Mary's claim is not for defamation, *Dowd* does not and should not apply.

Moreover, *Dowd* merely stands for the proposition that an allegation of collaboration between a reporter and a source "does not, without more, a conspiracy make . . . there must also be an improper object or purpose." *Dowd*, 589 F. Supp. at 1213. Here, there is no reporter-source relationship, and Joel and Mary properly allege that all four co-conspirators had the improper

---

[14] 20 N.Y. Jur. 2d Conspiracy, § 4 (cited at Fox Mem. at 20) nowhere supports the proposition that plaintiffs must allege "specific intent" to commit intentional infliction of emotional distress—a tort that requires extreme and outrageous conduct and at least reckless intent. Indeed, the next sentence in the authority the Fox Defendants quote concludes that there can be no conspiracy to commit a *negligent* act, but does not similarly prohibit conspiracy claims related to reckless torts. *See id.* That is because New York law does not prohibit claims of conspiracy to commit tortious acts in reckless disregard of the damage such acts will cause, and requires only that the conspirators intend that the scheme succeed and have the same mental state as required for the underlying tort. *Ho Myung Moolsan*, 665 F. Supp. 2d at 256 (intentional participation in furtherance of plan); *see also*, *e.g.*, *Green*, 523 F.2d 229 (conspiracy to perform act without knowledge of element of crime). That the law of Florida or Texas may be different, s*ee* Fox Mem. at 20 n.6, is of no import.

object and purpose of tricking Joel and Mary into hiring Wheeler and then developing and giving credibility to their sham story. The logic of *Dowd* cannot be extended to shield reporters from torts committed in conjunction with their collaborators.

*Singh v. NYCTL 2009-A Trust*, No. 14 Civ. 2558, 2016 WL 3962009, at *10 (S.D.N.Y. July 10, 2016), is irrelevant. It stands only for the straightforward proposition that "[t]o prove a conspiracy, a plaintiff must show that a defendant joined the conspiracy with the intent to commit the offenses that are its object, that is, ***with the affirmative intent to make the conspiracy succeed***." *Id.* (emphasis added). *Singh* does not expressly or impliedly require the Defendants to join together with a "specific intent" to impose emotional distress on Joel and Mary. *Contra* Fox Mem. at 20. Rather, *Singh* requires only that the conspirators intended a successful completion of their scheme—here, to promote a false narrative that Seth Rich was the source of the DNC emails, to publish the sham story, and to give it credibility by embedding Wheeler with the Riches.

Even more, the relevant portion of *Singh* assesses a Federal RICO conspiracy claim whose requirements, *see* 18 U.S.C. § 1962(d), substantially differ from the elements for pleading civil conspiracy under New York law. *Singh*, 2016 WL 3962009, at *10 ("To state a RICO conspiracy claim, 'a plaintiff must plead that a defendant agreed to participate in the affairs of the enterprise through a pattern of racketeering activity'") (citation omitted). That explains why Joel and Mary have found no case invoking *Singh* in the civil conspiracy context.

## IV.   JOEL AND MARY'S AIDING AND ABETTING CLAIM SHOULD NOT BE DISMISSED.

The Second Circuit already held that Joel and Mary properly alleged the complete tort of intentional infliction of emotional distress. 2d Cir. Op. at 121. Count two, aiding and abetting, need

allege only knowledge of the tort by, and substantial assistance from, the aider and abettor(s). *See*, *e.g.*, *Bigio v. Coca-Cola Co.*, 675 F.3d 163, 172 (2d Cir. 2012).[15]

Joel and Mary allege that each of the Defendants Fox, Zimmerman, and Butowsky knew that the others were committing tortious acts, ¶¶ 147, 150, 154, and that each provided substantial assistance to each of the others when they did so, ¶¶ 148–49, 153. An aiding and abetting claim by its nature involves a series of acts taken together—what the Fox Defendants dismiss as a "mosaic"—that are bound through each defendant's contribution to an underlying tort.

For example, Fox is liable individually for its own acts including publishing the articles, *see* 2d Cir. Op. at 125 ("If . . . Fox News made knowingly or recklessly false claims . . . targeted at the Riches, [it is] subject to possible tort liability"), and for aiding and abetting Zimmerman's and Butowsky's tortious acts because it, among other things, provided resources to Zimmerman and Wheeler as they and Butowsky developed the sham story. ¶ 148. Zimmerman is liable individually for her own acts including fabricating a federal investigator for her story, and for aiding and abetting Fox's and Butowsky's tortious acts because she, among other things, directly provided Wheeler information for his use as he worked towards the Defendants' ends and under false pretenses. ¶ 153. Butowsky is liable individually for his own acts including lying to Joel and Mary and deceiving them into entering the contract with Wheeler, and for aiding and abetting Fox's and Zimmerman's tortious acts because he, among other things, recruited Wheeler. ¶ 149.

The Fox Defendants' contention that Joel and Mary have not alleged a single, "primary actor" is flat wrong, and there is no rule requiring such a "primary actor." *Gym Door Repairs*, upon

---

[15] *Fried v. LVI Services, Inc.*, the case cited by the Fox Defendants regarding mental state for aiding and abetting, actually arose under the New York City Human Rights Law, which courts have interpreted to require "a showing that the defendant *actually participated* in the conduct giving rise to the claim of discrimination." No. 10 Civ. 9308, 2011 WL 2119748, at *7 (S.D.N.Y. May 23, 2011). Aiding and abetting has no such requirement. *See Pittman ex rel. Pittman v. Grayson*, 149 F.3d 111, 122–23 (2d Cir. 1998). *Fried* is, therefore, inapposite and irrelevant.

which the Fox Defendants rely, imposes no such requirement, and certainly does not do so *at the pleading stage*. It held only that, for conspiracy, there must be an underlying, or "primary" tort, 206 F. Supp. 3d at 913, the role intentional infliction of emotional distress plays here. Accordingly, *Gym Door Repairs* does not suggest let alone hold that a complaint must isolate a single, "primary" tortfeasor for conspiracy—much less for aiding and abetting. *See id.* at 913–14.

Joel and Mary have alleged that Fox knew of "the wrongful nature" of its co-Defendants' and Wheeler's conduct and shared the same tortious intent. Joel and Mary allege that Fox was regularly in communication with Butowsky and Zimmerman about the sham story and provided supporting resources and direction to both Zimmerman and Wheeler, ¶ 148,[16] that Butowsky told Wheeler to "play down Fox News" in speaking with the Riches, ¶ 42, that Zimmerman told Wheeler it was her "bosses at Fox" who demanded prompt publication of her falsified article, ¶ 74, and that Wheeler reached out to Fox producers on the eve of publication, who confirmed that "they wanted Fox News to break the false story," ¶ 77. This is more than enough to show that Fox knew of "the wrongful nature" of Defendants' scheme, shared the intent or purpose of the other Defendants—reckless disregard of Joel and Mary—and substantially assisted. Here, again, Joel and Mary deserve the right to uncover "any additional involvement of Fox News in the alleged scheme" 2d Cir. Op. at 122 n.5.

## CONCLUSION

For the foregoing reasons, Joel and Mary Rich respectfully request that the Fox Defendants' motion be denied in its entirety.

---

[16] The evidence already elicited at this early stage demonstrates these allegations are true: ███████ ███████ *See supra* footnote 4; *see also* Exhibit 5 (Fox continued to coordinate with Butowsky, Zimmerman, and Wheeler thereafter, when Butowsky said the team was "on the 1 yard line," demonstrating both all participants' knowledge of the scheme but also the unity of purpose for which the Defendants were collaborating.

Dated: February 28, 2020                         Respectfully submitted,

By:        */s/ Leonard A. Gail*  _____

MASSEY & GAIL L.L.P.
Leonard A. Gail (*pro hac vice*)
Eli J. Kay-Oliphant (EK8030)
Suyash Agrawal (SA2189)
50 East Washington Street, Suite 400
Chicago, IL 60602
Telephone: (312) 283-1590
lgail@masseygail.com
ekay-oliphant@masseygail.com
sagrawal@masseygail.com

SUSMAN GODFREY LLP
Arun Subramanian (AS2096)
Elisha Barron (EB6850)
Beatrice Franklin (BF1066)
1301 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (212) 336-8330
asubramanian@susmangodfrey.com
ebarron@susmangodfrey.com
bfranklin@susmangodfrey.com

*Attorneys for Plaintiffs Joel and Mary Rich*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify this 28th day of February, 2020, that I caused a true and correct copy

of the foregoing document to be electronically filed with the Clerk of the Court using the

CM/ECF system which will send notification to the attorneys of record.

*/s/ Leonard A. Gail*
Leonard A. Gail
