LAW OFFICES

# WILLIAMS & CONNOLLY LLP

725 TWELFTH STREET, N.W.

WASHINGTON, D. C. 20005-5901

(202) 434-5000

FAX (202) 434-5029

KATHERINE M. MEEKS
(202) 434-5870
kmeeks@wc.com

EDWARD BENNETT WILLIAMS (1920-1988)
PAUL R. CONNOLLY (1922-1978)

July 15, 2020

<u>Via CM/ECF</u>

Hon. Sarah Netburn
U.S. District Court for the Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007

    Re:    <u>*Rich v. Fox News Network, LLC*</u>, No. 18-cv-2223

Dear Judge Netburn:

    Pending before the Court is a dispute over whether defendant Fox News Network, LLC must produce documents from the files of journalists Malia Zimmerman, Adam Housley, and Greg Wilson that hit on the search terms "Butowsky" and "Wheeler" but that do not relate to the Rich family or the news reports at issue in this case.  Even if Plaintiffs have met their burden of establishing that these documents are relevant under Rule 26, their motion to compel should be denied, because they cannot overcome the much higher barriers erected by New York's powerful press shield law and related federal privileges for newsgathering.  The New York shield law is often described as "the strongest in the nation," *Holmes v. Winter*, 3 N.E.3d 694, 700 (N.Y. 2013), and requires the party seeking discovery to make "a clear and specific showing" that the information contained in the documents is "critical or necessary" to maintenance of the claims and "not available from any alternative source," N.Y. Civ. Rights Law § 79-h(c).  The standard is met only where the discovery is so integral to the claim that it "virtually rises or falls with the admission or exclusion of the proffered evidence." *Baker v. Goldman Sachs & Co.*, 669 F.3d 105, 108 (2d Cir. 2012).  Plaintiffs cannot possibly satisfy that standard here.

    <u>Governing Law</u>

    New York's shield law was designed to "provid[e] the broadest possible protection to the sensitive role of gathering and disseminating news of public events."  *Holmes*, 3 N.E.3d at 698–99.  Like the First Amendment privilege, the law promotes the press's ability "to publish freely on topics of public interest without harassment and scrutiny by litigants seeking to conduct fishing expeditions" into "the unpublished details of the newsgathering process." *Giuffre v. Maxwell*, 221 F. Supp. 3d 472, 477–78 (S.D.N.Y. 2016).

WILLIAMS & CONNOLLY LLP

July 15, 2020
Page 2

The shield law applies to "professional journalists" and "newscasters," N.Y. Civ. Rights Law § 79-h(a)(6)–(7), and provides two layers of protection for their newsgathering. First, it provides an *absolute* privilege for "any news obtained or received in confidence" and for confidential sources. *Id.* § 79-h(b). Second, it provides a qualified—but still powerful—privilege for "any unpublished news obtained or prepared" by a journalist "in the course of gathering or obtaining news." *Id.* § 79-h(c). The law covers all "unpublished details of the newsgathering process," including a reporter's notes and draft articles; internal discussions among reporters and editors; and communications with third parties on topics of potential news interest, "even if not for the immediate purpose of gathering information for a specific article." *Giuffre*, 221 F. Supp. 3d at 477–79; *see also In re Eisinger*, 2011 WL 1458230, at *2–3 (S.D.N.Y. Apr. 12, 2011). The only requirement is that the "information or communication" was exchanged "in the course of gathering or obtaining news." N.Y. Civ. Rights Law § 79-h(a)(8), (c).

To establish that the privilege applies, a journalist or media organization need only show that the information or communication involved a professional journalist "in the course of gathering news for publication." *See von Bulow by Auersperg v. von Bulow*, 811 F.2d 136, 144 (2d Cir. 1987). At that point, the burden shifts to the plaintiff to make "a clear and specific showing" that the requested discovery is (1) "highly material and relevant," (2) "critical or necessary to the maintenance of a party's claim, defense, or proof of an issue material thereto," and (3) "not obtainable from any alternative source." N.Y. Civ. Rights Law § 79-h(c). The "clear and specific" standard imposes "a high evidentiary burden," particularly for the "critical and necessary" element of the test—which is "interpreted very strictly." *In re HBO, Inc.*, 103 N.Y.S.3d 794, 798, 800 (N.Y. Super. Ct. 2019). For the "critical or necessary" element to be satisfied, "there must be a finding that the claim for which the information is to be used virtually rises or falls with the admission or exclusion of the proffered evidence." *Baker*, 669 F.3d at 108. "The test is not merely that the material be helpful or probative, but *whether or not the action may be presented without it*." *Id.* (emphasis added and ellipsis omitted).

<u>Fox News Has Carried Its Burden of Showing the Privilege Applies</u>

Fox News has carried its burden of demonstrating that the qualified privilege attaches to the documents concerning Ed Butowsky—indeed, Plaintiffs' own theory of relevance centers on the documents being related to newsgathering. Plaintiffs move to compel documents in the custodial files of Zimmerman, Housley, and Wilson, all of whom were employed as "professional journalists," N.Y. Civ. Rights Law § 79-h(a)(6), at Fox News during the relevant time period. Exs. 1–2. Zimmerman testified in an attached declaration that she "relied on Ed Butowsky as a source of background information and leads and for access to sources that he uncovered," as he had "knowledgeable contacts within the military, law enforcement, and intelligence communities." Ex. 1. She also testified that he introduced her and Housley to those contacts so they could "receive information from them related to the stories we were investigating." *Id.* In short, the communications with and about Butowsky were undertaken "in the course of gathering news for publication." *See von Bulow*, 811 F.2d at 144. Greg Wilson was her editor at FoxNews.com.

WILLIAMS & CONNOLLY LLP

July 15, 2020
Page 3

Indeed, Plaintiffs have no basis to dispute that the privilege applies to these documents given that their stated purpose is to discover whether Butowsky was "collaborating" or "working closely with" Fox journalists "on politically charged *stories*." Dkt. No. 152, at 2 (emphasis added). It makes no difference that Plaintiffs characterize these news reports as "controversial" or "politically motivated," *id.* at 1, and suggest that Fox used "aggressive tactics" to uncover them, Dkt. No. 149, p. 4. Fox would vigorously dispute those assertions, but they are simply not part of the analysis. The newsgathering privilege is designed to advance "the paramount public interest in the maintenance of a vigorous, *aggressive* and independent press capable of participating in robust, unfettered debate over *controversial* matters." *United States v. Burke*, 700 F.2d 70, 77 (2d Cir. 1983) (emphasis added) (federal privilege).

The privilege also covers communications with or about Wheeler related to his Fox News appearances made under his contributor agreement, which provided him with a flat fee for each on-air appearance he made on Fox News. Exs. 3–4. Those appearances constitute "news" within the meaning of the shield law—broadly defined as "information or communication concerning local, national, or worldwide events or other matters of public concern or public interest." N.Y. Civ. Rights Law § 79-h(a)(8).

<u>Plaintiffs Cannot Overcome the Privilege</u>

Plaintiffs cannot possibly carry their burden to make "a clear and specific showing" both that the documents are "critical or necessary" to the maintenance of their claims and that the information contained there is "not obtainable from any alternative source," including the depositions of Butowsky and Wheeler. N.Y. Civ. Rights Law § 79-h(c).

1.    "Critical or Necessary"

Plaintiffs argue that these documents would be helpful in prosecuting their intentional infliction claim because Butowsky's involvement in *other* "controversial" news stories "bears on the 'outrageousness' of Fox's conduct." Dkt. No. 152, p. 1. But Plaintiffs have no serious argument that their claim "virtually rises or falls," *Baker*, 669 F.3d at 108, with these documents, none of which have anything to do with the Rich family or the news reports at issue—let alone the leak of DNC emails. The Second Circuit permitted Plaintiffs' claim to proceed into discovery based on an alleged "campaign of emotional torture" that was "*specifically targeted* at Joel and Mary." *Rich v. Fox News Network, LLC*, 939 F.3d 112, 123, 125 (2d Cir. 2019) (emphasis added). This claim cannot possibly rise or fall on the basis of documents relating to other news stories unrelated to the Riches.

Plaintiffs' position fares no better with respect to the conspiracy claim. "Under New York law, civil conspiracy is not an independent tort," but is instead a mechanism for connecting each defendant to an otherwise actionable injury. *Senior Health Ins. Co. of Pa. v. Beechwood Re Ltd.*, 345 F.Supp.3d 515, 531 (S.D.N.Y. 2018). Plaintiffs, in other words, must show a conspiracy to commit the specific tort at issue—intentional infliction of emotional distress specifically targeted

WILLIAMS & CONNOLLY LLP

July 15, 2020
Page 4

at Joel and Mary Rich.  Again, this claim cannot possibly "rise or fall," *Baker*, 669 F.3d at 108, on documents that in no way relate to the Riches.

Plaintiffs do not even allege claims for vicarious liability or negligent supervision regarding Butowsky, so those claims provide no basis for compelling disclosure of privileged communications with or about him.  *See* Am. Compl. ¶¶ 178–89, 191–92, 210.  As to Wheeler, Plaintiffs have not come close to showing that those claims "virtually rise or fall" with the documents at issue.  They have made no attempt to tailor discovery to documents that might actually advance these claims, instead serving an overbroad request for *any and all* documents hitting on Wheeler's name, no matter what the subject matter.  If discovery is to be compelled, it must be only of "such portion, or portions," of documents for which Plaintiffs have made the required "critical or necessary" showing—which Plaintiffs have not done.  *See New York v. Bonie*, 35 N.Y.S.3d 53, 55 (App. Div. 2016).

Finally, Plaintiffs argue that they need the documents to undermine Fox's supposed attempt "to distance itself" from Butowsky—an attempt which consists solely of Fox's accurate representation that he appeared on the air as an unpaid guest.  Dkt. No. 152, p. 3.  According to Plaintiffs, the disputed documents may show that Butowsky also collaborated with Fox behind the scenes on other stories.  However, they have not explained how this supposed "close coordination" about entirely unrelated news stories is critical or necessary to proving any element of their claims for tortious interference or intentional infliction of emotional distress—as they *must* to satisfy the "critical or necessary" prong under the shield law.  *See In re Eisinger*, 2011 WL 1458230, at *4. Nor can they possibly make that showing.  The "coordination" they describe is, as a matter of law, not tortious.  "Collaboration between individuals with an axe to grind and reporters eager for a story is not uncommon; rather, it is the way the news media frequently operate."  *Dowd v. Calabrese*, 589 F. Supp. 1206, 1213 (D.D.C. 1984).

2.     "Not Obtainable from Any Alternative Source"

Plaintiffs also cannot carry their burden to show that the information they seek is "not obtainable from any alternative source."  N.Y. Civ. Rights Law § 79-h(c).  To satisfy that burden, they must show that they have no alternative source for discovering the **information** they seek.  *In re HBO, Inc.*, 103 N.Y.S.3d at 800.  Thus, if the information may be available through a deposition, that is "an alternative source that must be pursued" before the privilege can be overcome.  *Blum v. Schlegel*, 150 F.R.D. 42, 46 (W.D.N.Y. 1993).  Plaintiffs have failed to explain why they cannot explore the "degree of coordination between Butowsky and Fox," Dkt. No. 152, p. 2, by deposing Butowsky.  Moreover, Plaintiffs' own submissions to the Court suggest that Plaintiffs believe they already possess the information they need to show that "Fox reporters and Butowsky [were] working together on politically charged stories." Dkt. No. 152, p. 2 (Ex. H).  Plaintiffs have argued to this Court that they have established as much with documents obtained from Mr. Butowsky in which he writes to a Fox reporter about various news items.  *Id.* (citing Ex. H).

WILLIAMS & CONNOLLY LLP

July 15, 2020
Page 5

<u>Waiver</u>

In their June 23 letter to the Court, Plaintiffs argued that they need not overcome the privilege because Fox News waived it when its journalists communicated with Butowsky and Wheeler, whom Plaintiffs describe as "third parties" who are "not journalists." Dkt. No. 152, p. 3. This argument is meritless for two reasons. First, communications with non-journalists do not waive the privilege—they are the principal means by which reporters gather news. By Plaintiffs' logic, Woodward and Bernstein could not claim the privilege over communications with their Watergate source "Deep Throat," a third party who worked at the FBI and was not a journalist. This Court's cases do not permit any such absurd result, and plainly extend protection to a reporter's communications with third parties in the course of gathering news. *See Giuffre*, 221 F. Supp. 3d at 479.[1]

Second, Plaintiffs are wrong that Wheeler is not entitled to the protections of the New York shield law. Although Fox News does not contend he was a journalist for purposes of its reporting about Seth Rich, the documents Plaintiffs are moving to compel involve Wheeler's involvement in ***other*** news coverage—namely, his appearances on Fox News programs pursuant to his paid contributor agreement. Exs. 3–4. With regard to those appearances, Wheeler fits within the protected statutory definition of a "newscaster," because he is "a person who, for gain or livelihood, is engaged in analyzing, commenting on or broadcasting news by radio or television transmission." N.Y. Civ. Rights. Law § 79-h(a)(7).

<u>Privilege Log</u>

Pursuant to the Court's order, Fox News has by email provided a log of disputed documents found in the custodial files of Zimmerman, Housley, and Wilson. Those documents can also be submitted for *in camera* review if it would aid the Court.

Respectfully,

/s/ Katherine Moran Meeks
*Counsel for Fox News Network, LLC*

Cc:     Counsel of Record

---

[1] Plaintiffs attached to their letter briefing a copy of Judge Leon's order denying Fox News's motion to quash Zimmerman's deposition in Aaron Rich's separate case against Butowsky. Dkt. No. 149-6. Subsequent to issuing that order, Judge Leon granted a hearing on Fox News's motion for reconsideration. That motion remains under submission. And, regardless, there is nothing in Judge Leon's order regarding a different motion with respect to a different set of topics and based on a different record that would compel any finding of waiver here.

# EXHIBIT 1

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

JOEL RICH AND MARY RICH,

            Plaintiffs,

v.

FOX NEWS NETWORK, LLC, MALIA
ZIMMERMAN, AND ED BUTOWSKY,

            Defendants.

Civil Action No. 18-cv-2223 (GBD)(SN)

# DECLARATION OF MALIA ZIMMERMAN IN SUPPORT OF
# FOX NEWS NETWORK, LLC'S LETTER MOTION OF JULY 15, 2020

I, Malia Zimmerman, being first duly cautioned, declare as follows:

1.      I am a journalist employed at Fox News Network, LLC ("Fox News").  I was so employed at all times relevant hereto.

2.      I submit this declaration in support of the above-referenced Letter Motion submitted to this Court by Fox News at the Court's request.

3.      In the course of my employment as a journalist at Fox News, I have investigated numerous news stories about matters of concern to the general public.  Some of these stories were ultimately published by Fox News, while others were not.

4.      While investigating certain news stories, including some related to law enforcement and national security, I relied on Ed Butowsky as a source of background information and leads, and for access to sources that he uncovered.  I also relied on him to help verify the accuracy of information I uncovered through other means, based on his network of contacts.

5.     In my experience, Mr. Butowsky had knowledgeable contacts within the military, law enforcement, and intelligence communities.  Mr. Butowsky introduced me and my colleague Adam Housley to these contacts so that we could receive information from them related to the stories we were investigating or learn from them potential sources of such information.

6.     Mr. Butowsky also provided Mr. Housley and me with information that he learned from his various contacts, which we would attempt to verify with our other sources.

7.     In some cases, the information these contacts provided to Mr. Butowsky or me was furnished under a promise of confidentiality.

I declare under penalty of perjury that the foregoing is true and correct.  *See* 28 U.S.C. § 1746.  Executed on July 14, 2020.

Malia Zimmerman

# EXHIBIT 2

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOEL RICH AND MARY RICH, | |
| Plaintiffs, | |
| v. | Civil Action No. 18-cv-2223 (GBD)(SN) |
| FOX NEWS NETWORK, LLC, MALIA ZIMMERMAN, AND ED BUTOWSKY, | |
| Defendants. | |

**DECLARATION OF ADAM HOUSLEY IN SUPPORT OF
FOX NEWS NETWORK, LLC'S LETTER MOTION OF JULY 15, 2020**

I, Adam Housley, being first duly cautioned, declare as follows:

1.      I was employed at Fox News Network, LLC ("Fox News") as a journalist from 2001 through 2018.

2.      I submit this declaration in support of the above-referenced Letter Motion submitted to this Court by Fox News at the Court's request.

3.      In the course of my employment as a journalist at Fox News, I investigated numerous news stories about matters of concern to the general public, including stories relating to national security and foreign affairs.  Some of these stories were ultimately published by Fox News, while others were not.

4.      In the course of my investigation, Ed Butowsky at times connected me with sources who provided information relevant to my reporting on topics of public concern. In my experience, these sources trusted Mr. Butowsky and were willing to speak with me at least in part because we were introduced by Mr. Butowsky.

5.      Some of these sources provided information on the understanding that it would be treated as confidential and that their names would not be used in a published report. Even if these sources were not willing to be quoted, they provided valuable background and leads that furthered my reporting on matters of public concern.

I declare under penalty of perjury that the foregoing is true and correct.  *See* 28 U.S.C. § 1746.  Executed on July 15, 2020.

Adam Housley

# EXHIBIT 3

## CONTRIBUTOR AGREEMENT

1. Rod Wheeler ("Contributor") hereby grants to Fox News Network, LLC, its parent, successors, licensees and assigns, (collectively "Fox"), the irrevocable and exclusive right (but not the obligation) to record, exhibit and otherwise use Contributor's name, likeness, photograph and voice on television (hereinafter referred to as the "Appearances") throughout the Term hereof as referenced below, in connection with opinions/analyses/commentary concerning issues, news events and related subject matters, to be telecast on any programs, advertisements and promotions for Fox, and disseminated/broadcast on the Fox News Channel, the Fox Business Network, Foxnews.com, Foxbusiness.com and/or on any other programming produced in whole or in part by Fox (collectively, the "Programs").

1.1. For the avoidance of all doubt, under no circumstances shall Contributor appear on other television programs or networks, including, without limitation, on CNN, HLN, MSNBC, or CNBC.

2. The Appearances will be scheduled at mutually agreed upon times and will originate from Fox's studios in New York City or Washington, D.C. or from such other locations as mutually agreed upon by the parties.

3. The term ("Term") of this Agreement shall commence as of October 6, 2014 and shall continue through and including December 31, 2016, unless sooner terminated for cause.

4. Other than during the period commencing thirty (30) days immediately prior to the expiration of the Term, at no time during the Term shall Contributor in any manner, directly or indirectly, solicit or entertain an offer or enter into any negotiation or agreement with any other person or party regarding Contributor's television services following the Term hereof. Contributor acknowledges and agrees that any offer received by Contributor as a result of negotiations permitted by the foregoing sentence shall be subject to Fox's first refusal rights as set forth in the next sentence. Contributor hereby grants to Fox for sixty (60) days following the end of the Term of this Agreement a right of first refusal for Contributor's television services following the end of the Term. Accordingly Contributor shall not enter into a subsequent television deal for 60 days following the end of the Term, unless Contributor has first given Fox written notice of the terms and conditions of the offer acceptable to Contributor, and an opportunity for 5 business days to match the terms and conditions of such subsequent offer.

5. Contributor agrees that Fox is and shall be the sole and exclusive owner of the Programs, including, without limitation, all rights (including copyrights) and components contained therein, for all purposes and uses whatsoever, throughout the universe in perpetuity. Fox shall also have the unrestricted right to edit the content and text of the Programs in any manner or form.

6. In full consideration for Contributor's Appearances and the rights granted hereunder, Fox agrees to pay and Contributor agrees to accept the per Appearance fee of ███, less

---

[1] The definition of an "Appearance" hereunder shall also include Contributor's off-air

RW 10/13/14

deductions as required by law.  Such payments will be made within 30 days of each Appearance.

7. Contributor hereby releases Fox from and against any and all claims or actions of any nature arising by reason of the Appearances or statements made by Contributor on or in connection with the Appearances which claims or actions are finally adjudicated in a court of competent jurisdiction, or Fox's exercise of any or all rights herein granted.

8. Contributor represents and warrants that he is 18 years of age or older and has the full right, power and authority to enter into this Agreement and grant the rights herein provided, and that this Agreement does not conflict or interfere in any way with any other agreement to which Contributor may be a party, whether written or oral.

9. Under no circumstances and at no time, either during or after the Term, shall Contributor directly or indirectly, disclose, divulge, render or offer any knowledge or information to any other person or party whatsoever concerning matters relating to any terms or conditions of this agreement except to Contributor's financial, legal and business advisors or as otherwise required by law.

10. Neither Contributor nor any of his agent(s), representative(s) or designee(s) shall issue any statements or grant any interviews concerning Contributor's services hereunder without Fox's prior approval in each instance.  This paragraph 10 is not meant to restrict Contributor from stating publicly that he is a Contributor for Fox News nor is this paragraph 10 intended to restrict Contributor from answering spontaneous press inquiries concerning his overall relationship with Fox News.

11.  Contributor acknowledges and understands that Fox assumes Contributor will conduct himself at all times in an honest and ethical manner, and in compliance with any and all applicable federal, state, local, and/or foreign laws, and that if at any time, in Fox's good faith, reasonable and informed opinion, Contributor's behavior deviates from such honesty, ethics, and/or lawfulness, then Fox shall have the right to terminate this Agreement effective immediately upon notice to Contributor.

12.  Each party has cooperated in the drafting and preparation of this Agreement. Hence, in any construction or interpretation of this Agreement, the same shall not be construed against any party on the basis that the party was the drafter.

13. This Agreement constitutes the entire agreement and understanding between the parties, and it supersedes and replaces all prior communications, negotiations and agreements, whether written or oral.  This Agreement cannot be changed, modified, amended or supplemented, except in a subsequent writing that contains the handwritten signature of the

---

assistance, as requested by Fox, as follows:  Up to two-hour's worth of Contributor's time for off-air assistance which Fox requests shall count as one Appearance.

- 2 -

FoxNews0000497

parties. Subsequent emails with typed names and/or signature blocks are not sufficient for purposes of changing, modifying, amending or supplementing this Agreement. There are no representations, promises, warranties, covenants, undertakings or understandings with respect to the subject matter contained herein except as expressly set forth herein. This Agreement shall be governed by the laws of the State of New York. This Agreement may be signed in counterparts.

Date: 10/13/14

**CONTRIBUTOR**

*Rod Wheeler*

Name:   Rod Wheeler

Address: ███████████████

Tel. No. ███████

**FOX NEWS NETWORK, LLC ("FOX")**

Date: 10/14/14

By: _____

Title: _____

– 3 –

CONFIDENTIAL

FoxNews0000498

# EXHIBIT 4

## CONTRIBUTOR AGREEMENT

1. Rod Wheeler ("Contributor") hereby grants to Fox News Network, LLC, its parent, successors, licensees and assigns, (collectively "Fox"), the irrevocable and exclusive right (but not the obligation) to record, exhibit and otherwise use Contributor's name, likeness, photograph and voice on television (hereinafter referred to as the "Appearances") throughout the Term hereof as referenced below, in connection with opinions/analyses/commentary concerning issues, news events and related subject matters, to be telecast on any programs, advertisements and promotions for Fox, and disseminated/broadcast on the Fox News Channel, the Fox Business Network, Foxnews.com, Foxbusiness.com and/or on any other programming produced in whole or in part by Fox (collectively, the "Programs").

1.1. For the avoidance of all doubt, under no circumstances shall Contributor appear on other television programs or networks, including, without limitation, on CNN, HLN, MSNBC, or CNBC.

2. The Appearances will be scheduled at mutually agreed upon times and will originate from Fox's studios in New York City or Washington, D.C. or from such other locations as mutually agreed upon by the parties.

3. The term ("Term") of this Agreement shall commence as of January 1, 2017 and shall continue through and including December 31, 2018, unless sooner terminated for cause.

4. Other than during the period commencing thirty (30) days immediately prior to the expiration of the Term, at no time during the Term shall Contributor in any manner, directly or indirectly, solicit or entertain an offer or enter into any negotiation or agreement with any other person or party regarding Contributor's television services following the Term hereof. Contributor acknowledges and agrees that any offer received by Contributor as a result of negotiations permitted by the foregoing sentence shall be subject to Fox's first refusal rights as set forth in the next sentence. Contributor hereby grants to Fox for sixty (60) days following the end of the Term of this Agreement a right of first refusal for Contributor's television services following the end of the Term. Accordingly Contributor shall not enter into a subsequent television deal for 60 days following the end of the Term, unless Contributor has first given Fox written notice of the terms and conditions of the offer acceptable to Contributor, and an opportunity for 5 business days to match the terms and conditions of such subsequent offer.

5. Contributor agrees that Fox is and shall be the sole and exclusive owner of the Programs, including, without limitation, all rights (including copyrights) and components contained therein, for all purposes and uses whatsoever, throughout the universe in perpetuity. Fox shall also have the unrestricted right to edit the content and text of the Programs in any manner or form.

6. In full consideration for Contributor's Appearances and the rights granted hereunder, Fox agrees to pay and Contributor agrees to accept the per Appearance fee of ███, less

---

[1] The definition of an "Appearance" hereunder shall also include Contributor's off-air

deductions as required by law.  Such payments will be made within 30 days of each Appearance.

7. Contributor hereby releases Fox from and against any and all claims or actions of any nature arising by reason of the Appearances or statements made by Contributor on or in connection with the Appearances which claims or actions are finally adjudicated in a court of competent jurisdiction, or Fox's exercise of any or all rights herein granted.

8. Contributor represents and warrants that he is 18 years of age or older and has the full right, power and authority to enter into this Agreement and grant the rights herein provided, and that this Agreement does not conflict or interfere in any way with any other agreement to which Contributor may be a party, whether written or oral.

9. Under no circumstances and at no time, either during or after the Term, shall Contributor directly or indirectly, disclose, divulge, render or offer any knowledge or information to any other person or party whatsoever concerning matters relating to any terms or conditions of this agreement except to Contributor's financial, legal and business advisors or as otherwise required by law.

10. Neither Contributor nor any of his agent(s), representative(s) or designee(s) shall issue any statements or grant any interviews concerning Contributor's services hereunder without Fox's prior approval in each instance.  This paragraph 10 is not meant to restrict Contributor from stating publicly that he is a Contributor for Fox News nor is this paragraph 10 intended to restrict Contributor from answering spontaneous press inquiries concerning his overall relationship with Fox News.

11.  Contributor acknowledges and understands that Fox assumes Contributor will conduct himself at all times in an honest and ethical manner, and in compliance with any and all applicable federal, state, local, and/or foreign laws, and that if at any time, in Fox's good faith, reasonable and informed opinion, Contributor's behavior deviates from such honesty, ethics, and/or lawfulness, then Fox shall have the right to terminate this Agreement effective immediately upon notice to Contributor.

12.  Each party has cooperated in the drafting and preparation of this Agreement. Hence, in any construction or interpretation of this Agreement, the same shall not be construed against any party on the basis that the party was the drafter.

13.  Any controversy, claim, or dispute arising out of or relating to this Agreement shall be brought before a mutually selected arbitrator/mediator and held in New York City in accordance with the rules of JAMS.  Such arbitration/mediation, all filings, written evidence, and testimony connected with the arbitration/mediation and all relevant allegations and events leading

---

assistance, as requested by Fox, as follows:  Up to two-hour's worth of Contributor's time for off-air assistance which Fox requests shall count as one Appearance.

- 2 -

up to the arbitration/mediation, shall be held in strict confidence. The arbitrator/mediator shall issue a written opinion setting forth the reasons for his or her decision, and the decision shall be final and binding.

14. This Agreement constitutes the entire agreement and understanding between the parties, and it supersedes and replaces all prior communications, negotiations and agreements, whether written or oral. This Agreement cannot be changed, modified, amended or supplemented, except in a subsequent writing that contains the handwritten signature of the parties. Subsequent emails with typed names and/or signature blocks are not sufficient for purposes of changing, modifying, amending or supplementing this Agreement. There are no representations, promises, warranties, covenants, undertakings or understandings with respect to the subject matter contained herein except as expressly set forth herein. This Agreement shall be governed by the laws of the State of New York. This Agreement may be signed in counterparts.

Date: 11/29/2016

**CONTRIBUTOR**

Name:    Rod Wheeler

Address:

Tel. No.

Date: 12/5/16

**FOX NEWS NETWORK, LLC ("FOX")**

By:

Title: Co-president

– 3 –

FoxNews0049740