UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

JOEL RICH, et al.,

                                    Plaintiffs,            18-CV-2223 (GBD)(SN)

                    -against-                             <u>REPORT AND</u>
                                                          <u>RECOMMENDATION</u>
FOX NEWS NETWORK LLC, et al.,

                                    Defendants.

------------------------------------------------------------------X

SARAH NETBURN, United States Magistrate Judge.

TO THE HONORABLE GEORGE B. DANIELS:

        Plaintiffs Joel and Mary Rich bring this suit based on diversity jurisdiction against

defendants Fox News Network LLC ("Fox News"), Malia Zimmerman ("Zimmerman"), and

Ed Butowsky ("Butowsky"), alleging intentional infliction of emotional distress ("IIED"),

aiding and abetting IIED, conspiracy to commit IIED, tortious interference with contract,

"vicarious liability," and negligent supervision. <u>See</u> ECF No. 99 ("Am. Compl."). Butowsky

moves to dismiss for lack of personal jurisdiction under Rule 12(b)(2). For the reasons herein, I

recommend the Court DENY Butowsky's 12(b)(2) Motion.

BACKGROUND

I.      Factual Background

        The alleged facts of the case have been recounted at length by both the District Court and

the Court of Appeals;[1] accordingly, I summarize those facts most relevant to Butowsky's motion

---

[1] <u>See</u> <u>Rich v. Fox News Network, LLC</u>, 322 F. Supp. 3d 487 (S.D.N.Y. 2018), <u>vacated and remanded,</u> 939 F.3d 112 (2d Cir. 2019) (granting defendants' 12(b)(6) motion to dismiss).

to dismiss for lack of personal jurisdiction. At the motion to dismiss stage, the Court accepts all well-pleaded jurisdictional allegations in the complaint as true, construing them "in the light most favorable to the plaintiff" and resolving all doubts in the plaintiff's favor. Elsevier, Inc. v. Grossman, 77 F. Supp. 3d 331, 341 (S.D.N.Y. 2015) (quoting A.I. Trade Fin., Inc. v. Petra Bank, 989 F.2d 76, 79–80 (2d Cir. 1993)). Where a court does not hold an evidentiary hearing on the question of personal jurisdiction, it may nevertheless consider matters outside the pleadings without converting the motion to dismiss into a motion for summary judgment. See Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A., 722 F.3d 81, 86 (2d Cir. 2013); see also Am. Lecithin Co. v. Rebmann, 12-cv-929 (VSB), 2017 WL 4402535, at *5 (S.D.N.Y. Sept. 30, 2017) (citing Hsin Ten Enter. USA, Inc. v. Clark Enters., 138 F. Supp. 2d 449, 452 (S.D.N.Y. 2000)).

Plaintiffs' son Seth Rich was murdered during a robbery outside his home in Washington, D.C., in July 2016. Am. Compl., ¶ 2. Plaintiffs' Amended Complaint alleges that Butowsky and Zimmerman, working with Fox News, crafted a politically motivated story that falsely claimed Seth Rich's involvement in a leak of Democratic National Committee ("DNC") communications to WikiLeaks led to his murder. Id. at ¶ 3. Plaintiffs claim that Fox News's publication of the false story, as well as Fox News and Butowsky's widespread dissemination of its central claims—despite their fabricated and harmful nature—caused Plaintiffs severe mental, physical, and emotional suffering. Id. at ¶¶ 87–90; 109–134.

Butowsky's involvement in the events at the core of Plaintiffs' Amended Complaint begins in December 2016, when, nearly six months after Seth Rich's death, Butowsky sought to connect with Plaintiffs. Butowsky successfully began corresponding with Mary and Joel Rich following a Facebook post stating that he was "looking to connect with anyone Jewish in Omaha Nebraska." Id. at ¶ 25. Plaintiffs and Butowsky developed a relationship and in 2017, Butowsky

eventually suggested Plaintiffs contact Rod Wheeler ("Wheeler"), a former private investigator, to aid in the investigation of their son's death. Id. at ¶¶ 41–56. Plaintiffs hired Wheeler at Butowsky's suggestion. Id.

Unbeknownst to Plaintiffs, Butowsky hoped to publish a sham story about Seth Rich and intended to exploit his relationship with them to do so. Over the course of the months following, Butowsky worked with Zimmerman, Wheeler, and Fox News to create, publish, and publicize a false narrative centered on Seth Rich's involvement with Wikileaks. As part of this effort, Butowsky communicated with individuals at Fox News in New York by email to introduce himself as the story's key developer. Id. at ¶ 82. On May 16, 2017, Fox News published two articles reporting the false story. Id. at ¶¶ 87, 90. Following the articles' publication, Butowsky continued to contact individuals at Fox News as part of his ongoing effort to promote the story and discuss further aspects of the false narrative. See ECF Nos. 126, 129, 181, 182, 200, 201.

## II.  Procedural Background

Butowsky moved to dismiss the original complaint for failure to state a claim under Rule 12(b)(6) (the "12(b)(6) Motion") and for lack of personal jurisdiction under Rule 12(b)(2) (the "12(b)(2) Motion"). The Hon. George B. Daniels granted the 12(b)(6) Motion and declined to reach the merits of Butowsky's 12(b)(2) Motion on August 2, 2018. The Court of Appeals reversed, vacated, and remanded. Judge Daniels granted the parties' consent motion to amend the complaint and Defendants Fox News and Zimmerman moved under Rule 12(b)(6) to dismiss the Amended Complaint while Butowsky, then acting *pro se*, renewed his 12(b)(2) Motion. See ECF No. 111. Judge Daniels referred Butowsky's 12(b)(2) Motion to me for a Report and Recommendation.[2]

---

[2] The parties have not sought leave of the Court to supplement their original briefing in connection with the Rule 12(b)(2) Motion. The Court, however, received several additional submissions from Plaintiffs by

**DISCUSSION**

I.     **Legal Standard**

"On a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff bears

the burden of showing that the court has jurisdiction over the defendant." Metro. Life Ins. Co. v.

Robertson-Ceco Corp., 84 F.3d 560, 566 (2d Cir. 1996) (citation omitted). "The showing the

plaintiff must make depends on the procedural stage of the litigation." Fica Frio, Ltd. v. Seinfeld,

434 F. Supp. 3d 80, 86 (S.D.N.Y. 2020). "[I]n deciding a pretrial motion to dismiss for lack of

personal jurisdiction a district court has considerable procedural leeway. It may determine the

motion on the basis of affidavits alone; or it may permit discovery in aid of the motion; or it may

conduct an evidentiary hearing on the merits of the motion." Dorchester Fin. Sec., Inc. v. Banco

BRJ, S.A., 722 F.3d 81, 84 (2d Cir. 2013) (citing Marine Midland Bank, N.A. v. Miller, 664 F.2d

899, 904 (2d Cir. 1981)). After discovery but before an evidentiary hearing, a plaintiff's *prima*

*facie* showing must include an averment of facts that if credited by the trier would suffice to

establish jurisdiction over the defendant. See Vasquez v. Hong Kong & Shanghai Banking Corp.,

Ltd., 18-cv-1876 (PAE), 2020 WL 4586729, at *6 (S.D.N.Y. Aug. 10, 2020) (citing Metro. Life

Ins. Co., 84 F.3d at 567) (internal quotation marks and alterations omitted); Chloe v. Queen Bee

of Beverly Hills, LLC, 616 F.3d 158, 163 (2d Cir. 2010). In assessing a plaintiff's showing, the

court applies a "standard . . . akin to that on a motion for summary judgment," construing the

"pleadings, documents, and other evidentiary materials . . . in the light most favorable to the

---

email (citing the confidential designation of documents attached as exhibits to those emails) in support of
their opposition to the Rule 12(b)(2) Motion, dated May 6, 2020, July 10, 2020, and July 29, 2020. Fox
News and Butowsky responded by email to Plaintiffs' May 6, 2020 Email submission on May 11, 2020,
and July 22, 2020. At the Court's direction (ECF No. 168), the parties have since filed those email
submissions publicly on the docket. See ECF Nos. 181, 182, 200, 201 (Plaintiffs' letters); ECF No. 184
(Fox News's Response to Plaintiffs' May 6, 2020 Email); ECF No. 179 (Butowsky's Response to
Plaintiffs' May 6, 2020 Email).

plaintiff" and resolving all doubts in the plaintiff's favor. <u>Melnick v. Adelson-Melnick</u>, 346 F.

Supp. 2d 499, 503 (S.D.N.Y. 2004) (citing <u>Kamen v. AT&T Co.</u>, 791 F.2d 1006, 1010–11 (2d

Cir. 1986), <u>Mantello v. Hall</u>, 947 F. Supp. 92, 96 (S.D.N.Y. 1996)). "At the same time . . . the

[c]ourt will limit its jurisdictional analysis to the facts presented and must assume that the

[plaintiff] has provided all of the evidence [it possesses] to support [its] jurisdictional claims."

<u>Vasquez</u>, 2020 WL 4586729, at *6 (internal quotation marks omitted).

Although courts cannot convert a Rule 12(b)(2) motion into a Rule 56 motion for

summary judgment when extrinsic evidence is considered, the Rule 56 standard offers guidance

as to which documents outside the pleadings a court may consider in adjudicating the Rule

12(b)(2) motion. <u>Vasquez</u>, 2020 WL 4586729, at *6 (citations omitted). As such, a court

resolving a Rule 12(b)(2) motion made after some discovery may consider only admissible

evidence. <u>Id.</u>

## II.   Personal Jurisdiction

Plaintiffs argue the Court has specific jurisdiction over Butowsky for their claims. "In

contrast to general, all-purpose jurisdiction, specific jurisdiction is confined to adjudication of

issues deriving from, or connected with, the very controversy that establishes jurisdiction."

<u>Goodyear Dunlop Tires Operations, S.A. v. Brown</u>, 564 U.S. 915, 919 (2011). Specific

jurisdiction depends on an affiliation between the forum and the underlying controversy,

principally, activity or an occurrence that takes place in the forum State. <u>Id.</u> A plaintiff asserting

specific personal jurisdiction "must establish the court's jurisdiction with respect to <u>each</u> claim

asserted." <u>Sunward Elecs., Inc. v. McDonald</u>, 362 F.3d 17, 24 (2d Cir. 2004) (emphasis in

original). Courts undertake a two-step analysis to determine whether specific jurisdiction exists.

<u>See</u> <u>Licci ex rel. Licci v. Lebanese Canadian Bank, SAL</u>, 732 F.3d 161, 170 (2d Cir. 2013). First,

the court looks to the law of the forum state to determine whether personal jurisdiction will lie according to the state's long-arm statute. Id. at 168. If jurisdiction lies under the forum state's long-arm statute, the court will next consider whether the exercise of personal jurisdiction over a particular defendant comports with the due process protections established under the United States Constitution. Id.

### A. Statutory Jurisdiction under Section 302(a)(1)

As the Plaintiffs, Joel and Mary Rich bear the burden of demonstrating personal jurisdiction over each defendant. See Troma Entm't, Inc. v. Centennial Pictures Inc., 729 F.3d 215, 217 (2d Cir. 2013). Butowsky argues that the Court lacks specific jurisdiction over the claims against him because Plaintiffs cannot satisfy the requirements of New York's long-arm statute for non-domiciliaries, N.Y. C.P.L.R. 302. Plaintiffs argue that personal jurisdiction over the claims is established under N.Y. C.P.L.R. 302(a)(1) ("Section 302(a)(1)"), which covers parties who transact business within the state. Section 302(a)(1) requires the Court to determine (1) whether the defendant transacts any business in New York, and if so, (2) whether this cause of action arises from such a business transaction. Licci, 732 F.3d at 168.

### 1. Whether a Defendant Transacts Business within the State

Under the first prong of Section 302(a)(1), a defendant may be subject to specific personal jurisdiction if it transacts business within the state of New York. "New York courts define transact[ing] business as purposeful activity—some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Best Van Lines, Inc. v. Walker, 490 F.3d 239, 246 (2d Cir. 2007) (alteration in original) (internal quotation marks and citation omitted). While courts have not delineated the precise outer boundaries of what it means to "transact business"

for purposes of determining jurisdiction, they have repeatedly emphasized that the nature and extent or "'quality of the defendant's New York contacts . . . is the primary consideration.'" Hack v. Stang, 13-cv-5713 (AJN), 2014 WL 4652596, at *4 (S.D.N.Y. Sept. 18, 2014) (quoting Fischbarg v. Doucet, 9 N.Y.3d 375, 380 (2007)). Section 302(a)(1) is a "single act" statute, meaning a single transaction of sufficient quality may invoke jurisdiction, provided that the transaction was purposeful, and the necessary relationship between the transaction and the claim asserted exists. See, e.g., Best Van Lines, Inc., 490 F.3d at 248. When a defendant's remote communications effectuate some purposeful business in New York, personal jurisdiction will be found even if a defendant never actually entered the state. See Pickett v. Migos Touring, Inc., 420 F. Supp. 3d 197, 204 (S.D.N.Y. 2019) (finding that a defendant "purposefully availed itself of the privilege of conducting activities within New York" for specific jurisdiction purposes where it arranged for the distribution and performance of its content by others from New York even if the defendant itself was not present in the state); Golden Archer Investments, LLC v. Skynet Fin. Sys., 11-cv-3673 (RJS), 2012 WL 123989, at *4 (S.D.N.Y. Jan. 3, 2012); Best Van Lines, Inc., 490 F.3d at 248 (collecting cases).

### 2. Whether the Claim and Actions are Sufficiently Related

The "arising from" prong of Section 302(a)(1) does not require a causal link between the defendant's New York business activity and a plaintiff's injury. Instead, it requires "a relatedness between the transaction and the legal claim such that the latter is not completely unmoored from the former, regardless of the ultimate merits of the claim." Licci, 732 F.3d at 168–69. "Whether a plaintiff's claim arises from a defendant's New York contacts depends upon the nature and elements of the particular causes of action pleaded." Id. at 169 (citations and internal quotation marks omitted). Section 302(a)(1) "does not require that every element of the cause of action

pleaded must be related to the New York contacts; rather, where at least one element arises from the New York contacts, the relationship between the business transaction and the claim asserted supports specific jurisdiction under the statute." Id. (citations and internal quotation marks omitted). A "connection that is 'merely coincidental' is insufficient to support jurisdiction," however. Sole Resort, S.A. de C.V. v. Allure Resorts Management, LLC, 450 F.3d 100, 103 (2d Cir. 2006) (quoting Johnson v. Ward, 4 N.Y.3d 516, 520 (N.Y. 2005)).

### B. Constitutional Jurisdiction[3]

In addition to meeting the statutory requirements to establish personal jurisdiction, a plaintiff must also show that the exercise of personal jurisdiction comports with the Due Process Clause of the United States Constitution. "[S]atisfaction of the [S]ection 302(a)(1) criteria will generally meet federal due-process requirements, but the constitutional analysis is still distinct." Golden Archer Investments, LLC, 2012 WL 123989, at *5 (internal quotation marks and citation omitted). The due process inquiry consists of two elements: the "minimum contacts" inquiry and the "reasonableness" inquiry. Chloe, 616 F.3d at 164. In order to establish the minimum contacts necessary for jurisdiction, a plaintiff must show that her claim arises out of or relates to defendant's contacts with the forum state, that the defendant purposefully availed himself of the privilege of doing business in the forum state, and that the defendant could foresee being haled into court there. Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez, 305 F.3d 120, 127 (2d Cir. 2002) (citation and internal quotation marks omitted). Once a court finds sufficient minimum contacts, it must undertake a reasonability analysis to ensure that "the maintenance of

---

[3] Because Butowsky does not contest the constitutionality of the Court's exercise of personal jurisdiction over him, the Court would act within its discretion to focus its analysis solely on the statutory basis for doing so. See Hack, 2014 WL 4652596, at *4 (quoting Licci ex rel. Licci v. Lebanese Canadian Bank, SAL, 673 F.3d 50, 59 (2d Cir. 2012)). For purposes of this Report and Recommendation, however, I also discuss the constitutional element of the Court's exercising personal jurisdiction over Butowsky.

the suit does not offend traditional notions of fair play and substantial justice." <u>Int'l Shoe Co. v. Washington</u>, 326 U.S. 310, 316 (1945) (citation and internal quotation marks omitted).

### III.   **Analysis**

Butowsky argues that Plaintiffs' claims do not sufficiently allege his presence within or purposeful availment of New York. Plaintiffs argue that their claims against Butowsky—for IIED, conspiracy to commit IIED, aiding and abetting IIED, and tortious interference with contract—arise out of his efforts directed at Fox News and others in New York to develop, publish, and promote a false narrative about Seth Rich's death.

The Amended Complaint contains multiple references to Butowsky's coordination with Fox News, which is based in New York. These references include Butowsky's representation to Wheeler that he was working "with Zimmerman at Fox News" on at least one article; Wheeler's understanding that Zimmerman and Butowsky were working "on behalf of Fox News on [an article] and had exchanged multiple drafts;" and the claim that Fox News "regularly communicat[ed] with Butowsky and Zimmerman about the development of a sham story." <u>Id.</u> at ¶¶ 35, 71, 148. Additionally, the Amended Complaint alleges that Butowsky emailed multiple personnel in New York on the eve of the story's publication to inform them that he had been "putting [the story] together" and that they should reach out to him if they had questions or needed more information about the story. <u>Id.</u> at ¶ 82. This email, intended to promote the Seth Rich story, creates a "substantial connection" between Butowsky's contacts with New York and Plaintiffs' claims. Indeed, Fox News published two articles from New York on May 16, 2017, directly resulting from Butowsky's work with Fox News, Zimmerman, and Wheeler to develop the story. <u>Id.</u> at ¶¶ 85, 87–90.

These allegations state a *prima facie* case of personal jurisdiction over Butowsky. They demonstrate that Butowsky transacted business under the first prong of the Section 302(a)(1) analysis. First, the Amended Complaint references Butowsky as a "frequent contributor" to Fox News (id. at ¶ 12), and the specific claims in the Amended Complaint demonstrate that Butowsky worked by agreement with Fox News in this instance to develop a story for its publication, *i.e.*, to conduct business. Even though the Amended Complaint alleges that Butowsky performed significant work developing the story outside New York, it also plainly states that Fox News in New York would publish the finished story. This is sufficient to establish that Butowsky transacted business for the purposes of Section 302(a)(1). See Golden Archer Investments, LLC, 2012 WL 123989, at *5 (finding that an out of state defendant who created a product to be hosted and accessed on New York servers had "transacted business" within § 302(a)(1)).

Second, in addition to the Amended Complaint's allegations, Plaintiffs' evidence— gathered in discovery in this litigation and related litigation—supports a finding that Butowsky transacted business within and had a physical presence in New York. Specifically, the evidence establishes a relationship with New York-based Fox News, which supports the conclusion that Butowsky worked collaboratively with individuals in New York in order to publish the story about Seth Rich. For example, publicly available articles submitted by Plaintiffs embody Butowsky's past collaborations with Fox News. See ECF No. 34, ¶¶ 5–9 ("Kay-Oliphant Decl."). Plaintiffs also submit evidence of emails sent from Butowsky to key individuals at Fox News in New York to discuss and publicize the Seth Rich story. See ECF Nos. 126, 129, 181, 182, 200, 201. Butowsky's emails to a number of individuals in New York in relation to the story demonstrate his actions directed at New York and his intent to travel to or his physical presence

in New York to discuss, promote, and spread the story and related information. See ECF No. 200, Ex. B ("I'm at the center of the Seth Rich Wikileaks uncovering . . . Would you like to talk . . . or do you want me to swing by your radio show. . . and give it to you before you go on."); ECF No. 201, Ex. C ("[Wheeler] now says that the quote in controversy came from me and that Fox, Malia and I set him up. Do you have the Fox 5 link you referenced? I am on a plane to NYC right now."); ECF No. 181, Ex. 2 ("I have some information that I know will be very helpful. I am on the 3rd floor [of Fox's New York office] . . . I thought it best not to appear on your floor."). Taken together, these emails amply indicate that Butowsky both reached into the forum and was plausibly physically present in the forum such that he "transacted business" there under Section 302(a)(1).

I further find that these allegations establish a substantial connection between the transacted business and Plaintiffs' IIED claim. Plaintiffs claim that Butowsky committed IIED in part through his sustained efforts to publish and promote the Seth Rich narrative in New York. See Rich v. Fox News Network, LLC, 939 F.3d 112, 120 (2d Cir. 2019) (reversing the dismissal of the Riches' claims of intentional infliction of emotional distress and noting that "[a]t least up until the filing of the Riches' complaint, Butowsky . . . kept exploiting the Riches' name to fuel the conspiracy theory on Twitter and other news outlets."). Butowsky's May 15, 2017 Email (see Am. Compl., ¶ 82) and other emails to individuals in New York to advance the promotion of the Seth Rich story are transactions aimed at pushing and furthering the story—activities at the heart of Plaintiffs' IIED claim. Plaintiffs specifically allege that Butowsky's conduct post-publication contributed to Plaintiffs' suffering; therefore, the fact that the bulk of Butowsky's exchanges with New York-based Fox News personnel occurred after Fox News published the two articles does not change how those communications forge a connection between Butowsky's transactions

and Plaintiffs' claims. For these reasons, I conclude that the Court may exercise jurisdiction over Plaintiffs' claim against Butowsky for IIED under Section 302(a)(1). I also find that the same allegations and evidence that provide the basis for jurisdiction over Plaintiffs' IIED claim provide a basis to exercise jurisdiction over Plaintiffs' aiding and abetting IIED claim under Section 302(a)(1).

Moreover, personal jurisdiction over Butowsky based on Plaintiffs' conspiracy to commit IIED claim is proper under Section 302(a)(1). To allege a conspiracy theory of jurisdiction, the plaintiff must claim: "(1) a conspiracy existed; (2) the defendant participated in the conspiracy; and (3) a co-conspirator's overt acts in furtherance of the conspiracy had sufficient contacts with a state to subject that co-conspirator to jurisdiction in that state." Charles Schwab Corp. v. Bank of Am. Corp., 883 F.3d 68, 87 (2d Cir. 2018) (citing Unspam Techs., Inc. v. Chernuk, 716 F.3d 322, 329 (4th Cir. 2013)). Here, Plaintiffs allege—and Butowsky does not contest—that Fox News, Butowsky's alleged co-conspirator, is subject to personal jurisdiction in New York. The Court can reasonably infer on that basis that Plaintiffs' claims of Fox News's acts, including its specific actions developing, publishing, and publicizing the Seth Rich story, were undertaken in furtherance of the alleged conspiracy in New York.

Similarly, Plaintiffs' allegations establish a substantial connection between the transacted business and Plaintiffs' tortious interference with contract claim. Under New York law, the elements of tortious interference with contract are: "(1) 'the existence of a valid contract between the plaintiff and a third party'; (2) the 'defendant's knowledge of the contract'; (3) the 'defendant's intentional procurement of the third-party's breach of the contract without justification'; (4) 'actual breach of the contract'; and (5) 'damages resulting therefrom.'" Kirch v. Liberty Media Corp., 449 F.3d 388, 401 (2d Cir. 2006) (quoting Lama Holding Co. v. Smith

Barney Inc., 88 N.Y.2d 413, 424 (1996)). Plaintiffs allege that Butowsky intentionally and improperly procured Wheeler's breach of his contract with Plaintiffs by seeking confidential information from Wheeler without Plaintiffs' consent and by working with Wheeler to make media appearances to discuss the investigation of Seth's murder. See Am. Compl., ¶¶ 172–77. Butowsky's involvement in the alleged interference with Wheeler's contract stems from the activities he took to create and publicize the story through Fox News in New York, including communications with individual Fox News employees in New York.

Finally, the exercise of personal jurisdiction over Butowsky comports with the Due Process Clause's requirements. For the same reasons that Butowsky's conduct satisfies Section 302(a)(1), asserting personal jurisdiction over Butowsky comports with the requirements of due process. See Chatwal Hotels & Resorts LLC v. Dollywood Co., 90 F. Supp. 3d 97, 108 (S.D.N.Y. 2015) ("Because the New York long-arm statute is more restrictive than the federal due process requirements, by virtue of satisfying the long-arm statute the minimum contacts and reasonableness requirements of due process have similarly been met."); Golden Archer Investments, LLC, 2012 WL 123989, at *6.

An independent analysis as to the reasonableness of asserting jurisdiction confirms this is the case. When assessing reasonability, the Court looks to five factors: "(1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies." Chloe, 616 F.3d at 164. Each of these factors weighs slightly in favor the exercise of personal jurisdiction over Butowsky or is neutral in that respect. First, Butowsky's purported

burden in litigating this action in New York does not include any exceptional circumstances aside from the typical preference to not travel and defend against a lawsuit in one's own forum.[4] Second, New York's interest in adjudicating the case is minimal. Third, the Court has "already studied the issues, read the pleadings, interacted with the parties, and is ready to efficiently proceed with the resolution of this conflict," serving Plaintiffs' interest in obtaining convenient and effective relief. Id. Similarly, the Court's resolution of an action litigated in New York from inception serves the interstate judicial system's interest in efficient conflict resolution. Id. In light of these factors, I conclude that exercising personal jurisdiction over Butowsky is both reasonable and aligns with traditional notions of fair play and substantial justice. The case should proceed accordingly.

## CONCLUSION

I find that jurisdiction over Butowsky is proper under New York's long-arm statute § 302(a)(1) and the exercise of jurisdiction comports with the Due Process Clause. Plaintiffs having met their burden, the motion to dismiss for lack of personal jurisdiction should be denied.

DATED:      September 15, 2020
            New York, New York

SARAH NETBURN
United States Magistrate Judge

---

[4] While the Court understands Mr. Butowsky's health may make his participation in the litigation in New York difficult, Butowsky's current health issues significantly developed after Plaintiffs brought this suit.

\*                   \*                   \*

## NOTICE OF PROCEDURE FOR FILING OBJECTIONS
## TO THIS REPORT AND RECOMMENDATION

The parties shall have fourteen days from the service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. A party may respond to another party's objections within fourteen days after being served with a copy. Fed. R. Civ. P. 72(b)(2). Such objections shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable George B. Daniels at the United States Courthouse, 500 Pearl Street, New York, New York 10007, and to any opposing parties. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b). Any requests for an extension of time for filing objections must be addressed to Judge Daniels. The failure to file these timely objections will result in a waiver of those objections for purposes of appeal. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b); Thomas v. Arn, 474 U.S. 140 (1985).