**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JOEL AND MARY RICH, <br><br> Plaintiffs, <br><br> v. <br><br> FOX NEWS NETWORK, LLC, MALIA ZIMMERMAN, and ED BUTOWSKY <br><br> Defendants | Case No. 1:18-cv-02223 <br><br> **Oral Argument Requested** |

**OBJECTIONS TO REPORT AND RECOMMENDATIONS OF MAGISTRATE JUDGE SARAH NETBURN ON PERSONAL JURISDICTION OVER DEFENDANT EDWARD BUTOWSKY**

*/s/ Eden Quainton*_____
EDEN P. QUAINTON, ESQ. (SDNY Bar No. EQ2646)
QUAINTON LAW, PLLC
1001 Avenue of the Americas, 11th Floor
New York, New York 10018
Telephone: (212) 813-8389
E-mail: equainton@gmail.com
*Attorneys for Defendant Edward Butowsky*

**PRELIMINARY STATEMENT**

This case involves claims of emotional distress resulting from a story that all Defendants maintain was true and accurate but was retracted because it did not meet the publisher's editorial standards. Plaintiff's attempt to construct a plausible cause of action out of this implausible plot line may have succeeded in convincing the Second Circuit, but it is worth remembering how implausible the entire theory is: Plaintiffs allege, in effect that it is "extreme and outrageous" and "beyond the bounds tolerable in a civilized society" to pursue a story in the public interest if the publisher comes up short editorially. This is an extravagant theory that Plaintiffs would struggle mightily to convey convincingly to a trier of fact.

But, at least as far as Defendant Edward Butowsky ("Defendant" or "Butowsky") is concerned, Plaintiffs' flight of fancy rests on an even more fundamental flaw. Butowsky did not take a single act – not one – in or specifically directed to New York in furtherance of the Fox News story that is claimed to have caused intolerable emotional anguish. Butowsky did ***not attend a single meeting*** in New York to pursue the story; he did ***not make a single phone call*** to anyone in New York to push or shape or promote the story; ***he did not send a single email*** into New York suggesting edits or content for the story, providing leads, raising questions, identifying avenues for research and investigation or in any way participating in the development or editing of the story.

Rather, Magistrate Judge Sarah Netburn constructed an artificial theory of personal jurisdiction based on that Butowsky's activities ***outside*** of New York and his presence inside New York, but ***after*** the story was published. This artificial theory exists only to come to the rescue of the core weakness of Plaintiff's complaint as far as Defendant Butowsky is concerned: the only relevant contact with New York in the entire complaint or uncovered in two years of

1

litigation is a single "puffing" email in which Defendant Butowsky states, with Falstaffian exaggeration, that he was the person who "pulled it [the story] together." But a boast about conduct **_outside_** of New York, does not magically transport such conduct **_into_** the State. Under controlling case law, conduct outside of New York, even conduct designed to have an effect in New York, can only give rise to specific jurisdiction if there are some minimum contacts with New York related to a plaintiff's specific claims. Even expansive "stream of commerce" theories require some minimum presence in New York before jurisdiction will be found over a foreign defendant whose out of forum conduct allegedly causes harm in the forum. A single boastful email, itself not even in New York, does not satisfy this minimum requirement. Defendant's presence in New York **_after_** the publication of the story has no relationship to Plaintiff's theory for harm caused by Defendant after the publication of the story. Plaintiff's theory is that Butowsky continued to inflict emotional distress on Plaintiffs not by anything he did or didn't do in New York, but by continually calling and writing them **_in Nebraska_** from an undisclosed location, most likely Texas, but that has not been, and cannot be (because it was not) in New York.

     The substantive law of intentional infliction of emotional distress has already been stretched to an almost unrecognizable shape in this litigation. The law of personal jurisdiction should remain at least recognizable so that the courts in this District, already overburdened, are not subject to a barrage of out of state claims with no more than a single ineffectual communication as their sole justification. It is not only a question of not opening the floodgates of litigation, but, more importantly, of protecting the basic notions of "fair play and substantial justice."

## OBJECTIONS

Magistrate Judge Sarah Netburn clearly erred in finding that Plaintiffs had made a *prima facie* showing of specific jurisdiction over Defendant Edward Butowsky. Specifically, the Magistrate Judge erred in finding that (a) a single email sent into New York unrelated to the publication of the allegedly harmful story, (b) conduct entirely outside of New York intended to have an effect in New York without other contacts not present here, (c) conduct in New York but after the publication of the story that the parents do ***not*** allege caused harm, or (d) any combination of the foregoing, could create ***specific personal jurisdiction***. *See* Report and Recommendation of Magistrate Judge Sarah Netburn, dated September 15, Dkt. 203 (the "R&R") at 3.[1] No matter how many times zero is added to zero the result is still zero. In addition, Judge Netburn failed to analyze each cause of action in the Amended Complaint separately and to determine whether the claims asserted "arose" from any jurisdictional contacts alleged in the Amended Complaint or supported by evidence developed in discovery.

## STANDARD OF REVIEW

1. Report and Recommendation

When reviewing the report and recommendation of a magistrate Judge, the Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b). However, the court ***must*** make a *de novo* determination of any portion of a magistrate's report and recommendation to which objection is made. *Soley v. Wasserman*, 823 F. Supp. 2d 221, 228 (S.D.N.Y. 2011).

---

[1] In addition, Magistrate Judge repeatedly refers to the Fox News story as a "sham" story and a "false" narrative without making clear that these are simply the allegations of the Plaintiffs and that Defendants maintain not only that the story was not a sham, but that it was substantially true and correct.

3

2. Rule 12(b)(2)

To survive a motion to dismiss for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2), a plaintiff must make a *prima facie* showing that jurisdiction exists. *SPV Osus Ltd. v. UBS AG*, 882 F.3d 333, 342 (2d Cir. 2018)(plaintiff "must include an averment of facts that, if credited by the ultimate trier of fact, would suffice to establish jurisdiction over the defendant")(internal citations omitted). To prevail on a 12(b)(2) motion, the plaintiff "bears the burden of showing that the court has jurisdiction over the defendant." *Commodity Futures Trading Comm'n v. TFS-ICAP, LLC*, 415 F. Supp. 3d 371, 380 (S.D.N.Y. 2019). The Plaintiff may demonstrate "through its own affidavits and supporting materials, containing a good faith averment of facts that, if credited ..., would suffice to establish jurisdiction over the defendant." *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 399 F. Supp. 2d 325, 330 (S.D.N.Y. 2005) (alterations and citation omitted). When evaluating a motion to dismiss for lack of personal jurisdiction, courts "may consider materials outside the pleadings, including affidavits and other written materials." *Commodity Futures Trading Comm'n v. TFS-ICAP*, LLC, 415 F. Supp. 3d 371, 380 (S.D.N.Y. 2019)(citation omitted).

## LEGAL ARGUMENT

Plaintiffs do not argue that general jurisdiction in New York exists over Defendant Butowsky. Rather the issue in this case is whether ***specific jurisdiction*** exists over Defendant for purposes of adjudicating the Plaintiff's claims as set forth in their Amended Complaint. Dkt. 99. Magistrate Judge Netburn correctly states the black letter law in this area.

> Specific jurisdiction depends on an affiliation between the forum and the underlying controversy, principally, activity or an occurrence that takes place in the forum State. Id. A plaintiff asserting specific personal jurisdiction "must establish the court's jurisdiction with respect to each claim asserted." *Sunward Elecs., Inc. v. McDonald*, 362 F.3d 17, 24 (2d Cir. 2004) (emphasis in original). Courts undertake a two-step analysis to determine whether specific jurisdiction exists. *See Licci ex rel. Licci v. Lebanese Canadian Bank,*

> *SAL*, 732 F.3d 161, 170 (2d Cir. 2013). First, the court looks to the law of the forum state to determine whether personal jurisdiction will lie according to the state's long-arm statute. *Id.* at 168. If jurisdiction lies under the forum state's long-arm statute, the court will next consider whether the exercise of personal jurisdiction over a particular defendant comports with the due process protections established under the United States Constitution. *Id.*

R&R at 5-6.

As summarized by the Magistrate Judge, Plaintiffs' position is that:

> Personal jurisdiction over [their] claims is established under N.Y. C.P.L.R. 302(a)(1) ("Section 302(a)(1)"), which covers parties who ***transact business*** within the state. Section 302(a)(1) requires the Court to determine (1) whether the defendant transacts any business in New York, and if so, (2) whether this cause of action arises from such a business transaction. *Licci*, 732 F.3d at 168.

R&R at 6 (emphasis added).

The first prong of Section 302(a)(1) is satisfied if the defendant engages in some purposeful activity in New York, *i.e.*, "undertakes some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 246 (2d Cir. 2007). This purposeful activity must the be shown to have a sufficient nexus with the claim asserted by the plaintiffs. *Porina v. Marward Shipping Co.*, 521 F.3d 122, 128 (2d Cir. 2008); *Licci*, 732 F.3d at 168–69. While New York is a "single act" statute, in that a single, sufficiently related contact, can give rise to jurisdiction, R&R at 7, the analytical issue is what degree of "relatedness" is sufficient to permit the exercise of jurisdiction. As stated by the Magistrate Judge, at least one element of the cause of action must "arise from" the Defendant's contacts. *Id.*

A close analysis of the claims set forth in each of Plaintiffs' causes of action reveals that Plaintiffs have neither alleged nor adduced sufficient facts to support the exercise of specific jurisdiction over Defendant.

Plaintiffs first cause of action is for intentional infliction of emotional distress. Dkt. 99 ¶ 136 (A) – (J). ***None of the acts*** attributed to Butowsky in this cause of action are even ***alleged*** to have taken place in New York. Butowsky allegedly "sought out" Plaintiffs. 136 (A). Plaintiffs

5

were in Nebraska and Butowsky is not alleged to have been in New York at the time he "sought out" Plaintiffs. Dkt. 99 ¶ 25. Butowsky is alleged to have "recruited" Rod Wheeler, the family's private investigator. Dkt. 99 ¶ 136 (B). This "recruitment" is alleged to have occurred in Washington D.C. Dkt. 99 ¶ 37. Butowsky allegedly "contracted" with Wheeler. Dkt. 99 ¶ 136(C). The Amended Complaint does not plausibly allege a "contract" between Wheeler and Butowsky, but in any event, no acts taken by Butowsky to establish any agreement or "contract" with Wheeler are alleged to occur in New York. Dkt 99 ¶ 136(D) relates to Wheeler's conduct and is irrelevant as to Butowsky. Dkt. 99 ¶ 136(E) relates to Fox and is irrelevant as to Butowsky. Dkt 99 ¶ 136(F) relates to Zimmerman and Fox and is irrelevant as to Butowsky. Dkt 99 ¶ 136(G) relates to Fox and is irrelevant as to Butowsky. Dkt 99 ¶ 136(I) alleges that Butowsky continued to make "fictitious statements" and continued to "harass" Plaintiffs. Butowsky's "fictitious statements" are alleged to have occurred on his Twitter feed, Dkt. 99 ¶ 113, in communications to NPR, whose headquarters and key reporters are in Washington D.C., Dkt. 99 ¶ 114, and in alleged statements to a journalist writing for the Gateway Pundit in Washington D.C. Dkt. 99 ¶ 116. Butowsky's "harassment "allegedly occurred through email, voicemails and text messages to Joel, who resides in Nebraska, with no allegation that Butowsky was in, or anywhere near, New York when he made these allegedly harassing communications to a Nebraska resident. Dkt. 99 ¶¶ 9, 111, 117. Not a single act attributed to Butowsky in the first cause of action occurred or is alleged to have occurred in New York. The first cause of action must be dismissed.

    Plaintiffs' second cause of action is for aiding and abetting the intentional infliction of emotional distress. Dkt. 99 ¶¶ 145-156. Butowsky's aiding and abetting is alleged to have consisted in his recruiting of Wheeler (not in New York), encouraging Joel and Mary Rich to

6

engage Wheeler (not in New York), inducing (not in New York) Plaintiffs to implicate themselves in the Fox News story, *__coordinating__* Wheeler, Zimmerman and Fox *__to publish__* the story (not in New York, as conceded by the Magistrate Judge, R&R at 10), and widely publicize the story (outside New York). Not a single fact is alleged supporting any contact of Butowksy coordinating with Wheeler and Zimmerman and Fox to publish the story in New York. The Magistrate Judge cites evidence of Butowsky's *__prior__* contacts in New York with *__other__* stories, R&R at 10, Dkt. 34, ECF No. 34, ¶¶ 5–9, R&R at 10, but these cannot constitute "*__coordinating. . .to publish__*" the allegedly false story.

      The other evidence cited by the Magistrate Judge on page 10 also does not support jurisdiction over Butowsky under the "coordinating . . .to publish" theory. Dkt. 126-1, is an email from Butowsky to Wheeler dated June 9, 2017, three weeks *__after__* the publication of the May 16, 2020 story. Dkt. 126-2 is ; Dkt 126-3 is an email from Defendant Butowsky to a Fox executive dated November 13, 2017, six months *__after__* the publication of the Fox News story. Dkt. 126-4 is an email from Butowsky to Chris Cuomo and Jeff Zucker of CNN dated August 22, 2017, *__three months after__* the publication of the allegedly false story stating that Butowsky intended in the future to be in New York. Dkt. 126-5 is an email from Butowsky to Chris Cuomo dated October 24, 2017, *__five months after__* the publication of the allegedly sham story, suggesting the possibility of future meeting in New York. Dkt. 126 is an email dated May 23, 2017, a week *__after__* the story was published stating that Butowsky was in New York. Dkt 181-1 is an email from Malia Zimmerman dated May 22, 2017, five days *__after__* the story was published, stating that Butowsky would be in New York the following day. Dkt. 181-2 is an email from Butowsky to Fox News executives dated June 27, 2017, over a month *__after__* the publication of the story, stating that Butowsky was in New York. Dkt. 200-1 is an email from Butowsky to a New York

7

journalist dated May 21, 2017, five days *after* the story was published, suggesting a meeting in New York. Dkt. 200-2 is an email from Butowsky to Sean Hannity, dated May 23, 2017, a week *after* the publication of the story. Dkt. 200-3 is a text message dated June 3, 2017, nearly three weeks *after* the publication of the story in which Butowsky refers to himself as a "New Yorker" presumably because, decades earlier he had lived in New York. Dkt. 200-4. Dkt. 200-5 is an email dated August 23, 2017, *three months after* the story was published, to various Bloomberg reporters indicating that he was planning on being in New York and would be available for a meeting. Dkt 201-1 is a settlement agreement entered into over *two years after* the events that form the basis for the Riches' complaint. There is no basis to rely on a document entered into *years after* the events at issue as a jurisdictional predicate for *previous* conduct. Dkt. 201-2 is a duplicate of Dkt. 200-1. Dkt 201-3 is an email from Butowsky to Ken LaCorte dated June 26, 2017, five weeks *after* the story was published, stating that Butowsky was on a plane to New York.

    All the foregoing "evidence" of New York contacts shows only that *after* the publication of the Fox News story, Butowsky appeared agitated and believed it was important to meet with reporters and executives in New York. However, *not a single one* of the emails and documents brought forward by Plaintiffs and relied on by Magistrate Netburn has *anything* – or could possibly have anything *to do with – "coordinating. . . to publish*," which is the precise claim made in this cause of action against Butowsky. All the evidence brought forward by the Plaintiffs after the filing of the Amended Complaint is jurisdictionally irrelevant.

    There is, in reality, after nearly two years of litigation only a *single* email on which Plaintiffs can hang their hat, which is an email sent to various Fox News producers and on-air talent then night before the story was published, in which Butowsky brags about being "the one"

who pulled the Seth Rich story together. Dkt. 99 ¶ 82. But Plaintiffs do not allege that any of these Fox personalities had anything to do with the publication of the Fox story, nor could they, because these are all Fox **_TV_** producers and personalities, whereas the story was published by Fox's on-line division, foxnews.com which operates independently of Fox TV.[2]

Rather than producing email after email of irrelevant post-publication contacts, Plaintiffs should have explained how a puffing email to what they themselves describe as "producers" and "on air" talent – obviously television personalities who could not plausibly be seen as determining the publication of the Zimmerman article – can constitute a jurisdictionally relevant basis for intentionally inflicting emotional distress by "coordinating. . to publish." The Magistrate Judge knows that this incredibly slender reed cannot bear the weight of her jurisdictional construct and thus deflects to the irrelevant evidence adduced by Plaintiffs. Plaintiffs have not alleged or brought forward a sufficient jurisdictional basis to proceed against Defendant under their second count, which must therefore be dismissed as to Butowsky under Rule 12(b)(2).

Plaintiffs' third cause of action alleges a conspiracy between Butowsky, Zimmerman and Fox News intentionally to inflict emotional distress on Plaintiffs. Dkt. 99 ¶¶ 157-171. Butowsky is alleged to have conspired by obtaining confidential information from Wheeler and procuring media appearances by Wheeler. There is no allegation that Butowsky procured any such confidential information in New York and the offending media appearance by Wheeler was in Washington D.C. Dkt. 99 ¶ 102. Paragraph 159 states that Butowsky, Zimmerman and Fox News

---

[2] The September 22 , 2010 deposition of Greg Wilson, the deputy Managing Editor of foxnews.com, who was the immediate supervisor of Malia Zimmerman, the reporter who wrote the offending article, made clear that editorial and publishing decisions are made by foxnews.com, not Fox TV, as one would expect. Counsel has not yet been able to obtain a copy of the deposition but would hope to file the relevant portions supplementally.

agreed to develop, publish and (re) publish what Plaintiffs call the "sham" story. As discussed, Butowsky is not alleged or shown to have taken any action in New York to develop the story. His lone contact in New York prior to the publication consisted of a puffing email to TV personalities that cannot possibly have had anything to do with the Internet news division's decision to publish the story. Any "republishing" by Defendant occurred outside of New York, as discussed above. *See supra* at 6. None of the emails cited by Plaintiffs or the Magistrate Judge concerns the "republishing" of the story, and certainly not its publishing. The remaining paragraphs of the third cause of action rehash non-New York based actions (allegedly recruiting Wheeler in D.C., inducing the parents in Nebraska to work with a D.C. investigator, "engaging" with the Riches outside of New York under "false pretenses"). Returning to the touchstone principal of personal jurisdiction at issue here, not a single claim "arises from" or is "related to" Butowsky's May 15, 2017 email to Fox TV personalities, the lone pre-publication New York contact brought forward by Plaintiffs. The third cause action for conspiracy to commit intentional infliction of emotional distress must be dismissed against Butowsky pursuant to Rule 12(b)(2).

Plaintiffs' fourth cause of action alleges that Butowsky tortiously interfered with the contract between Wheeler and the Riches. Dkt. 99 ¶ 172-177. Specifically, the Amended Complaint alleges that Butowsky tortiously interfered with the contract by "seeking confidential information" and inducing Wheeler to make media appearances. Dkt. 99 ¶ 174. But Plaintiffs do not bring forward a single piece of evidence that Butowsky sought such confidential information in or from New York and none of Butowsky's post-publication contacts with New York have anything to do with this claim. As to media appearances, the only media appearance by Wheeler referenced in the Amended Complaint occurred in Washington D.C. and there is no allegation

that Butowsky procured or promoted this appearance from or through any New York contacts. Dkt. 99 ¶ 102. The Fourth cause of action must thus be dismissed under Rule 12(b)(2).

Plaintiffs fifth cause of action only concerns Fox News and is thus not at issue in the Magistrate Judge's ruling.

In going through each allegation in the attempt to determine whether there was any specific claim that could be said to arise from or be related to any of Mr. Butowsky's limited New York contacts, as is **_required_** under *Sunward Elecs., Inc.* 362 F.3d 17, it is evident that the Magistrate Judge failed to examine each cause of action precisely on its own terms and, instead, approached the dispute from a very high level of generality and then lumped together the lone pre-publication contact, the various irrelevant post-publication contacts and the non-New York alleged harassment of the Riches to attempt to create a "gestalt" or a "mosaic" that would support jurisdiction over Butowsky. This methodology is fundamentally flawed and has led to a clearly erroneous decision.

The error in Magistrate Judge's analysis can also be seen in the various cases that are cited in an attempt to shore up the reasoning. The Magistrate Judge relies heavily on *Golden Archer Investments, LLC*, No. 11 Civ. 3673, 2012 WL 123989 (S.D.N.Y Jan 3, 2012) and *Pickett v. Migos Touring, Inc.*, 420 F. Supp. 3d 197, 204 (S.D.N.Y. 2019), both of which in fact demonstrate why jurisdiction over Butowsky is not appropriate.

In *Golden Archer*, at *4, the court noted that, "standing alone, remote negotiations with a New York-based plaintiff are generally insufficient to confer personal jurisdiction," a principle all the more apposite here where the Plaintiffs themselves have no connection with New York. However, the court found jurisdiction over *Golden Archer* because although defendant was out of state when it entered into the contract, it "projected itself" into New York after the contract by

11

a course of conduct that included "e-mails, phone calls, and online video conferences" with the plaintiff in New York. *Golden Archer* at *5. In the contract context, this makes sense, because these post-signing contacts are relevant to the execution and breach of their agreement, and hence the cause of action fairly arises from the contacts. In contrast, Butowsky's various emails and meetings in New York after the publication of the article in questions, by definition, have nothing to do with the publication of the article, which had already occurred, and are largely an illustration of Butowsky simply airing his own grievances, with no purposeful conduct targeted at the Riches to inflict harm. Indeed, the actual post-publication conduct of which the Riches complain of all occurs **_outside of_** and with no relationship to New York: Butowsky's alleged harassment of the Riches in Nebraska and through his social media posts.

Part of the problem may have been Plaintiffs' (and the Magistrate Judge's) attempt to fit the facts into the contract and commercial context of CPLR 302(a)(1) when the facts are properly considered under CPLR 302(a)(2) and (3)—with the problem for Plaintiffs being that these sections of the CPLR require injury within New York, which Plaintiffs cannot allege. Boxed into the wrong section of the CPLR, the Plaintiffs and the Magistrate Judge engage in an artificial contract type analysis ill-suited to an intentional tort fact pattern.

*Picket v. Migos Touring Inc.*, 420 F. Supp. 3d 197 also illustrates the flaws in the Magistrate Judge's analysis. In that case, although the court acknowledged that the mere entering into an agreement with a New York based Plaintiff was insufficient to confer jurisdictions, by their sustained post-execution conduct in New York, including "curating a tour with Grammy award winning artist Drake, which featured six consecutive performances in New York" defendants had purposefully availed themselves of New York such that their conduct in New York was sufficient for personal jurisdiction. *Pickett v. Migos Touring, Inc.*, 420 F. Supp. 3d at

12

203. In contrast, here, Butowsky had **no** conduct in New York relating to the crafting, developing and editing of the allegedly sham story and his only New York based contact before the publication of the story had nothing to do with "coordinating the publication" of the story and was simply an act of bragging to TV celebrities when foxnews.com had made the decision to publish the Zimmerman article. As *Picket* illustrates, copyright infringement in the music business involves commercial dealings of the type that fit logically withing CPLR 302(a)(1) where the acts of infringement themselves occur in New York. *Picket* thus underscore the weakness of applying the same framework to an intentional tort where **no** tortious conduct is undertaken in New York.

      The Magistrate Judge is also mistaken to conclude that the exercise of jurisdiction over Butowsky does not violate the Due Process Clause of the 5th Amendment. R&R at 13. First, the Magistrate Judge improperly relies on *Chatwal Hotels & Resorts LLC v. Dollywood Co.*, 90 F. Supp. 3d 97, 108 (S.D.N.Y. 2015) for the proposition that "because the New York long-arm statute is more restrictive than the federal due process requirements, by virtue of satisfying the long-arm statute the minimum contacts and reasonableness requirements of due process have similarly been met." Since 2015, the strong trend in constitutional law is a tightening of the requirements for specific jurisdiction. Here, the core of the Magistrate Judge's analysis is that Butowsky's relationship with Fox News, which is subject to jurisdiction, is sufficient for him to be haled into court in New York as well. The Supreme Court has rejected this type of reasoning. *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty.*, 137 S. Ct. 1773, 1781 (2017)("a defendant's relationship with a … third party, standing alone, is an insufficient basis for jurisdiction"). The Supreme Court stressed that "[t]he requirements of *International Shoe* ... must be met as to each defendant over whom a state court exercises jurisdiction." *Id.* at

1783. The contacts of each defendant in the forum state must be analyzed in their relation to each of plaintiffs' causes of action. *See supra* at 5.

Moreover, the Magistrate Judge's application of the Due Process reasonableness factors is flawed. Under the Due Process Clause, courts must evaluate the following factors as part of this "reasonableness" analysis: (1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies. *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 164 (2d Cir. 2010).

The first and most important factor is the burden on the defendant. What is meant by the "burden" on the defendant in the due process context is not the general burden of facing litigation that, of course, all individuals would rather not confront, but the particular burden on the particular defendant in a particular case. Plaintiffs could easily have brought their case in federal court in Nebraska where they allegedly suffered injury, or Texas, where Defendant Butowsky resides. Instead, they chose to bring their case in New York and to drag an out-of-state defendant thousands of miles from other jurisdictions where he would be also be amenable to suit. As the Court knows, Defendant Butowsky has suffered severe health setbacks and recently nearly died, suffering cardiac arrest and going into organ failure. Dkt. 178. The burden on Butowsky in facing suit in New York is extreme and unreasonable and Magistrate Judge's statement that Defendant's "burden in litigating this action in New York does not include any

exceptional circumstances" is insensitive. *See* R&R at 14.[3] New York's interest in adjudicating the case is "minimal," as the Magistrate Judge acknowledged. *Id.* While the Plaintiff may have an interest in obtaining "convenient relief from Fox News" in New York, the Plaintiff has also alleged a course of harassing conduct by Defendant that has nothing to do with New York. *See supra* at 6. Plaintiffs' have no interest, other than shopping for the most favorable forum, in bringing their non-New York intentional harassment claims in New York. There are certain interstate advantages to continuing the litigation in New York but there is also an element of circular reasoning in justifying jurisdiction over an out-of-state defendant with tenuous case-specific connection to New York who should never have been subject to New York jurisdiction in the first place on the grounds that now the court has "already studied the issues, read the pleadings, interacted with the parties, and is ready to efficiently proceed with the resolution of this conflict." R&R at 14. The Magistrate Judge ignores the final factor, which cuts against jurisdiction over Butowsky because Texas has an interest in protecting its citizens from being haled into court in foreign jurisdictions and Nebraska has an interest in providing its citizens with an effective forum for relief, while New York has little to do with the now embittered personal relations between the Butowskys and Riches. Considering the totality of the circumstances, considerations of due process, fair play and substantial justice do not warrant the exercise of jurisdiction here.

---

[3] The Magistrate Judge does acknowledge Butowsky's health issues, but asserts they are all recent. R&R at 14 and Note 4. This is wrong. Defendant's filings in the companion case brought by the Riches' son, Aaron, in District Court for the District of Columbia, *Rich v. Butowsky, et al.*, 18-cv-0681, Dkt. 97-9, Dkt. 130-4, DKt. 130-5, and Dkt. 139 demonstrate serious health problems pre-dating the Riches' lawsuit by a significant period.

## **CONCLUSION**

For the reasons set forth above, the District Court should reject the Report and Recommendations of the Magistrate Judge and enter an order dismissing the Amended Complaint in its entirety against Defendant Edward Butowsky.


Dated: September 29, 2020

                                  */s/ Eden Quainton*_____
                                  EDEN P. QUAINTON, ESQ. (SDNY Bar No. EQ2646)
                                  QUAINTON LAW, PLLC
                                  1001 Avenue of the Americas, 11th Floor
                                  New York, New York 10018
                                  Telephone: (212) 813-8389
                                  E-mail: equainton@gmail.com
                                  *Attorneys for Defendant Edward Butowsky*

## **CERTIFICATE OF SERVICE**

The undersigned counsel certifies that on September 29, 2020, the foregoing document was filed through the CM/ECF system and thereby served electronically on counsel for Plaintiffs Joel and Mary Rich.

**QUAINTON LAW, PLLC**

*/s/ Eden Quainton*_____
EDEN P. QUAINTON, ESQ.

1001 Avenue of the Americas, 11th Floor
New York, New York 10018
Telephone: (212) 813-8389
E-mail: equainton@gmail.com
*Attorneys for Defendant Edward Butowsky*